Khaled Alrabe (CA SBN 349899)
Email: khaled@nipnlg.org
NATIONAL IMMIGRATION PROJECT
1400 Shattuck Ave, Suite 12 PMB #141
Berkeley, CA 94709
Telephone: (617) 227-9727

Amber Qureshi (DC 90001046)*
Email: amber@qureshilegal.com
LAW OFFICE OF AMBER QURESHI, LLC
6925 Oakland Mills Road PMB#207
Columbia, MD 21045
Telephone: (443) 583-4353

* Application for admission *pro hac vice*
forthcoming

*Attorneys for Plaintiff David K. Hausman*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID K. HAUSMAN,<br><br>               Plaintiff,<br><br>     v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>               Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE FREEDOM OF INFORMATION ACT** |

Plaintiff David K. Hausman ("Hausman"), by and through his undersigned counsel, files this Complaint against U.S. Immigration and Customs Enforcement ("ICE") and alleges as follows:

## INTRODUCTION

1.    This case is about getting timely updates to five sets of simple but important Excel spreadsheets ("the Spreadsheets") that track ICE enforcement activity. ICE systematically delays—by months or years—producing and sending these five spreadsheets in response to Freedom of Information Act ("FOIA") requests for updated data. That pattern or practice of delay prevents the public from monitoring ICE's arrest, detention, and deportation practices.

2.    These large but simple spreadsheets contain records of every ICE encounter, detainer request, arrest, detention and removal. They provide a quantitative window into how the U.S. government is carrying out immigration enforcement currently and how it compares to past administrations. Past versions of the Spreadsheets have been the source of virtually all data on ICE activities since January 2025.

3.    The Spreadsheets are easy for anyone to look at. The originals from earlier productions are available at https://deportationdata.org/data/ice.html.

4.    Despite the importance of the Spreadsheets and the ease of producing updates to them, ICE does not produce them proactively and does not produce updates to them in response to FOIA requests without long delays, litigation, or both.

5.    Hausman brings a FOIA pattern-or-practice claim here because a FOIA claim that only concerns one request cannot cure ICE's repeated timeliness violations. By waiting to release the Spreadsheets until confronted with litigation, ICE systematically evades FOIA's timeliness requirement: not only must a requester wait for the statutory period to run before filing suit (a minimum of twenty working days), but ICE receives another 30 days to answer the complaint. It is often only after this point that the requester and the agency begin to negotiate a schedule for production. The result is that, absent prospective relief requiring timely responses to future requests, there is no reliable way for a requester to obtain updates to the Spreadsheets more than once every few months at best, through the burdensome process of repeatedly filing suit. But this

is a context in which timeliness is essential for monitoring the government's activities. Past versions of the Spreadsheets have been used within days of their release to break frontpage news about the federal government's enforcement practices and identify unannounced changes to enforcement policies.

6.    Hausman is an Assistant Professor of Law at the University of California, Berkeley, School of Law. He conducts empirical research on U.S. immigration enforcement, mostly using government data disclosed in response to FOIA requests. He co-founded the Deportation Data Project, a repository of immigration enforcement data, to systematize the collection of such data through FOIA requests and make the data accessible to the public. The Deportation Data Project not only aims to inform the public; it also aims to reduce burdens on the ICE FOIA office by providing a repository where journalists, advocates, and researchers can access ICE data without having to file piecemeal FOIA requests (for example, requests concerning a single city or detention center). To maintain this repository, Hausman seeks regular updates of the Spreadsheets, and he has filed seven requests for updates of the Spreadsheets since September 2025 that remain unanswered.

7.    Hausman's FOIA requests for updates of the Spreadsheets impose minimal burdens on the agency. The requests seek only non-exempt data, every category of which ICE has released in the past. Copying and redacting the Spreadsheets is not difficult or time-consuming; ICE has provided copies of the Spreadsheets in litigation within eight working days. Yet, with respect to Hausman's FOIA requests for updated versions of the same spreadsheets, ICE has not released any responsive records, notwithstanding FOIA's requirements that agencies make a determination on whether to comply with the request within twenty working days and release records promptly thereafter.

8.    Although ICE has released almost all categories of information requested by Hausman in the past, it has done so only after FOIA requesters have initiated litigation. Hausman and his colleagues at the Deportation Data Project have obtained six updates of the Spreadsheets since March 2025, but those releases occurred partly because ICE repeatedly failed to provide part of one of the spreadsheets, resulting in three amended releases. And the releases have been

unevenly spaced in time, with, for example, a nearly five-month gap between a release covering dates through October 15, 2025, and the most recent release, covering dates through March 10, 2026. These long delays meant that there was little information available about patterns in ICE enforcement for months at a time. And these updates, even with these long delays, only happened after litigation over FOIA requests that had been pending without agency action for months—and even then, the standard FOIA litigation timeline meant production took more than two months from the date of filing.

9.      Hausman and his colleagues at the Deportation Data Project have posted the Spreadsheets online and worked to help others understand them. Hundreds of journalists, researchers, and advocates have used the Spreadsheets to track the federal government's rapidly changing immigration and enforcement policy, resulting in over two thousand media reports by local, national, and international news organizations. This reporting has increased the public's understanding of trends in immigration enforcement, including whether the government's claims about these trends are accurate. The information sought is, therefore, of tremendous value to the public.

10.      Despite the minimal burdens imposed on the agency by Hausman's requests and the overwhelming public interest in the requested records, ICE has failed to make determinations within the timeframe mandated by the FOIA statute. *See* 5 U.S.C. § 552(a)(6)(A). ICE has also failed to grant Hausman's requests for expedited processing. It should not take repeated litigation for the agency to respond to Hausman's simple requests.

11.      ICE's violations of FOIA have impeded Hausman's efforts to inform the public about how ICE enforces federal immigration laws. To vindicate the public's statutory right to up-to-date information about the federal government's rapidly changing immigration enforcement actions, Hausman seeks declaratory, injunctive, and other appropriate relief ordering ICE to produce the Spreadsheets expeditiously and to timely respond in the future with respect to Hausman's requests for updated versions of the same spreadsheets. 5 U.S.C. § 552(a)(3), (6).

**JURISDICTION AND VENUE**

12.    This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties under 5 U.S.C. § 552, *et seq*. (FOIA statute), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act).

13.    Venue lies in this District pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because this is a civil action in which Defendant is a federal agency, Hausman resides in this District, and there is no real property involved in this action.

14.    ICE's failure to make determinations concerning Hausman's requests for the Spreadsheets within the statutory time period constitutes a constructive denial of Hausman's requests. Thus, Hausman is deemed to have exhausted his administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

**DIVISIONAL ASSIGNMENT**

15.    Assignment to the San Francisco Division or the Oakland Division is proper under Civil L.R. 3-2(c) and (d) because Hausman resides in Alameda County and a substantial part of the events or omissions that give rise to the claims occurred therein.

**PARTIES**

16.    Hausman is an Assistant Professor at the University of California, Berkeley School of Law and a co-Director of the Deportation Data Project. The Deportation Data Project collects, analyzes, and posts public, anonymized U.S. government immigration enforcement datasets. These datasets have been used by numerous journalists, researchers, and advocates to understand and track the federal government's rapidly changing immigration enforcement policy. The Deportation Data Project's website and posts of government data are available to the public at no cost at deportationdata.org. Hausman has filed seven monthly FOIA requests for updated versions of the Spreadsheets that have been pending for over twenty working days. Hausman resides in Berkeley, California.

17.      ICE is a component agency of the Department of Homeland Security ("DHS"), a department of the Executive Branch of the United States. ICE is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and has possession, custody, and control over the records Hausman seeks.

## BACKGROUND

**A. There is Substantial Public Interest in the Spreadsheets.**

18.      The Spreadsheets contain anonymized, individual-level data on ICE enforcement actions: they contain a row for each encounter, detainer request,[1] arrest, detention and deportation.

19.      Hausman and his colleagues at the Deportation Data Project have published past releases of the Spreadsheets—including the original spreadsheets received from ICE, processed versions of them, and tools to allow users to filter and download subsets of them—on the Deportation Data Project's website. These are all available to the public for download at deportationdata.org at no cost.

20.      Past releases of the Spreadsheets have substantially contributed to the public's understanding of ICE's enforcement actions. They have been used by journalists, researchers, and advocates in understanding immigration enforcement policies and practices, including comparisons to enforcement under past administrations.

21.      For example, within days of the Deportation Data Project posting updated data on June 21, 2025, hundreds of media organizations—including The New York Times,[2] Los Angeles

---

[1] An ICE detainer is a request that ICE sends to a state or local jail to hold a person for up to an additional 48 hours after there is no longer a legal justification for the person's detention under state law.

[2] Albert Sun, *Immigration Arrests Are Up Sharply in Every State. Here Are the Numbers.*, N.Y. TIMES (June 27, 2025), https://www.nytimes.com/interactive/2025/06/27/us/ice-arrests-trump.html.

Times,[3] CBS News,[4] ABC News,[5] Bloomberg,[6] The Telegraph,[7] Des Moines Register,[8] Cincinnati Enquirer,[9] San Francisco Chronicle,[10] ABC7 New York,[11] and more[12]—reported on new trends in enforcement revealed by the data. For example, Mission Local, a local news outlet based in the San Francisco Bay Area, used the data to follow the enforcement outcomes for the 2,123 people impacted by ICE arrests in the Bay Area from January 20 to June 26, 2025, finding that arrests drastically increased in 2025, detained individuals were quickly moved to detention centers across the country, and over half of the individuals arrested during this time had been

---

[3] Rachel Uranga, *Most nabbed in L.A. raids were men with no criminal conviction, picked up off the street*, L.A. TIMES (June 24, 2025), https://www.latimes.com/california/story/2025-06-24/detention-centers-swell-with-immigrants-with-no-criminal-record.

[4] Julia Ingram, *ICE detentions of non-criminal immigrants spike; about 8% have violent convictions, analysis of new data shows*, CBS NEWS (June 30, 2025), https://www.cbsnews.com/news/ice-detentions-non-criminal-immigrants-violent-crime-convictions-analysis/.

[5] Laura Romero et al., *Trump vowed to deport the 'worst of the worst' -- but new data shows a shift to also arresting non-criminals*, ABC NEWS (July 1, 2025), https://abcnews.com/US/trump-vowed-deport-worst-worst-new-data-shows/story?id=123287810.

[6] Emily Flitter and Leon Yin, *NYC's Immigration Arrests Jump 31%, Putting Sanctuary City to Test*, BLOOMBERG (July 1, 2025), https://www.bloomberg.com/news/articles/2025-07-01/new-york-city-immigration-arrests-jump-31-putting-sanctuary-city-to-test.

[7] Cameron Henderson and Meike Eijsberg, *Welcome to 'Alligator Alcatraz': Trump's swamp jail to aid record migrant crackdown*, THE TELEGRAPH (July 1, 2025), https://www.telegraph.co.uk/us/news/2025/07/01/donald-trump-immigration-crackdown-charts-data-florida/.

[8] Tim Webber, *Have ICE arrests, deportations in Iowa climbed under President Trump? What the numbers say*, DES MOINES REGISTER (July 2, 2025), https://www.desmoinesregister.com/story/news/2025/07/02/ice-raids-data-increasing-rate-of-arrests-deportations-iowa/84390913007/.

[9] Annie Goldman, *Immigration arrests in Ohio have tripled this year, new data shows*, CIN. ENQUIRER (July 1, 2025), https://www.cincinnati.com/story/news/politics/2025/07/01/immigration-arrests-increase-in-ohio-and-kentucky/84415726007/.

[10] Christian Leonard, *Trump says he's deporting 'the worst of the worst.' Here's what California ICE data really shows*, S.F. CHRONICLE (June 27, 2025), https://www.sfchronicle.com/bayarea/article/ice-arrest-immigrant-california-20395589.php.

[11] Dan Krauth, *35% of New York City ICE arrests aren't criminals, new data shows*, ABC7 NEW YORK (June 26, 2025), https://abc7ny.com/post/immigration-enforcement-35-nyc-ice-arrests-arent-criminals-according-newly-released-data/16855965/.

[12] *See* DEPORTATION DATA PROJECT SELECTED MEDIA COVERAGE, https://deportationdata.org/news.html#selected-media-coverage (last visited Apr. 29, 2026).

deported by the end of June 2025.[13]

22.    The Deportation Data Project posted the most recent release of the Spreadsheets on March 30, 2025. Since then, dozens of media organizations have used the data to publish articles analyzing the administration's recent enforcement tactics across the country, including during "Operation Midway Blitz" in Illinois, "Operation Metro Surge" in Minnesota, "Operation Catch of the Day" in Maine, and "Operation Charlotte's Web" in North Carolina.[14]

---

[13] Kelly Waldron and Frankie Solinsky Duryea, *2,123 lives: Inside the stats and stories of those arrested by ICE from the S.F. area*, MISSION LOCAL (July 30, 2025), https://missionlocal.org/2025/07/ice-data-immigrants-arrested-sf/.

[14] *See, e.g.*, Christopher Magan et al., *ICE action targeted Somalis, but group made up fewer than 3% of arrests*, THE MINN. STAR TRIBUNE (Mar. 30, 2026), https://www.startribune.com/ice-action-targeted-somalis-but-group-made-up-fewer-than-3-of-arrests/601650958; Joe Mahr, *Operation Midway Blitz in numbers: Roughly 3,800 detained, and 2,500 deported, most with no criminal record*, CHICAGO TRIBUNE (Mar. 31, 2026), https://www.chicagotribune.com/2026/03/31/operation-midway-blitz-in-charts-roughly-3800-detained-and-2500-deported-most-with-no-criminal-record/; Meghnad Bose and Luke Lawson, *Two-thirds of people arrested by ICE in Minnesota surge had no criminal records, new data reveals*, THE INTERCEPT (Mar. 30, 2026), https://theintercept.com/2026/03/30/ice-minnesota-criminal-records-data-arrests/; Simón Rios, *More than 7,000 ICE arrests in Massachusetts so far under Trump*, WBUR (Apr. 2, 2026), https://www.wbur.org/news/2026/04/01/7000-ice-arrests-massachusetts-trump; Jesús García, *ICE cuadriplica detenciones de inmigrantes y aumenta deportaciones*, LA OPINIÓN (Apr. 8, 2026), https://laopinion.com/2026/04/08/ice-cuadriplica-detenciones-de-inmigrantes-y-aumenta-deportaciones/; Joe Hong, *NYC's ICE office is arresting more immigrants, but deporting fewer*, GOTHAMIST (Apr. 7, 2026), https://gothamist.com/news/nycs-ice-office-is-arresting-more-immigrants-but-deporting-fewer; Jake Goldstein-Street, *Latest ICE data shows surge in immigration arrests in WA*, THE COLUMBIAN (Apr. 8, 2026), https://www.columbian.com/news/2026/apr/08/latest-ice-data-shows-surge-in-immigration-arrests-in-wa/; Kalen McCain, *ICE quietly arrested 240 people in Mesa County last year, federal data shows*, THE GRAND JUNCTION DAILY SENTINEL (Apr. 9, 2026), https://www.gjsentinel.com/news/western_colorado/ice-quietly-arrested-240-people-in-mesa-county-last-year-federal-data-shows/article_c4ecd3e6-c8e5-4a20-9e1d-0e9208d0b5d7.amp.html; Alexandra Mendoza, *Esto es lo que revelan los nuevos datos sobre las detenciones de inmigrantes en San Diego en lo que va del año*, THE SAN DIEGO UNION-TRIBUNE (Apr. 8, 2026), https://www.sandiegouniontribune.com/2026/04/08/esto-es-lo-que-revelan-los-nuevos-datos-sobre-las-detenciones-de-inmigrantes-en-san-diego-en-lo-que-va-del-ano/; Morgan Watkins, *ICE arrests, deportations up in Kentucky under Trump*, LOUISVILLE PUBLIC MEDIA (Apr. 7, 2026), https://www.lpm.org/investigate/2026-04-07/ice-arrests-deportations-up-in-kentucky-under-trump; Troy Brynelson, *Immigration arrests in the Northwest have dropped significantly, but people without criminal records are still vulnerable*, OPB (Apr. 9, 2026), https://www.opb.org/article/2026/04/09/immigration-arrests-in-northwest-dropped-but-people-without-criminal-records-still-vulnerable/; Jerod MacDonald-Evoy, *ICE moved detainees out of an overcrowded Mesa facility before congressional oversight visit*, AZ MIRROR (Apr. 9, 2026), https://azmirror.com/2026/04/09/ice-moved-detainees-out-of-an-overcrowded-mesa-facility-

23.    Recent releases of the data have led to important reporting refuting the federal government's claims about its enforcement policies and practices and uncovering enforcement tactics that were not public. For example, using the data, journalists have uncovered that the administration may not be targeting the so-called "worst of the worst" for enforcement;[15] that the data contradicts the federal government's generalized claims about the criminal histories of the

before-congressional-oversight-visit/; Emmanuel Martinez and Marianne LeVine, *Despite signaling change, ICE still arrests many immigrants with no record*, THE WASHINGTON POST (Apr. 3, 2026), https://www.washingtonpost.com/immigration/2026/04/03/despite-signaling-change-ice-still-arrests-many-immigrants-with-no-record/; Jacob Biba, *Most People Arrested in 'Charlotte's Web' Hadn't Been Convicted of Crimes*, THE ASSEMBLY (Apr. 8, 2026), https://www.theassemblync.com/news/politics/immigration/most-people-arrested-charlottes-web-no-conviction/; John-John Williams IV and Sahana Jayaraman, *Analysis: ICE arrests have slowed down — but not in Maryland*, THE BALTIMORE BANNER (Mar. 31, 2026), https://www.thebanner.com/community/local-news/ice-arrests-increase-maryland-trump-JFFDZFUMIVG3DAO4MJHZO36ZYE/; Elly Yu and  Jordan Rynning, *ICE arrests tripled last year in LA — and more than half of those arrested had no criminal record*, LAIST (Mar. 31, 2026), https://laist.com/news/ice-arrests-tripled-los-angeles-immigration-customs-enforcement-data; Anna Flagg and Shannon Heffernan, *ICE Has Detained 6,200+ Kids in Trump's Second Term, Up 10x Since Biden Left Office*, THE MARSHALL PROJECT (Apr. 6, 2026), https://www.themarshallproject.org/2026/04/06/ice-kids-detention-over-6200-trump; Ari Snider, *Only 6% of those arrested during January ICE surge in Maine had criminal convictions*, WBUR (Apr. 1, 2026), https://www.wbur.org/news/2026/04/01/january-immigration-enforcement-maine-criminal-convictions.

[15] *See e.g.*, Jenny Jarvie, *Trump boasts of deporting the 'worst of the worst.' L.A. raids tell a far different story*, LA TIMES (July 26, 2025), https://www.latimes.com/california/story/2025-07-26/trump-deporting-worst-of-worst-reality; Laura Romero, *Trump vowed to deport the 'worst of the worst' -- but new data shows a shift to also arresting non-criminals*, ABC NEWS (July 1, 2025), https://abcnews.com/US/trump-vowed-deport-worst-worst-new-data-shows/story?id=123287810; Aileen Clarke, *Trump promised to deport hardened criminals. But most Texans arrested by ICE had no convictions.,* HOUSTON CHRONICLE (Mar. 11, 2026), https://www.houstonchronicle.com/projects/2026/texas-ice-arrests-tracker/; Albert Sun, *Most immigrants arrested in city crackdowns have no criminal record*, NEW YORK TIMES (Dec. 4, 2025), https://www.nytimes.com/interactive/2025/12/04/us/ice-arrests-criminal-records-data.html; Julia Ingram, *Most arrested in some big city immigration crackdowns had no criminal record, new data shows*, CBS NEWS (Dec. 3, 2025), https://www.cbsnews.com/news/immigration-crackdowns-mostly-non-criminals-chicago-dc-los-angeles-data/; Joe Mahr, *Nearly 1,900 immigrants were detained during the first half of Operation Midway Blitz. Most had no criminal record.*, CHICAGO TRIBUNE (Dec. 1, 2025), https://www.chicagotribune.com/2025/12/01/operation-midway-blitz-criminal-record/; Emmanuel Martinez, *ICE increasingly targets undocumented migrants with no criminal record*, WASHINGTON POST (July 3, 2025), https://www.washingtonpost.com/immigration/2025/07/03/ice-arrests-migrants-criminal-record-numbers/.

men it deported to the Terrorism Confinement Center ("CECOT") in El Salvador;[16] that ICE may be operating undisclosed holding facilities or operating them in a manner that violates terms of local permits;[17] and that there are increased numbers of children held in detention for lengthy periods of time, possibly in violation of a settlement agreement that generally limits the number of days children may be held in ICE custody.[18]

24. Recent releases of the data have also been valuable for proponents of the administration's immigration enforcement policies. For example, the White House has relied on the data, issuing a press release linking to various news articles using the Spreadsheets released by the Deportation Data Project.[19]

25. Likewise, policymakers have used the Spreadsheets to hold federal government officials accountable. For instance, the City of Portland, Oregon, reviewed the Spreadsheets to find "more than a dozen instances of detainees being kept overnight or held [in an ICE facility in Southwest Portland] for more than 12 hours, which is in violation of the facility's land use conditions of approval with the City."[20] Courts have also benefitted from facts developed using the Spreadsheets in consequential litigation involving immigration enforcement. For example, this Court relied on the Spreadsheets in issuing a decision staying ICE's policy of re-arresting

[16] 60 Minutes, *Minneapolis, Inside CECOT, Salties | 60 Minutes Full Episodes*, YouTube (Jan. 19, 2026), https://www.youtube.com/watch?v=oQwSQsufQnM&t=1792s.

[17] Eleanor Bennett, *City could revoke permit after data shows ICE detainees held for more than 12 hours at Glenwood facility*, ASPEN JOURNALISM (Mar. 17, 2026), https://aspenjournalism.org/city-could-revoke-permit-after-data-shows-ice-detainees-held-for-more-than-12-hours-at-glenwood-facility/; Jason Salzman, *Denver 'Hold Room' Revealed: ICE Has Detained Thousands of People at Its Field Office in Centennial*, COLORADO TIMES RECORDER (Mar. 16, 2026), https://coloradotimesrecorder.com/2026/03/denver-hold-room-revealed-ice-has-detained-thousands-of-peope-at-its-field-office-in-centennial/77329/; *ICE quietly operating 'holdroom' facility in Alamosa*, ALAMOSA CITIZEN (Mar. 10, 2026), https://www.alamosacitizen.com/ice-quietly-operating-holdroom-facility-in-alamosa/.

[18] Anna Flagg, *ICE Threw Thousands of Kids in Detention, Many For Longer Than Court-Prescribed Limit*, THE MARSHALL PROJECT (Dec. 17, 2025), https://www.themarshallproject.org/2025/12/17/children-immigration-detention-dilley-ice.

[19] Press Release, THE WHITE HOUSE, President Trump Delivers Again: ICE Arrests Surge Nationwide (July 22, 2025), https://www.whitehouse.gov/releases/2025/07/president-trump-delivers-again-ice-arrests-surge-nationwide/.

[20] CITY OF PORTLAND, *Land use violation at the ICE facility*, https://www.portland.gov/federal/about-ice/ice-land-use-violation (last updated Apr. 21, 2026).

and re-detaining noncitizens the government previously released from custody. *See Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 996 n.8 (N.D. Cal. 2025) (citing Deportation Data Project and three articles using the Spreadsheets).

26.    In addition to publicly posting the Spreadsheets, Hausman has analyzed the data and issued reports using that analysis,[21] and Hausman and his colleagues at the Deportation Data Project have posted additional materials for the public to better understand the data.[22]

27.    Timely release of the Spreadsheets is critical. In an environment of rapidly changing immigration enforcement policy, "stale information is of little value." *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).

28.    Between October 15, 2025, and March 10, 2026—a period in which the Deportation Data Project obtained no updates to the Spreadsheets—several news organizations published stories about the lack of data available to assess patterns in ICE enforcement.[23] During this time, Hausman and his colleagues at the Deportation Data Project received dozens of inquiries from journalists, advocates, researchers, and members of the public asking when the Deportation Data Project would obtain and publish updated versions of the Spreadsheets.

29.    Because of the enormous value the Spreadsheets hold for public understanding of the federal government's enforcement policies and practices, Hausman requests the Spreadsheets monthly from ICE.

**B.  The Spreadsheets Are Easily Producible and Frequently Requested.**

30.    The Spreadsheets contain anonymized records of ICE encounters, detainers, arrests, detentions, and removals. These data reveal each instance of an immigration enforcement

---

[21] DEPORTATION DATA PROJECT: DATA ANALYSIS, https://deportationdata.org/analysis.html (last visited Apr. 29, 2026).

[22] DEPORTATION DATA PROJECT: ICE DATA DOCUMENTATION, https://deportationdata.org/docs/ice.html (last visited Apr. 29, 2026).

[23] Rebecca Santana, *As Trump pushes deportations, immigration data becomes harder to find*, ASSOCIATED PRESS (Mar. 15, 2026), https://apnews.com/article/trump-immigration-data-numbers-deportations-000a289890193c94474f19b877eb37d1; Jackie Llanos, *Trump Administration Stops Publishing Immigration Data as It Ramps Up Deportations*, NOTUS (Nov. 3, 2025), https://www.notus.org/immigration/trump-administration-immigration-data-deportations.

action and, through the inclusion of anonymized unique identifiers, allow the public to trace the enforcement outcomes for each affected individual as that individual moves through the enforcement system, from arrest to detention to potential deportation, without identifying any particular individual.

31. Unlike FOIA requests for documents, which often require searches of many custodians and information systems as well as time-consuming manual review for the applicability of exemptions, requests for the Spreadsheets only require producing copies of the Spreadsheets and redacting a small number of columns—the same few columns each time. This simple process does not consume significant resources.

32. Many FOIA requesters have sought the same spreadsheets in the past. In addition to Hausman's own requests, at least 24 other requesters across the country submitted similar requests for these spreadsheets in 2025 alone. Many, but not all, of these requests occurred at Hausman's encouragement, as users of the data sought to help the Deportation Data Project obtain more frequent updates and post them publicly.

33. While ICE has previously released these spreadsheets under FOIA, it has only done so following litigation over ICE's failure to respond within the statutory deadline. ICE has repeatedly faced litigation under FOIA over substantially similar data. *See, e.g.*, *Mukherjee v. ICE*, No. 1:25-cv-08072 (S.D.N.Y. filed Sept. 29, 2025); *Ctr. for Immigr. Law & Pol'y v. ICE*, No. 2:24-cv-10444 (C.D. Cal. filed Dec. 4, 2024); *N.Y. Times v. ICE*, No. 1:25-cv-04356 (S.D.N.Y. filed May 23, 2025); *Am. C.L. Union Immigrants' Rts. Project v. ICE*, No. 1:19-cv-07058 (S.D.N.Y. filed July 29, 2019).

34. Monthly release of the Spreadsheets has the potential to save significant resources for the ICE FOIA office, since requesters frequently file FOIA requests and sue ICE under FOIA seeking a subset of the Spreadsheets for a given population, location, or type of enforcement action—information that is usually available from the Deportation Data Project website if the project has recently obtained an update to the Spreadsheets. *See, e.g.*, *Immigrant Legal Def. v. ICE*, No. 3:24-cv-09326 (N.D. Cal. filed Dec. 23, 2024) (seeking individual-level detentions data for individuals granted withholding of removal or deferral of removal); *Harbor Inst. for*

*Immigrant & Econ. Just. v. ICE*, No. 8:24-cv-02738 (C.D. Cal. filed Dec. 19, 2024) (seeking individual-level arrest data); *Sherman-Stokes v. ICE*, No. 1:24-cv-12533 (D. Mass. filed Oct. 3, 2024) (seeking individual-level detentions data); *Am. Immigr. Council v. DHS*, No. 1:22-cv-02250 (D.D.C. filed Aug. 1, 2022) (seeking individual-level data about individuals detained at a particular detention facility).

35. The Deportation Data Project has posted the Spreadsheets six times since 2025, but those updates occurred only in spite of ICE's pattern or practice of noncompliance. The six updates were the result of two lawsuits from different requesters, and three of the updates occurred during a two-month period in the summer of 2025 in which ICE repeatedly had to produce revised sets of the data because of missing rows in one of the Spreadsheets. The Deportation Data Project worked with both requesters to make these records publicly available.

36. In late 2024, the Center for Immigration Law and Policy ("CILP") sued ICE under FOIA seeking, *inter alia*, all five categories of data now requested by Hausman (arrests, detentions, removals, encounters, and detainers). *See Ctr. for Immigr. Law & Pol'y v. ICE*, No. 2:24-cv-10444 (C.D. Cal. filed Dec. 4, 2024). In the *CILP* litigation, ICE produced data substantially similar to the Spreadsheets five times in the eight months between March 2025 and November 2025. Three of these updates occurred after CILP identified missing rows in one of the Spreadsheets and ICE agreed to provide a revised production to include those rows. A fourth update occurred as part of a settlement agreement to resolve all remaining issues in the lawsuit including CILP's claim for attorney's fees. Absent the agency's errors and the plaintiff's willingness to give up fees, the lawsuit would have produced only a single update of the Spreadsheets—and the delays between updates would have been correspondingly longer, since the requester would have needed to file a new request, wait for the statutory period to run, file litigation, and wait at least another 30 days for ICE to respond.

37. Such delays would not reflect any necessary production time: two of the releases in the *CILP* case came within eight working days of each other. That ICE was able to produce the spreadsheets, review them for redactions, and provide them to a FOIA requester within eight working days shows that ICE is able to produce the Spreadsheets in short order.

38.     In late 2025, after CILP had reached a tentative agreement with ICE to settle its case,[24] Elora Mukherjee, Hausman's colleague at the Deportation Data Project, filed suit against ICE in the Southern District of New York requesting similar categories of data. *See Mukherjee v. ICE*, No. 1:25-cv-08072 (S.D.N.Y. filed Sept. 29, 2025). That litigation resulted in ICE producing the Spreadsheets in late March 2026. The result was a nearly five-month gap between a release covering dates through October 15, 2025, and the most recent release, covering dates through March 10, 2026.

**C.  Hausman Has Submitted Monthly Requests for The Spreadsheets and Intends to Continue Doing So in the Future.**

39.     On September 15, 2025, Hausman submitted a request for records under FOIA to ICE via ICE's online Secure Release portal and by mail.

40.     On October 15, 2025, Hausman submitted a request for records under FOIA to ICE via ICE's online Secure Release portal and by mail.

41.     On November 15, 2025, Hausman submitted a request for records under FOIA to ICE via ICE's online Secure Release portal and by mail.

42.     On December 15, 2025, Hausman submitted a request for records under FOIA to ICE via ICE's online Secure Release portal.

43.     On January 15, 2026, Hausman submitted a request for records under FOIA to ICE via ICE's online Secure Release portal.

44.     On February 16, 2026, Hausman submitted a request for records under FOIA to ICE via ICE's online Secure Release portal.

45.     On March 17, 2026, Hausman submitted a request for records under FOIA to ICE via ICE's online Secure Release portal.

46.     Hausman submitted the foregoing FOIA Requests for the purpose of informing the public about ICE enforcement.

47.     Each of Hausman's requests sought the Spreadsheets, including information from

---

[24] The *CILP* litigation was not ultimately dismissed until early 2026 because the government shutdown in the fall of 2025 delayed the production required by CILP's agreement with ICE.

Fiscal Year 2012 to the present concerning the following categories: (1) arrests; (2) detentions; (3) removals; (4) encounters; and (5) detainers. The requests sought a specific list of nonexempt spreadsheet columns for each of these categories.

48.    The requests noted that ICE is required to link each of these categories with the others by producing anonymized unique identifiers that correspond to "A-numbers."[25]

49.    The requests also noted that ICE has released nearly all these categories of data in the past and that many of the requested columns have been recently released in response to FOIA case number 2024-ICFO-39357 / 2025-ICLI-00019.

50.    Hausman sought expedited processing of the requests for two independent reasons. *See* 5 U.S.C. § 552(a)(6)(E); 6 C.F.R. § 5.5(e)(1). First, the requests explained that there is a "compelling need" for these records because they involve a matter of "widespread and exceptional media interest raising possible questions about the government's integrity." 5 U.S.C. § 552(a)(6)(E)(i)(I); 6 C.F.R. § 5.5(e)(1)(iv). Second, the requests explained that there is a "compelling need" for these records because the information requested is "urgen[tly]" needed by an organization engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(1)(ii).

51.    With respect to the first basis for seeking expedited processing, concerning a matter of widespread and exceptional media interest, the requests explained that the Spreadsheets have been widely cited and have resulted in crucial reporting on patterns in enforcement practices. Hausman attached to the requests a table including a highly underinclusive list of 125 media articles citing the Spreadsheets made public by the Deportation Data Project. The requests also explained that many of the media articles cited contradicted the administration's claims about its immigration enforcement policies and practices, thereby raising possible questions about the government's integrity.

52.    With respect to the second basis for seeking expedited processing, concerning an urgency to inform the public about federal government activity, the requests explained that the

---

[25] Alien Registration Numbers, also known as "A-numbers," are unique seven-, eight- or nine-digit identification numbers that DHS assigns to noncitizens.

Spreadsheets seek to inform the public about the government's current enforcement policies and practices, including the change in enforcement under the new administration, which has been the subject of constant media and public attention in recent months. The requests further explained that ICE's release of the Spreadsheets has played an important role in informing the public about ICE's activities in the past and that updated data would similarly address an urgent need for journalists and researchers to understand frequently changing immigration enforcement policy.

53.    The requests also explained that Hausman is "primarily engaged in disseminating information" within the meaning of FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(1)(ii). The Deportation Data Project, of which Hausman is a co-Director, collects, analyzes, and posts public, anonymized U.S. government immigration enforcement datasets.

54.    The Deportation Data Project's primary goal is to disseminate information about datasets such as the ones at issue in this litigation. The Deportation Data Project's website, which posts the Spreadsheets and other government data, is broadly circulated and widely available to the public at no cost.

55.    The requests further explained that the Deportation Data Project intends to analyze, publish, and disseminate to the public information gathered through the request at no cost.

56.    Given the foregoing, Hausman satisfied the requirements for expedited processing of the requests.

57.    In addition, Hausman sought a full fee waiver because disclosure of the requested records is in the public interest, is "likely to contribute significantly to public understanding of operations or activities of the government," and is "not primarily in the commercial interest of the requestor." 5 U.S.C. § 552(a)(4)(A)(iii); 6 C.F.R. § 5.11(k)(1).

58.    The requests explained that a fee waiver is required because disclosure of the Spreadsheets is in the public interest and will contribute significantly to the public's understanding of ICE's enforcement practices. The requests further explained that the records are not sought for commercial use and that Hausman plans to disseminate the information to the public at no cost.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
- 15 -

59. Hausman is, therefore, entitled to a full fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii).

60. The requests asked that responsive electronic records be provided in their native file format.

61. On March 19, 2026, Hausman submitted to ICE a renewed request for expedited processing of his requests for the Spreadsheets via email and mail. The renewed requests provided additional support for Hausman's original request for expedited processing.

62. In support of his renewed request for expedited processing on the basis of widespread and exceptional interest, *see* 6 C.F.R. § 5.5(e)(1)(iv), Hausman attached a list of an additional 150 articles and reports citing the Deportation Data Project's release of the Spreadsheets. The request additionally noted that Hausman and his colleagues at the Deportation Data Project had received dozens of inquiries from journalists asking when they would obtain and publish more recent enforcement data. The request added that the widespread and exceptional media interest has led to questions about the government's integrity, citing several examples of stories using the Spreadsheets that have contradicted the government's claims about its enforcement policies and practices.

63. In support of his renewed request for expedited processing on the basis of urgency to inform the public, *see* 5 U.S.C. § 552(a)(6)(E)(v)(II), 6 C.F.R. § 5.5(e)(1)(ii), Hausman explained that he is primarily engaged in disseminating information within the meaning of FOIA, that the requested records concern federal government activity, that the requested records concern a matter of current exigency to the American public, and that the consequences of delaying a response would compromise a significant recognized interest.

64. Hausman intends to submit additional requests for the Spreadsheets under FOIA to ICE on a monthly basis.

**D. ICE Has Failed to Issue Timely Determinations on Hausman's Requests.**

*September FOIA Request*

65.     By email dated September 19, 2025, ICE sent a "Clarification Request" relating to the September FOIA Request. The email referred to the FOIA request dated September 15, 2025, which had been assigned case number 2025-ICFO-60381. The email stated that the ICE FOIA Office needed "further clarification" regarding the request, alleging that the request was "too broad." The email further requested that the request be narrowed to records from 2023 to present (rather than 2012 to present). The email did not make any determination with respect to Hausman's request for a fee waiver and expedited processing.

66.     By email dated September 26, 2025, counsel for Hausman responded to the Clarification Request of September 19, 2025. Counsel informed the ICE FOIA Office that Hausman did not need to narrow the timeframe of the request because the request was reasonably described. Counsel requested that the ICE FOIA office resume processing of the request and provide data for the full time period requested.

67.     By email dated September 29, 2025, ICE acknowledged receipt of the September FOIA request. ICE denied Hausman's request for expedited treatment. ICE failed to provide Hausman with a fee waiver.

68.     Hausman has received no further response or communication from ICE regarding the September FOIA Request.

*October FOIA Request*

69.     By email dated January 12, 2026, ICE acknowledged receipt of the October FOIA request. The email referred to the FOIA request dated October 15, 2025, which had been assigned case number 2026-ICFO-01794. ICE denied Hausman's request for expedited treatment. ICE failed to provide Hausman with a fee waiver.

70.     Hausman has received no further response or communication from ICE regarding the October FOIA Request.

*November FOIA Request*

71.     By email dated December 9, 2025, ICE acknowledged receipt of the November FOIA request. The email referred to the FOIA request dated November 15, 2025, which had been assigned case number 2026-ICFO-05204. ICE denied Hausman's request for expedited treatment. ICE failed to provide Hausman with a fee waiver.

72.     Hausman has received no further response or communication from ICE regarding the November FOIA Request.

*December FOIA Request*

73.     By email dated January 6, 2026, ICE sent a "Clarification Request" relating to the December FOIA Request. The email referred to the FOIA request dated December 15, 2025, which had been assigned case number 2026-ICFO-08556. The email stated that the ICE FOIA Office needed "further clarification" regarding the request, alleging that the request was "too broad." The email further requested that the request be narrowed to "3-5 years." The email did not make any determination with respect to Hausman's request for a fee waiver and expedited processing. This clarification request seemed to ignore Hausman's response to the September 19, 2025 clarification request.

74.     Hausman has received no further response or communication from ICE regarding the December FOIA Request.

*January FOIA Request*

75.     By email dated January 20, 2026, ICE acknowledged receipt of the January FOIA request. The email referred to the FOIA request dated January 15, 2025, which had been assigned case number 2026-ICFO-11946. ICE denied Hausman's request for expedited treatment. ICE failed to provide Hausman with a fee waiver.

76.     Hausman has received no further response or communication from ICE regarding the January FOIA Request.

*February FOIA Request*

77.     Hausman has not received any response or communication from ICE regarding the February FOIA Request.

*March FOIA Request*

78.     Hausman has not received any response or communication from ICE regarding the March FOIA Request.

*Renewed Request for Expedited Processing*

79.     In response to Hausman's renewed request for expedited processing of his FOIA requests submitted to the agency on March 19, 2026, the ICE FOIA Public Liaison responded via email on April 23, 2026, noting the status of Hausman's requests. The response did not substantively address Hausman's renewed request for expedited processing.

*ICE's Persistent Violations of FOIA*

80.     ICE has produced no records in response to the September FOIA Request, the October FOIA Request, the November FOIA Request, the December FOIA Request, the January FOIA Request, the February FOIA Request, or the March FOIA Request.

81.     ICE did not make determinations within twenty working days as required by FOIA, which expired on October 14, 2025, November 13, 2025, December 16, 2025, January 16, 2026, February 13, 2026, March 16, 2026, and April 14, 2026, respectively. To date, ICE has neither released responsive records nor explained its basis for withholding them.

82.     Exceptional circumstances do not justify ICE's delay in processing Hausman's requests for the Spreadsheets.

83.     ICE's failure to respond to each of Hausman's FOIA requests is not an isolated incident. Rather, ICE has a pattern and practice of not complying with its legal obligations under FOIA, including 5 U.S.C. § 552(a)(6)(A) and (3)(A), to respond to the FOIA requests of Hausman and other requesters.

84.     A single complete production of updated Spreadsheets will provide relief with respect to all Hausman's pending requests for the Spreadsheets. However, a single release of the Spreadsheets with updated data will not cure the agency's pattern or practice of violations.

85.     ICE has a pattern or practice of failing to render determinations in response to Hausman's requests for the Spreadsheets within the statutory time frames in 5 U.S.C. § 552(a)(6)(A)(i). Failing to issue a timely determination and make records "promptly available"

as required by 5 U.S.C. § 552(a)(3)(A) constitutes an improper withholding of records responsive to Hausman's FOIA requests.

86. Hausman and the public have been and will continue to be irreparably harmed by ICE's failure to respond to his FOIA requests and its ongoing pattern and practice of not complying with FOIA. ICE has wrongfully interfered with Hausman's work in educating the public about ICE enforcement through the Deportation Data Project. ICE's pattern and practice of not complying with FOIA will continue to wrongfully interfere with that ongoing work.

### FIRST CLAIM FOR RELIEF

**Violation of Freedom of Information Act, 5 U.S.C. § 552,
for Wrongful Withholding of Agency Records**

87. ICE is required to make determinations on Hausman's requests within the statutorily prescribed time period of twenty working days, as required by 5 U.S.C. § 552(a)(6)(A) and 6 C.F.R. § 5.6(c), and to make records "promptly available," as required by 5 U.S.C. § 552(a)(3). Hausman has a legal right to obtain such records, and no legal basis exists for ICE's failure to conduct a reasonable search for records through the present date and produce those records promptly.

88. ICE was required to make a determination on Hausman's FOIA requests within twenty working days under 5 U.S.C. § 552(a)(6)(A) and 6 C.F.R. § 5.6(c). This deadline may be extended by no more than ten working days if ICE notifies Hausman in writing of the existence of "unusual circumstances" and a date on which the agency is expected to issue its determination. 5 U.S.C. § 552(a)(6)(B)(i). ICE failed to properly invoke the ten-day extension provision. Therefore, ICE should have made a determination as to Hausman's FOIA requests by October 14, 2025 (for the September FOIA Request); November 13, 2025 (for the October FOIA Request); December 16, 2025 (for the November FOIA Request); January 16, 2026 (for the December FOIA Request); February 13, 2026 (for the January FOIA Request); March 16, 2026 (for the February FOIA Request); and April 14, 2026 (for the March FOIA Request).

89. No basis exists for ICE's failure to provide a timely determination in response to Hausman's requests. Hausman has exhausted his administrative remedies by virtue of ICE's failure to respond to his FOIA requests.

90. By failing to make determinations on Hausman's requests within 20 working days and by continuing to withhold documents that are non-exempt and responsive to Hausman's FOIA requests, ICE has violated 5 U.S.C. § 552(a)(3), (6)(A), and its own regulations.

## SECOND CLAIM FOR RELIEF

**Violation of Freedom of Information Act, 5 U.S.C. § 552,
for Failure to Grant Expedited Processing**

91. Under 5 U.S.C. § 552(a)(6)(E)(i)(I), agencies are required to promulgate regulations to provide for expedited processing of requests for records where there is a "compelling need." DHS regulations provide that requests and appeals must be processed on an expedited basis where there is, *inter alia*, "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person who is primarily engaged in disseminating information;" or "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(ii), (iv).

92. There is a compelling need for expeditious consideration of the FOIA requests for the Spreadsheets. Hausman seeks to disseminate to the public information from ICE that continues to be the subject of widespread and exceptional media interest which raises questions about the government's integrity. Hausman is primarily engaged in disseminating information and there is an urgency to inform the public about ICE's enforcement practices.

93. Hausman requested expedited processing of the September FOIA Request, which ICE denied. Hausman requested expedited processing of the October FOIA Request, which ICE denied. Hausman requested expedited processing of the November FOIA Request, which ICE denied. Hausman requested expedited processing of the December FOIA Request, the January FOIA Request, the February FOIA Request, and the March FOIA Request. For each of these requests, ICE failed to respond within the ten-day determination period. *See* 5 U.S.C. §

552(a)(6)(E)(ii)(I); 6 C.F.R. § 5.5(e)(4). Hausman renewed his request for expedited processing for each of these FOIA requests on March 19, 2026. ICE failed to grant or deny this request within the ten-day determination period. *See id*.

94.     By denying or failing to timely respond to Hausman's requests for expedited processing, ICE has violated Hausman's rights under 5 U.S.C. § 552(a)(6)(E) and its own regulations.

## THIRD CLAIM FOR RELIEF

### Violation of Freedom of Information Act, 5 U.S.C. § 552, for Engaging in an Unlawful Pattern or Practice

95.     ICE is obligated under 5 U.S.C. § 552(a)(3) to conduct a reasonable search for records responsive to Hausman's requests for the Spreadsheets and make records promptly available to him. ICE also must issue a determination concerning each request within the time period set forth in 5 U.S.C. § 552(a)(6)—twenty working days, to be extended by no more than ten working days in the event that the agency notifies the requester in writing of the existence of "unusual circumstances" and a date on which the agency expects to issue its determination. 5 U.S.C. § 552(a)(6)(B)(i).

96.     ICE regularly fails to timely adjudicate Hausman's requests for the Spreadsheets.

97.     ICE has a pattern or practice of not complying with 5 U.S.C. § 552 and specifically failing to make determinations on Hausman's and others' requests for the Spreadsheets within the statutory deadline and failing to make requested records promptly available. *See* 5 U.S.C. § 552(a)(3), (a)(6)(A)(i).

98.     ICE's repeated, unlawful actions have resulted, and will continue to result, in the untimely access to documents to which Hausman and the public are entitled.

99.     By engaging in an ongoing pattern or practice of unreasonably delaying its FOIA determinations and the production of non-exempt records responsive to Hausman's FOIA requests for the Spreadsheets, ICE has repeatedly violated 5 U.S.C. § 552.

**FOURTH CLAIM FOR RELIEF**

**Violation of Freedom of Information Act, 5 U.S.C. § 552,
for Failure to Grant Requests for Fee Waiver**

100.    Under 5 U.S.C. § 552(a)(4)(A)(iii), ICE is required to waive or reduce fees associated with a FOIA request where "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."

101.    ICE's disclosure of the Spreadsheets responsive to Hausman's FOIA requests would be in the public interest. It would likely contribute significantly to the public understanding of the operations and activities of ICE. It is not in Hausman's commercial interest.

102.    By failing to grant Hausman's request for a fee waiver, ICE has denied Hausman's rights under 5 U.S.C. § 552(a)(4)(A)(iii) and its own regulations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

a.    Assume jurisdiction over this action;

b.    Declare unlawful Defendant's refusal to disclose the records requested;

c.    Declare that Defendant's failure to make a determination with respect to Plaintiff's FOIA requests within the statutory time limit and Defendant's failure to disclose responsive records violates FOIA;

d.    Declare unlawful Defendant's failure to grant Plaintiff's request for a fee waiver;

e.    Declare unlawful Defendant's pattern or practice of violating 5 U.S.C. § 552;

f.    Compel Defendant to conduct a full, adequate, and expeditious search for records responsive to Plaintiff's FOIA requests for the Spreadsheets and to produce any and all such records to Plaintiff;

g.    Enjoin Defendant from withholding non-exempt records responsive to Plaintiff's FOIA requests for the Spreadsheets and order it to promptly produce the same without redaction;

h.  Enjoin Defendant from assessing fees or costs for the processing of Plaintiff's FOIA requests;

i.  Enjoin Defendant from engaging in a pattern or practice of failing to make determinations on Plaintiff's requests for the Spreadsheets within the statutory deadline as mandated by 5 U.S.C. § 552(a)(6)(A)(i) and failing to make records promptly available under 5 U.S.C. § 552(a)(3)(A);

j.  Issue a permanent injunction requiring Defendant to make determinations within twenty working days on future FOIA requests filed with Defendant by Plaintiff for the Spreadsheets, as mandated by 5 U.S.C. § 552(a)(6)(A)(i), and to make records promptly available, as mandated by 5 U.S.C. § 552(a)(3)(A), within eight working days of a determination;

k.  Award Plaintiff reasonable attorney's fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E) and any other applicable law; and

l.  Grant any such further relief as the Court deems just and equitable.

Dated:  April 29, 2026                     Respectfully submitted,

                                           /s/ Khaled Alrabe
                                           Khaled Alrabe
                                           Email: khaled@nipnlg.org
                                           National Immigration Project
                                           1400 Shattuck Ave, Suite 12 PMB #141
                                           Berkeley, CA 94709
                                           Telephone: (617) 227-9727

                                           Amber Qureshi (DC 90001046)*
                                           Email: amber@qureshilegal.com
                                           Law Office of Amber Qureshi, LLC
                                           6925 Oakland Mills Road PMB#207
                                           Columbia, MD 21045
                                           Telephone: (443) 583-4353

                                           * Application for admission *pro hac vice* forthcoming

                                           *Attorneys for Plaintiff David K. Hausman*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
- 24 -