Khaled Alrabe (CA SBN 349899)
Email: khaled@nipnlg.org
NATIONAL IMMIGRATION PROJECT
1400 Shattuck Ave, Suite 12 PMB #141
Berkeley, CA 94709
Telephone: (617) 227-9727

Amber Qureshi (DC 90001046)*
Email: amber@qureshilegal.com
LAW OFFICE OF AMBER QURESHI, LLC
6925 Oakland Mills Road PMB #207
Columbia, MD 21045
Telephone: (443) 583-4353

* Admitted *pro hac vice*

 Attorneys for Plaintiff David K. Hausman

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID K. HAUSMAN,<br><br>        Plaintiff,<br><br>    v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>        Defendant. | Case No. 3:26-cv-03730-AMO<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date: June 18, 2026<br>Time: 2:00 p.m.<br>Courtroom: 10<br>Judge: Hon. Araceli Martínez-Olguín<br><br>Date Action Filed: April 29, 2026 |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 18, 2026 at 2:00 P.M., or as soon thereafter as may be heard before the Honorable Araceli Martínez-Olguín in Courtroom 10 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiff David K. Hausman ("Hausman") will and hereby does move for an order granting preliminary injunctive relief against Defendant U.S. Immigration and Customs Enforcement ("ICE").

Pursuant to Federal Rule of Civil Procedure 65, Hausman seeks to enjoin ICE from impeding his efforts to expeditiously obtain agency records (the "Spreadsheets") under the Freedom of Information Act ("FOIA") and from engaging in its pattern or practice of failing to make determinations on whether to comply with Hausman's FOIA requests and release non-exempt records promptly. Hausman respectfully asks that this Court issue an order directing ICE to: (1) expedite processing of Hausman's requests and produce the Spreadsheets within eight working days of the Court's order; (2) make determinations on Hausman's future requests for the Spreadsheets within 20 working days and produce the Spreadsheets within eight working days of a determination going forward; and (3) submit quarterly compliance reports to the Court.

This motion is based on this notice of motion; the memorandum of points and authorities in support of this motion; the declarations of David K. Hausman, Joseph Mahr, Samuel B. Dinning, Ian Head, Elizabeth Wu, Ian Austin Rose, and Carl Bergquist, and evidence filed concurrently herewith; the Complaint; all papers and records on file with the Clerk or which may be submitted prior to or at the time of the hearing; and any further evidence which may be offered.

Dated: May 6, 2026

Khaled Alrabe
Email: khaled@nipnlg.org
National Immigration Project
1400 Shattuck Ave, Suite 12 PMB #141
Berkeley, CA 94709
Telephone: (617) 227-9727

Respectfully submitted,

*/s/ Amber Qureshi*
Amber Qureshi (DC 90001046)*
Email: amber@qureshilegal.com
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Road PMB#207
Columbia, MD 21045
Telephone: (443) 583-4353

\* Admitted *pro hac vice*

*Attorneys for Plaintiff David K. Hausman*

## TABLE OF CONTENTS

I.      INTRODUCTION....................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................................3

    A.    There is Substantial Public Interest in the Spreadsheets....................................3

    B.    ICE Has a Pattern or Practice of Failing to Timely Produce the Spreadsheets Absent Litigation............................................................................................................6

    C.    The Spreadsheets Are Easily Producible. ..........................................................9

    D.    ICE Has Failed to Respond to Hausman's Requests for the Spreadsheets.......................9

    E.    Hausman Will Continue Submitting Requests for the Spreadsheets. .............................11

III.    ARGUMENT........................................................................................................11

    A.    Hausman is Likely to Prevail on the Merits of His Claims. ...........................................12

        1.    ICE Has Failed to Process Hausman's Requests Within FOIA's Deadlines. ...............12

        2.    Hausman's Requests are Entitled to Expedited Processing. ...........................................14

            i.    Hausman is entitled to expedited processing under 6 C.F.R. § 5.5(e)(1)(iv). ...........15

            ii.   Hausman is entitled to expedited processing under 6 C.F.R. § 5.5(e)(1)(ii). ............16

        3.    ICE Has a Pattern or Practice of Failing to Comply with FOIA When Responding to Hausman's Requests for the Spreadsheets....................................................................17

    B.    Hausman Is Likely to Suffer Irreparable Harm Absent Preliminary Relief. ...................20

    C.    The Balance of the Equities and the Public Interest Favor Relief. ...............................23

    D.    Injunctive Relief is Necessary and Proper to Correct ICE's Prolonged, Persistent, and Pervasive FOIA Delays.................................................................................................24

IV.     CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501 (S.D.N.Y. 2004) .............................................. 12

*Al-Fayed v. C.I.A.*, 254 F.3d 300 (D.C. Cir. 2001) ...................................................................... 16

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .................................. 11

*Am. C.L. Union Immigrants' Rts. Project v. ICE*, No. 1:19-cv-07058 (S.D.N.Y. filed Jul. 29, 2019) ............................................................................................................................................ 19

*Am. C.L. Union of N. California v. U.S. Dep't of Def.*, No. C 06-01698 WHA, 2006 WL 1469418 (N.D. Cal. May 25, 2006) ..................................................................................... 14, 17

*Am. C.L. Union v. U.S. Dep't of Just.*, 321 F. Supp. 2d 24 (D.D.C. 2004) ................................. 15

*Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32 (D.D.C. 2020) .. 17, 21

*Am. Immigration Council v. DHS*, No. 1:22-cv-02250-ABJ (D.D.C. filed Aug. 1, 2022).......... 19

*Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182 (D.D.C. 2019) ........................... 13, 25

*Animal Legal Def. Fund v. United States Dep't of Agric.*, 933 F.3d 1088 (9th Cir. 2019) ......... 18

*Arevalo v. Hennessy*, 882 F.3d 763 (9th Cir. 2018)..................................................................... 22

*Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87 (D.D.C. 2020).. 15

*Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, No. CV 25-4426 (CKK), 2026 WL 472589 (D.D.C. Feb. 19, 2026) ............................................................................... 16

*Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013) ......................................................................................................................... 13, 14

*Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Just.*, 436 F. Supp. 3d 354 (D.D.C. 2020) ............................................................................................................................. 14

*Ctr. for Immigr. Law & Pol'y v. ICE*, No. 2:24-cv-10444 (C.D. Cal. filed Dec. 4, 2024) ........................................................................................................................... 7, 8, 19, 20

*Ctr. for Pub. Integrity v. United States Dep't of Def.*, 411 F. Supp. 3d 5 (D.D.C. 2019) ............ 23

*D.N.N. v. Liggins*, No. 1:25-CV-01613-JRR, 2026 WL 632371 (D. Md. Mar. 6, 2026) ............ 22

*Democracy Forward Found. v. Dep't of Just.*, 813 F. Supp. 3d 1 (D.D.C. 2025) ....................... 15

*Dep't of Just. v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989) ............. 23

*Elec. Frontier Found. v. Off. of the Dir. of Nat. Intel.*, 542 F. Supp. 2d 1181 (N.D. Cal. 2008) ("*EFF II*") ................................................................................................................... 12, 23, 25

*Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence*, No. C 07-5278 SI, 2007 WL 4208311 (N.D. Cal. Nov. 27, 2007) ("*EFF I*") ...................................................... 12, 23, 25

*Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30 (D.D.C. 2006) ................ 12, 22, 23, 25

*Garro Pinchi v. Noem*, 813 F. Supp. 3d 973 (N.D. Cal. 2025) ................................................. 5, 22

*Gerstein v. C.I.A.*, No. C-06-4643 MMC, 2006 WL 3462658 (N.D. Cal. Nov. 29, 2006) ......... 16

*Gerstein v. C.I.A.*, No. C 06-4643 MMC, 2006 WL 3462659 (N.D. Cal. Nov. 29, 2006) .... 12, 25

*Gilmore v. Dep't of Energy*, 33 F.Supp.2d 1184 (N.D. Cal. 1998) ........................................... 13

*Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086 (9th Cir. 2016) ............................... 18

*Hajro v. U.S. Citizenship & Immigr. Servs.*, 832 F. Supp. 2d 1095 (N.D. Cal. 2012), *rev'd on other grounds*, 811 F.3d 1086 (9th Cir. 2016) ............................................................. 18, 19, 24

*Harbor Inst. for Immigrant and Econ. Just. v. ICE*, No. 8:24-cv-02738-DOC-DFM (C.D. Cal. filed Dec. 19, 2024) .............................................................................................................. 19

*Immigrant Legal Def. v. ICE*, No. 3:24-cv-09326-LB (N.D. Cal. filed Dec. 23, 2024) .............. 19

*Jacksonville Port Authr. v. Adams*, 556 F.2d 52 (D.C. Cir. 1977) ........................................... 23

*Long v. U.S. I.R.S*, 693 F.2d 907 (9th Cir. 1982) ................................................................. passim

*Mukherjee v. ICE*, No. 1:25-cv-08072 (S.D.N.Y. filed Sept. 29, 2025) .................................. 8, 19

*N.Y. Times v. ICE*, No. 1:25-cv-04356 (S.D.N.Y. filed May 23, 2025) ...................................... 19

*Nightingale v. U.S. Citizenship & Immigr. Servs.*, 333 F.R.D. 449 (N.D. Cal. 2019) ................. 13

*Nightingale v. U.S. Citizenship & Immigr. Servs.*, 507 F. Supp. 3d 1193 (N.D. Cal. 2020) . 18, 24

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-1130 SC, 2015 WL 4452136 (N.D. Cal. July 20, 2015) ........................................................................................ 13

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-1130 SC, 2015 WL 6331268 (N.D. Cal. Oct. 21, 2015) ............................................................................. 18, 19, 24

*Payne Enters., Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) ................................... 11, 21

*Protect Democracy Project, Inc. v. United States Dep't of Just.*, 498 F. Supp. 3d 132 (D.D.C. 2020) ............................................................................................................................... 16, 24

*Ray v. DOJ*, 770 F. Supp. 1544 (S.D. Fla. 1990) ...................................................................... 24

*Sherman-Stokes v. ICE*, No. 1:24-cv-12533 (D. Mass. filed Oct. 3, 2024) ................................. 19

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ........................................................ 11

**Statutes**

5 U.S.C. § 552 .......................................................................................................................... passim

**Regulations**

6 C.F.R. § 5.4 ................................................................................................................................ 10

6 C.F.R. § 5.5 ............................................................................................................... 14, 15, 16, 17

**Other Authorities**

60 Minutes, *Minneapolis, Inside CECOT, Salties | 60 Minutes Full Episodes*, YouTube (Jan. 19, 2026), https://www.youtube.com/watch?v=oQwSQsufQnM&t=1792s ..................................... 4

DEPORTATION DATA PROJECT: DATA TOOLS, https://deportationdata.org/tools.html .............. 3, 23

DEPORTATION DATA PROJECT: IMMIGRATION AND CUSTOMS ENFORCEMENT ORIGINAL DATA, https://deportationdata.org/data/ice.html ................................................................................... 3

DEPORTATION DATA PROJECT: IMMIGRATION AND CUSTOMS ENFORCEMENT PROCESSED DATA, https://deportationdata.org/data/processed/ice.html .................................................................. 3

ICE: ICE Enforcement and Removal Operations Statistics, https://www.ice.gov/statistics ....... 21

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Since 2025, over 2,000 news reports have relied on a set of Excel spreadsheets ("the Spreadsheets") produced under the Freedom of Information Act ("FOIA") to report on current patterns in U.S. Immigration and Customs Enforcement ("ICE") arrests, detentions, and deportations, and to compare those patterns to enforcement under past administrations.[1] Similarly, members of Congress, state and local government agencies and officials, federal district courts, and advocacy organizations across the political spectrum have used the Spreadsheets to understand the extent of ICE's enforcement actions.

The Spreadsheets can only inform ongoing public debates when they are current, but ICE systematically fails to promptly produce the Spreadsheets, as required under FOIA. Even when a requester initiates litigation, obtaining the Spreadsheets takes months. Between updates to the Spreadsheets, the public remains in the dark about ICE's rapidly changing immigration enforcement practices. And ICE fails to produce the Spreadsheets in compliance with its FOIA obligations even though production is easy and quick; in fact, during recent litigation, ICE provided copies of the Spreadsheets within eight working days.

Plaintiff David K. Hausman ("Hausman") seeks an order from this Court enjoining the unlawful pattern or practice by Defendant ICE of failing to timely produce the Spreadsheets. A FOIA pattern-or-practice claim is necessary here because a FOIA claim concerning a specific request cannot cure this repeated timeliness violation. By waiting to release the Spreadsheets until confronted with litigation, ICE systematically evades FOIA's timeliness requirement: not only must a requester wait for the statutory period to run before filing suit (a minimum of 20 working days), but ICE receives another 30 days to answer the complaint. It is often only after this point that the requester and the agency begin to negotiate a schedule for production. The result is that, absent prospective relief requiring timely responses to future requests, there is no reliable way for a requester to obtain updates to the Spreadsheets more than once every few

---

[1] The Spreadsheets are easy for anyone to look at. The originals from earlier productions are available at https://deportationdata.org/data/ice.html.

months, at best, even when undertaking the burdensome process of repeatedly filing suit. It should not take repeated litigation and months of ensuing delays to obtain each update.

Hausman is a law professor at UC Berkeley and a co-Director of the Deportation Data Project ("DDP"), which provides a centralized repository of immigration enforcement data. That project not only aims to inform the public; it also aims to reduce burdens on the ICE FOIA office by providing a repository where journalists, advocates, and researchers can access ICE data without having to file piecemeal FOIA requests (for example, requests concerning a single city or detention center). To maintain this repository, Hausman seeks regular updates to the Spreadsheets and has filed several requests for the Spreadsheets that remain unanswered. In each of his requests, he has sought expedited processing, highlighting the immense public interest in timely updates to the Spreadsheets. Releases of the Spreadsheets—which DDP's website makes available to the public at no cost—have formed the basis for virtually all data-based news reporting on ICE enforcement activities since 2025.

Hausman and the public, which he aims to serve, will be irreparably harmed if ICE continues to deny timely access to the Spreadsheets: obtaining the data months later cannot cure the absence of accountability in the interim, and only an injunction requiring timely responses to Hausman's current and future requests for the Spreadsheets can prevent that harm. The public interest served by the timely release of the Spreadsheets far outweighs the minimal burden such an order would place on Defendant.

In order to stop Defendant's systematic, ongoing violations of FOIA, the Court should order ICE to (1) expedite the processing of Hausman's most recent FOIA request for the Spreadsheets and produce the Spreadsheets within eight working days of the Court's order; (2) produce records in response to Hausman's future requests for the Spreadsheets no later than 28 working days (20 working days to make a determination, consistent with the statutory timeline, and an additional eight working days to produce the records, consistent with what ICE has demonstrated is feasible); and (3) submit quarterly compliance reports to the Court.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  There is Substantial Public Interest in the Spreadsheets.

ICE's past releases of the Spreadsheets in response to litigation have substantially contributed to the public's understanding of ICE's enforcement actions through analyses of the Spreadsheets in news articles, uses by policymakers, and citations in judicial decisions.

The Spreadsheets contain anonymized records of ICE's immigration enforcement actions; they contain a row for each encounter, detainer request,[2] arrest, detention, and removal, respectively. Declaration of David K. Hausman (Hausman Decl.) ¶ 8. The inclusion of anonymized unique identifiers—sequences of letters and numbers that replace a person's "A-Number"[3]—allows the public, without knowing any person's identity, to trace outcomes as each person moves through the enforcement system, from arrest to potential deportation. *Id*. ¶ 9.

Since March 2025, Hausman and his colleagues at DDP have sought and published these past releases—original spreadsheets received from ICE, as well as processed versions of them and tools to allow users to filter and download subsets of them—on DDP's website at no cost to the public. *Id*. ¶¶ 6–8.[4] Hausman has also published reports analyzing the Spreadsheets and posted materials to allow the public to better understand the data. *Id*. ¶ 7.

With each release, anywhere from dozens to hundreds of media organizations have used the data to verify the government's claims about its immigration enforcement practices and inform the public about new governmental directives regarding arrests, detentions, and removals, as well as to compare them to government practices under past administrations. For example, in June 2025, a New York Times analysis of the Spreadsheets showed that ICE arrests had

---

[2] A detainer is a request sent by ICE to a federal, state, or local law enforcement agency to detain a person for up to an additional 48 hours beyond the time when he would otherwise be released from criminal custody.

[3] A-Numbers are unique identification numbers that the Department of Homeland Security ("DHS") assigns to noncitizens.

[4] *See* DEPORTATION DATA PROJECT: IMMIGRATION AND CUSTOMS ENFORCEMENT ORIGINAL DATA, https://deportationdata.org/data/ice.html; DEPORTATION DATA PROJECT: IMMIGRATION AND CUSTOMS ENFORCEMENT PROCESSED DATA, https://deportationdata.org/data/processed/ice.html; DEPORTATION DATA PROJECT: DATA TOOLS, https://deportationdata.org/tools.html.

increased sharply in each state since President Trump took office. *Id.* ¶ 37, Ex. T-1. Bloomberg found that in the early weeks of the Trump administration, "the rate of out-of-state transfers by ICE"—meaning the transfer of arrested noncitizens to detention centers out-of-state—"was higher than they've ever been in at least 13 years." *Id.*, Ex. T-2 at 6. Mission Local, a local news outlet, used the Spreadsheets to follow the enforcement outcomes for the 2,123 people arrested by ICE in the first half of 2025 in the Bay Area, finding that arrests drastically increased in this period, that detained individuals were quickly moved to detention centers across the country, and that over half of the individuals arrested during this time had been deported by the end of June 2025. *Id.*, Ex. T-3. In total, over 2,000 news reports have relied on DDP's release of these datasets. *Id.* ¶ 38, Ex. U.[5]

Past releases of the Spreadsheets have also played a significant role in refuting the federal government's claims about its enforcement policies and practices, uncovering enforcement tactics that were not previously publicly known and exposing governmental misconduct and legal violations. For example, journalists have found that the administration has not targeted the so-called "worst of the worst" for enforcement, but instead swept up noncitizens with no criminal records, *id.* ¶ 37, Ex. T-4;[6] that the federal government's claims about the criminal histories of the men it deported to the Terrorism Confinement Center ("CECOT") in El Salvador are not generally true;[7] that ICE may be operating undisclosed holding facilities or operating them in a manner that violates terms of local permits, *id.*, Exs. T-5, T-6; that there are increased numbers of children held in detention for lengthy periods of time, possibly in violation of a federal court settlement agreement, *id.*, Ex. T-7; and that ICE began reducing the number of people held in a holding facility in anticipation of an inspection visit by lawmakers, *id.*, Ex. T-8. But uses of the data have not been limited to discrediting the federal government's claims. Recent releases of the data have also been valuable for proponents of ICE's current policies,

---

[5] Over 200 selected news articles are available here: https://deportationdata.org/news.html#selected-media-coverage.
[6] *See also* Compl. n 15 (citing additional articles).
[7] 60 Minutes, *Minneapolis, Inside CECOT, Salties | 60 Minutes Full Episodes*, YouTube (Jan. 19, 2026), https://www.youtube.com/watch?v=oQwSQsufQnM&t=1792s.

including the White House, which issued a press release applauding the increase in ICE arrests "making local news from coast to coast" and linking to various news articles using the Spreadsheets released by DDP. *Id*. ¶ 39, Ex. V.

Likewise, state and local governments have used the Spreadsheets to hold federal government officials accountable. For instance, the City of Portland, Oregon, reviewed the Spreadsheets to find "more than a dozen instances of detainees being kept overnight or held [in an ICE facility in Southwest Portland] for more than 12 hours, which is in violation of the facility's land use conditions of approval with the City." *Id*. ¶ 40, Ex. W at 2. The Illinois Accountability Commission relied on the Spreadsheets in issuing a detailed report on the conduct of federal agents during ICE's "Operation Midway Blitz" in Chicago. *Id*. ¶ 41, Ex. X at 4–10. Members of Congress have used the Spreadsheets to conduct oversight over ICE's enforcement actions. *See id*. ¶ 42, Ex. Y. Courts have also benefitted from facts developed using the Spreadsheets in consequential litigation involving immigration enforcement. For example, this Court relied on the Spreadsheets in issuing a decision staying ICE's policy of re-arresting and re-detaining noncitizens the government previously released from custody. *See Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 996 n.8 (N.D. Cal. 2025) (citing DDP and three articles using the Spreadsheets).

These are just a few examples of the over 2,000 times the Spreadsheets have been used in the last year to report on the administration's immigration enforcement actions and hold the government accountable. Hausman Decl. ¶ 38. In short, disclosure of the Spreadsheets has substantially contributed to the public's understanding of ICE's enforcement actions over the past year, and future releases of the Spreadsheets will continue to shed light on the scope, patterns, and priorities of immigration enforcement, enabling journalists, policymakers, the courts, and the public to hold government officials accountable in ways that may otherwise be impossible.

## B. ICE Has a Pattern or Practice of Failing to Timely Produce the Spreadsheets Absent Litigation.

The Spreadsheets are frequently requested under FOIA, but ICE consistently violates FOIA's statutory timelines when responding to requests for the Spreadsheets. The agency routinely waits to respond until a requester initiates litigation. Because of ICE's own delays and delays inherent in the litigation process, there is no way for a requester such as Hausman, who seeks timely updates to the Spreadsheets, to obtain those updates regularly and consistently—even when undertaking the burdensome process of repeatedly filing suit.

Under FOIA, agencies are required to determine whether to comply with a FOIA request within 20 working days of receipt of the request and to provide the requester with non-exempt responsive records promptly thereafter. 5 U.S.C. § 552(a)(6)(A)(i), (a)(3)(A). An agency may extend its time to make a determination by no more than 10 working days in case of "unusual circumstances." *Id*. § 552(a)(6)(B)(i). If the agency fails to comply with the statutory timeline, a requester can file suit to compel disclosure of withheld records. *Id*. § 552(a)(6)(C)(i), (4)(B). After a requester files litigation, the agency has 30 days after service of the complaint to respond. *Id*. § 552(4)(a)(C). In Hausman's experience seeking updates to the Spreadsheets or similar data from ICE under FOIA—either directly submitting requests for them or consulting with other individuals and organizations in requesting them—ICE has never timely released updates to the requested records. Hausman Decl. ¶ 12.

Besides Hausman's own requests for the Spreadsheets, dozens of other FOIA requesters have sought the same spreadsheets in the past under FOIA. *Id*. ¶¶ 26–28; Declaration of Joseph Mahr ("Mahr Decl.") ¶ 3; Declaration of Ian Head ("Head Decl.") ¶ 3; Declaration of Elizabeth Wu ("Wu Decl.) ¶ 3; Declaration of Ian Austin Rose ("Rose Decl.") ¶ 3; Declaration of Carl Bergquist ("Bergquist Decl.") ¶ 3. Because of the delays between updates of the Spreadsheets and the expressed interest of many parties in assisting in obtaining the records from ICE, Hausman and his colleagues encouraged users of the Spreadsheets to seek them via FOIA. Hausman Decl. ¶ 28. As a result, ICE received at least 24 other requests for these spreadsheets in 2025. *Id*. ¶ 29, Ex. Q. But none of those requests resulted in updates of the Spreadsheets because

none of the requesters initiated litigation. *Id*. ¶¶ 29, 33. ICE placed many of these requests on "administrative hold" due to pending litigation seeking similar data and, later, issued a "final response" to these requesters pointing them to data that DDP had obtained as a result of that litigation. *Id*. ¶ 30, Ex. R; Head Decl. ¶¶ 4–6; Rose Decl. ¶¶ 4–5; Bergquist Decl. ¶¶ 4–5; *see also* Mahr Decl. ¶ 4. One requester with substantial FOIA experience had never received a response from an agency placing his FOIA request on "administrative hold." Head Decl. ¶ 5. At least one of these 24 requests, to which ICE failed to respond, remains pending, with delays reaching nine months since the submission of that FOIA request. Hausman Decl. ¶ 32.

In addition to the dozens of journalists, legal clinics, or advocacy organizations who have requested updates to the Spreadsheets in the last year, the City of Boston sought similar data under FOIA related to ICE enforcement actions in Boston in accordance with an Executive Order signed by Boston Mayor Michelle Wu. Declaration of Samuel B. Dinning ("Dinning Decl.") ¶¶ 4–6. ICE continuously delayed and frustrated the City of Boston's efforts to obtain the data. *Id*. ¶¶ 8–13. Ultimately, Boston was unable to obtain the requested records through the FOIA administrative process. *Id*. ¶ 14.

DDP has posted the Spreadsheets six times since 2025, but those updates occurred only in spite of ICE's pattern or practice of noncompliance. The six updates were the result of two lawsuits from different requesters, and three of the updates occurred during a two-month period in the summer of 2025 in which ICE repeatedly had to produce revised sets of the data because of errors in one of the Spreadsheets. *Id*. ¶ 26. Hausman worked with both requesters to make these records publicly available. *Id*. ¶¶ 26–27.

In late 2024, the Center for Immigration Law and Policy ("CILP") sued ICE under FOIA seeking, *inter alia*, all five categories of data now requested by Hausman (arrests, detentions, removals, encounters, and detainers). *See* Compl., *Ctr. for Immigr. Law & Pol'y v. ICE*, No. 2:24-cv-10444, Dkt. 1 ¶ 3 (C.D. Cal. Dec. 4, 2024). In the *CILP* litigation, ICE produced data substantially similar to the Spreadsheets five times in the eight months between March 2025 and November 2025. Hausman Decl. ¶ 26. Three of these updates occurred after CILP identified

issues with the data and ICE agreed to provide a revised production to address those issues. *Id*.[8] A fourth update occurred "as part of a settlement agreement between the parties to resolve the remaining issues in [the] lawsuit, including [CILP's] claim for attorney's fees." Joint Status Report, *Ctr. for Immigr. Law & Pol'y*, No. 2:24-cv-10444, Dkt. 37 (Jan. 2, 2026); *see* Stipulation of Dismissal, *id.*, Dkt. 39 (Feb. 2, 2026) (stipulating to dismissal with "each party bearing its own attorney's fees and costs."). Absent the agency's errors and the plaintiff's willingness to give up fees, the suit would have produced only a single update of the Spreadsheets—and the delays between updates would have been correspondingly longer, since the requester would have needed to file a new request, wait for the statutory period to run, file litigation, and wait at least another 30 days for ICE to respond. Such delays would not reflect any necessary production time: two of the releases in the *CILP* case came within eight working days of each other. *See* Joint Status Report, *id.*, Dkt. 24 (Jul. 9, 2025) (reporting that ICE produced the requested spreadsheets on June 20, 2025 and again on July 2, 2025). That ICE was able to produce the spreadsheets, review them for redactions, and provide them to a FOIA requester within eight working days shows that ICE is able to produce the Spreadsheets in short order.

In late 2025, after CILP had reached a tentative agreement with ICE to settle its case,[9] Hausman's colleague at DDP, Elora Mukherjee, filed suit against ICE in the Southern District of New York requesting similar categories of data. *See Mukherjee v. ICE*, No. 1:25-cv-08072 (S.D.N.Y. filed Sept. 29, 2025). That litigation resulted in ICE producing the Spreadsheets in late March 2026. *See* Stipulation and Order of Dismissal, *id.*, Dkt. 23 (Apr. 17, 2026). The result was a nearly five-month gap between the last release in the *CILP* case, covering dates through

---

[8] *See* Joint Report, *Ctr. for Immigr. Law & Pol'y*, No. 2:24-cv-10444, Dkt. 18 at 3 (C.D. Cal. May 12, 2025) (noting the issues with ICE's production); Joint Status Report, *id.*, Dkt. 24 (July 9, 2025) (explaining that after the parties reached agreement on the scope of ICE's response, ICE produced a set of records on June 20, and again on July 2, after the plaintiff identified further issues with the removals data); Joint Status Report, *id.*, Dkt. 26 (Aug. 8, 2025) (noting that ICE produced a revised set of data after "there continued to be issues with the removals data").

[9] *See* Joint Status Report, *Ctr. for Immigr. Law & Pol'y*, No. 2:24-cv-10444, Dkt. 31 (Oct. 8, 2025). The *CILP* litigation was ultimately dismissed only in early 2026 because the government shutdown in the fall of 2025 delayed the production required by CILP's agreement with ICE. *See id*.

October 15, 2025, and the most recent release in the *Mukherjee* case, covering dates through March 10, 2026. Hausman Decl. ¶¶ 35–36.

During this time, several news organizations published stories about the lack of data available to assess patterns in ICE enforcement. *Id*. ¶ 37, Exs. T-9, T-10. During several months of Operation Midway Blitz in Chicago, ICE failed to release the data regularly, leaving a Pulitzer prize-winning journalist "unable to analyze ICE data to offer the public a more timely accounting of figures of those detained and their backgrounds in what had become a highly controversial operation in Chicago." Mahr Decl. ¶¶ 1, 6–9. Moreover, there was no timely data available on DHS's Operation Metro Surge in Minnesota for months, leaving local reporters to rely on only incomplete, crowdsourced data to understand the scope of the operation. Hausman Decl. ¶ 37, Ex. T-11 at 3 (highlighting "the absence of robust, publicly available data on arrests and other immigration enforcement activity"). Hausman and his colleagues at DDP received dozens of inquiries from journalists, advocates, researchers, and members of the public asking when DDP would obtain and publish updated versions of the Spreadsheets. *Id*. ¶ 36.

### C.  The Spreadsheets Are Easily Producible.

Unlike requests for documents, which often require searches of many custodians and information systems as well as time-consuming manual review for the applicability of exemptions, producing the Spreadsheets entails a single export from the same data system each time. Although the Spreadsheets together contain millions of rows, the number of records does not significantly increase the burden, just as copying and saving a large file does not take significantly longer than copying and saving a small one. That export routine does not substantially change between releases. And redaction (primarily to remove identifying information) is straightforward, too: the production only requires redacting the same few columns in their entirety. *See id*. ¶¶ 10–11.

### D.  ICE Has Failed to Respond to Hausman's Requests for the Spreadsheets.

To obtain and post timely updates, Hausman and his colleagues at DDP have, in each month since September 2025, submitted FOIA requests to ICE seeking updated copies of the

Spreadsheets.[10] Hausman Decl. ¶ 13, Exs. A–G. Each of Hausman's FOIA requests sought expedited processing. *See id*. Hausman attached to his requests a table including a list of 125 media articles relying on Spreadsheets made public by DDP. *Id*., Exs. A–G at 4, 14–22. On March 19, 2026, Hausman and his colleagues at DDP submitted to ICE a renewed request for expedited processing of their pending requests for the Spreadsheets. Hausman Decl. ¶ 14, Ex. H. Hausman attached to the renewed request a list of an additional 150 articles and reports citing DDP's previous releases of the Spreadsheets. *Id*. at 19–28.

ICE failed to make timely determinations and produce records promptly in response to each of Hausman's requests:

- In response to Hausman's request submitted on September 15, 2025 ("September FOIA Request"), ICE sent a "Clarification Request" via email on September 19, 2025, requesting that Hausman narrow the request. Hausman Decl. ¶ 15, Ex. I. After Hausman responded via email, *see id*. ¶ 16, Ex. J, ICE acknowledged receipt of the September FOIA request and denied Hausman's request for expedited treatment. *Id*. ¶ 17, Ex. K.

- In response to Hausman's request submitted on December 15, 2025 ("December FOIA Request"), ICE sent a similar "Clarification Request" via email on January 6, 2026. *Id*. ¶ 20, Ex. N. This email seemed to ignore Hausman's response to the prior clarification request.

- In response to Hausman's requests submitted on October 15, 2025 ("October FOIA Request"), November 15, 2025 ("November FOIA Request"), and January 15, 2026 ("January FOIA Request"), ICE acknowledged receipt of those requests and denied Hausman's request for expedited processing. *See id*. ¶¶ 18–21, Ex. L, Ex. M, Ex. O.

- In response to Hausman's requests submitted on February 16, 2026 ("February FOIA Request") and March 17, 2026 ("March FOIA Request"), Hausman has received no response or communication from ICE. *Id*. ¶ 23.

- In response to Hausman's renewed request for expedited processing submitted on March 19, 2026, ICE did not respond substantively to the request for expedited processing, but rather simply noted the status of his pending requests. *Id*. ¶ 22, Ex. P.

Hausman has received no further response or communication from ICE regarding his FOIA requests, nor has ICE produced any records to him in response to these requests. *Id*. ¶ 24.

---

[10] Hausman has been submitting his requests monthly in order to get updated versions of the Spreadsheets consistently. ICE ordinarily only provides records "as of the date that it begins its search." 6 C.F.R. § 5.4(a). Because Hausman has no way of knowing when ICE's search for responsive records began for each of his requests, he has been submitting his requests monthly to ensure that ICE provides updated records.

**E. Hausman Will Continue Submitting Requests for the Spreadsheets.**

Timely release of updates to the Spreadsheets is critical to Hausman's work in informing the public about ICE enforcement through DDP. ICE's repeated failures to respond to Hausman's FOIA Requests have deprived the public of its statutory right to timely information about the federal government's immigration enforcement actions. Because of the enormous value the Spreadsheets hold for public awareness and the importance of timely updates, Hausman intends to submit requests under FOIA to ICE on a regular basis seeking updates to the Spreadsheets. *Id*. ¶ 25.

## III.    ARGUMENT

Hausman seeks a preliminary injunction requiring ICE to produce the Spreadsheets and respond to future requests for the Spreadsheets within the statutory deadlines. Only such relief can prevent the repeated irreparable harm imposed by ICE's pattern or practice of delay.

A preliminary injunction is appropriate when a plaintiff demonstrates "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Courts within the Ninth Circuit consider these factors on a sliding scale, such "that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Therefore, a court may issue a preliminary injunction where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . , so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1135 (internal quotation marks omitted).

FOIA expressly grants jurisdiction in the district courts to enjoin an agency from improperly withholding agency records. 5 U.S.C. § 552(a)(4)(B). "FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). The Ninth Circuit has made clear that "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses." *Long v. U.S. I.R.S*, 693 F.2d 907, 910 (9th Cir. 1982).

Accordingly, courts "may consider injunctive relief . . . to bar future violations that are likely to occur." *Id*. at 909. This Court and others have exercised their statutory authority to grant motions for a preliminary injunction in FOIA cases where the facts support such relief. *See Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence*, No. C 07-5278 SI, 2007 WL 4208311, at *8 (N.D. Cal. Nov. 27, 2007) ("*EFF I*"); *Elec. Frontier Found. v. Off. of the Dir. of Nat. Intel.*, 542 F. Supp. 2d 1181, 1187 (N.D. Cal. 2008) ("*EFF II*"); *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 35 (D.D.C. 2006) (citing cases); *ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004); *see also Gerstein v. C.I.A.*, No. C 06-4643 MMC, 2006 WL 3462659, at *4 (N.D. Cal. Nov. 29, 2006) (analyzing motion to compel as request for a preliminary injunction).

Hausman moves for preliminary relief under Claims I (wrongful withholding of agency records), II (failure to grant expedited processing), and III (unlawful pattern or practice) in his Complaint. Compl. ¶¶ 87–99. Hausman is entitled to a preliminary injunction because he is likely to succeed on his claims that ICE has violated FOIA, there is a compelling need to prevent the irreparable harm that will follow if the records are not expeditiously processed and released, and the balance of equities and public interest favor the requested relief.

### A. Hausman is Likely to Prevail on the Merits of His Claims.

Hausman's claims are likely to succeed on the merits because (1) ICE has failed to meet the statutory deadline to determine whether to comply with Hausman's requests; (2) ICE has improperly denied or failed to grant Hausman's requests for expedited processing; and (3) ICE has engaged in a pattern or practice of violating FOIA in response to Hausman's requests.

### 1. ICE Has Failed to Process Hausman's Requests Within FOIA's Deadlines.

ICE has failed to make a determination for any one of Hausman's monthly FOIA requests for the Spreadsheets filed between September 2025 and March 2026. *See* Hausman Decl. ¶¶ 12–24.

Agencies must provide a "determination" on a FOIA request within 20 working days by "at least: (i) gather[ing] and review[ing] the documents; (ii) determin[ing] and communicat[ing] the scope of the documents it intends to produce and withhold, and the reasons for withholding

any documents; and (iii) inform[ing] the requester that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013). In "unusual circumstances," an agency is entitled to a 10-working-day extension of this deadline only if the agency notifies the requester of the "unusual circumstances" in writing and provides a date on which the agency expects to issue its determination. 5 U.S.C. § 552(a)(6)(B). Upon determining the scope of any production, an agency must "make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years." *Citizens for Responsibility & Ethics in Wash.*, 711 F.3d at 188 (quoting 5 U.S.C. §§ 552(a)(3)(A), (a)(6)(C)(i)).

An agency's failure to issue a determination by the statutory deadline is a violation of FOIA. *See Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-1130 SC, 2015 WL 4452136, at *7 (N.D. Cal. July 20, 2015) ("'an agency's failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA.'" (quoting *Gilmore v. Dep't of Energy*, 33 F.Supp.2d 1184, 1187 (N.D. Cal. 1998)); *Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 186 (D.D.C. 2019) ("Where, as here, the agency has not yet issued a determination and the statutory deadline has passed, it has violated FOIA."); *see also Nightingale v. U.S. Citizenship & Immigr. Servs.*, 333 F.R.D. 449, 461 (N.D. Cal. 2019) ("multiple courts, including in this District, have found that violation of FOIA's statutory 20-day deadline constitutes a harm.").

Here, ICE has violated its statutory obligations to make timely determinations and release records promptly thereafter for each of Hausman's requests:

| Date of Submission of FOIA Request | Determination Deadline | Number of Working Days Since Request Submission |
|---|---|---|
| September 15, 2025 | October 14, 2025 | 157 days |
| October 15, 2025 | November 13, 2025 | 136 days |
| November 15, 2025 | December 16, 2025 | 114 days |
| December 15, 2025 | January 16, 2026 | 96 days |
| January 15, 2026 | February 13, 2026 | 77 days |
| February 16, 2026 | March 16, 2026 | 56 days |
| March 17, 2026 | April 14, 2026 | 36 days |

None of ICE's interim communications with Hausman constitute a determination.[11] *See Citizens for Responsibility & Ethics in Wash.*, 711 F.3d at 188. Because ICE has also failed to produce any responsive records, it has additionally failed to make records "promptly available" following a timely determination. 5 U.S.C. § 552(a)(3); *see Long*, 693 F.2d at 910. Importantly, a single production of up-to-date data will provide relief with respect to all of Hausman's pending requests for the Spreadsheets (though it will not address ICE's pattern or practice of violations).

### 2. Hausman's Requests are Entitled to Expedited Processing.

ICE's delays clearly violate FOIA regardless of whether Hausman is entitled to expedited processing. But Hausman's entitlement to expedited processing of his requests is clear.

Agency denials of requests for expedited processing are "reviewable *de novo* by a district court." *Am. C.L. Union of N. California v. U.S. Dep't of Def.*, No. C 06-01698 WHA, 2006 WL 1469418, at *5 (N.D. Cal. May 25, 2006). Further, where an agency's denial of expedited processing does "nothing more than parrot its own regulatory language, and offer[s] no reasoning or analysis, its decision. . . is entitled to little deference." *Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Just.*, 436 F. Supp. 3d 354, 361 (D.D.C. 2020).

Here, Hausman's FOIA requests asserted two independent grounds for entitlement to expedited processing. *First*, the requests concern "[a] matter of widespread and exceptional media interest . . ." 6 C.F.R. § 5.5(e)(1)(iv). *Second*, Hausman's requests involve "[a]n urgency to inform the public about an actual or alleged federal government activity. . ." 5 U.S.C. § 552(a)(6)(E)(v)(I)-(II); 6 C.F.R. § 5.5(e)(1)(ii). ICE failed entirely to respond to Hausman's requests for expedited processing for the December FOIA Request, the February FOIA Request, and the March FOIA Request, as well as his renewed request for expedited processing, *see* Hausman Decl. ¶¶ 20, 23, which served as constructive denials of those requests. *See* 5 U.S.C. § 552(a)(6)(E)(iii) (agency's failure to respond within 10 calendar days to a request for expedited

---

[11] Although ICE has claimed "unusual circumstances" for some of Hausman's requests, it has not met the statutory requirements necessary to secure a ten-day extension under FOIA. *See* 5 U.S.C. § 552(a)(6)(B)(i) (requiring written notice "setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched"); *id*. § 552(a)(6)(B)(iii) (specifying what may constitute unusual circumstances).

processing is subject to judicial review). With respect to the September FOIA Request, October FOIA Request, November FOIA Request, and January FOIA Request, ICE provided a summary denial without reason or analysis. Hausman Decl. ¶¶ 17–19, 21, Exs. K, L, M, O.

<em>i.    Hausman is entitled to expedited processing under 6 C.F.R. § 5.5(e)(1)(iv).</em>

The requests for the Spreadsheets qualify for expedited treatment because they involve "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(iv).

In considering whether a request concerns a matter of widespread and exceptional media interest, courts may consider: "(1) the number of articles cited in the expedited processing request, (2) the dates those articles were published, (3) whether those articles were published in a variety of publications, and (4) whether those articles indicate that there is widespread national attention on the issue." *Democracy Forward Found. v. Dep't of Just.*, 813 F. Supp. 3d 1, 10–11 (D.D.C. 2025). Hausman presented hundreds of recent media articles "published in a variety of publications, [which] repeatedly reference the ongoing national discussion" around ICE enforcement actions. *Am. C.L. Union v. U.S. Dep't of Just.*, 321 F. Supp. 2d 24, 32 (D.D.C. 2004). Although courts only require that media attention be directed towards the specific issue that the records concern, Hausman's requests included hundreds of articles *which specifically cited* the Spreadsheets of which he sought updated versions. *See* Hausman Decl. ¶ 13, Exs. A–G at 4, 14–22; *id.* ¶ 14, Ex. H at 19–28.

The articles Hausman cited "also illustrate that the information [he has] requested implicates government integrity." *Am. C.L. Union*, 321 F. Supp. 2d at 32. Many of the reports cited by Hausman focused on the unprecedented nature of the federal government's immigration enforcement practices in recent months and raised questions about the veracity of the federal government's public claims and the legality of its actions. *See also supra* Sec. II.A. These articles, "which need not suggest any dishonesty or intentional wrongdoing on Defendants' part," undoubtedly raise questions about the government's integrity. *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 97 (D.D.C. 2020); *see also Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, No. CV 25-4426 (CKK), 2026 WL 472589, at *11

(D.D.C. Feb. 19, 2026) (granting preliminary injunction where the national coverage cited by requester "has called into question whether [the agency's] actions are consistent with [law].").

      ii. *Hausman is entitled to expedited processing under 6 C.F.R. § 5.5(e)(1)(ii).*

  Hausman's FOIA requests are separately entitled to expedited processing because they were "made by a person primarily engaged in disseminating information," and involve an "urgency to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 6 C.F.R. § 5.5(e)(1)(ii).

  Hausman is "primarily engaged in disseminating information" within the meaning of FOIA. Hausman co-directs DDP, which collects, analyzes, and posts public, anonymized U.S. government immigration enforcement datasets. Hausman Decl. ¶ 6. DDP's primary goal is to disseminate datasets such as the ones at issue in this litigation. *Id*. DDP's website, which allows downloads of the government data at issue here, is available to the public at no cost. *Id*. ¶¶ 6–7. Moreover, Hausman also conducts analysis of the data he posts and makes those analyses available to the public at no cost. *See id*.; *Protect Democracy Project, Inc. v. United States Dep't of Just.*, 498 F. Supp. 3d 132, 139 (D.D.C. 2020) (finding that the plaintiff organization is primarily engaged in disseminating information in part due to its intention to share information and analysis about the request on its website, social media, and on email lists).

  Hausman's requests also involve an urgency to inform the public about actual or alleged federal government activity. The D.C. Circuit has held that there is a compelling need warranting expedited processing when the FOIA request concerns (1) "a matter of current exigency to the American public," (2) "the consequences of delaying a response would compromise a significant recognized interest," and (3) the request involves "federal government activity." *Al-Fayed v. C.I.A.*, 254 F.3d 300, 310 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(6)(E)); *see also Gerstein v. C.I.A.*, No. C-06-4643 MMC, 2006 WL 3462658, at *6 (N.D. Cal. Nov. 29, 2006) (applying the factors in *Al-Fayed* in determining that expedited processing of FOIA request was warranted). Each of these factors is satisfied here.

  First, the Spreadsheets are directly relevant to a matter of tremendous importance and have been the focus of significant media attention. In his requests, Hausman cited hundreds of

articles that used the Spreadsheets to analyze trends in immigration enforcement. Hausman Decl. ¶ 13, Exs. A–G at 4, 14–22; *id.* ¶ 14, Ex. H at 19–28; *see also* 6 C.F.R. § 5.5(e)(3) ("The existence of numerous articles published on a given subject can be helpful to establishing the requirement that there be an 'urgency to inform' the public on the topic."). The requests explained that ICE's release of the Spreadsheets has played an important role in informing the public about ICE's activities in the past and that updated data would similarly address an urgent need for journalists and researchers to understand frequently changing immigration enforcement practices. Hausman Decl. ¶ 13, Exs. A–G at 4–5. In these respects, Hausman's requests resemble others for which courts have found expedited processing to be appropriate. *See, e.g.*, *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 37 (D.D.C. 2020) (granting expedited processing of records related to ICE's response to the COVID-19 pandemic); *Am. C.L. Union of N. California*, 2006 WL 1469418, at *6 (same where the records requested related to a "breaking news story" about surveillance of protests).

Second, further delay compromises the significant interests in disseminating breaking news stories to the public and enhancing public debate on legislative action. *See id.*, at *8 ("another recognized interest would be harmed by delay: the media's interest in quickly disseminating breaking, general-interest news."). And further delay here will harm the public. Between the last two releases of the Spreadsheets, media organizations published articles discussing the lack of immigration data from the administration, which had "left researchers, advocates, lawyers and journalists without important statistics to hold the Republican administration to account." Hausman Decl. ¶ 37, Ex. T-9 at 2.

Third, there can be no dispute that Hausman's requests concern activities of the federal government, specifically its immigration enforcement practices.

Hausman is therefore entitled to expedited processing of his requests.

### 3. ICE Has a Pattern or Practice of Failing to Comply with FOIA When Responding to Hausman's Requests for the Spreadsheets.

Preliminary relief is particularly appropriate here because Hausman is likely to succeed on his claim that ICE has a pattern or practice of failing to make timely determinations on his

requests and releasing records promptly thereafter. Only a prospective order requiring timely responses to Hausman's future requests for the Spreadsheets can end this pattern or practice.

The Ninth Circuit has "recognized a pattern or practice claim for unreasonable delay in responding to FOIA requests." *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016); *see also Long*, 693 F.2d  at 910 (explaining that "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses"). Such claims, which "allege[] that 'an agency policy or practice will impair the party's lawful access to information in the future'" are distinct from "'specific request' claim[s]" which "seek[] production of a particular record that has allegedly been improperly withheld." *Animal Legal Def. Fund v. United States Dep't of Agric.*, 933 F.3d 1088, 1092 (9th Cir. 2019) (citations omitted).

In assessing a FOIA pattern or practice claim for unreasonable delays, courts consider the agency delays in responding to requests by the plaintiff and whether those violations were common across multiple requesters seeking similar information. *See Nightingale v. U.S. Citizenship & Immigr. Servs.*, 507 F. Supp. 3d 1193, 1202–04 (N.D. Cal. 2020) (considering the testimony of the plaintiffs and other requesters who had experienced delays in obtaining responses within the statutory timeline); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-1130 SC, 2015 WL 6331268, at *8 (N.D. Cal. Oct. 21, 2015) (similar); *Hajro v. U.S. Citizenship & Immigr. Servs.*, 832 F. Supp. 2d 1095, 1107–08 (N.D. Cal. 2012) (considering plaintiffs' and other attorneys' testimony in "encountering the same delays in the same context" as the plaintiffs), *rev'd on other grounds*, 811 F.3d 1086 (9th Cir. 2016). In *Nightingale*, this Court, in holding that ICE and another immigration agency had a pattern or practice of unreasonable delay, explained that "[e]ven if there is no 'egregious' policy to violate FOIA's statutory deadlines, 'informal agency conduct resulting in long delays in making requested non-exempt records available may serve as the basis for a policy or practice claim.'" 507 F. Supp. 3d at 1207. The violation is similar here.

Here, ICE's disposition of FOIA requests for the Spreadsheets is routinely prolonged and these delays for similar data are persistent, having affected many other requesters over the years.

This is evident from the consistent delay Hausman has experienced, as well as ICE's pattern of refusing to provide responses to similar requests unless litigation is initiated.

First, ICE's delays in processing Hausman's FOIA requests for the Spreadsheets demonstrate ICE's routine violation of the statute's deadlines. Seven requests for the Spreadsheets are at issue in this litigation, each of which remains pending with the agency beyond the statutory deadline. Hausman Decl. ¶¶ 13–24. ICE failed to comply with FOIA's timing requirements for each of Hausman's requests. The length of ICE's delays is comparable to those held by courts as sufficient to demonstrate an agency pattern or practice of delay. *See Our Children's Earth Found.*, 2015 WL 6331268, at *8 (finding pattern or practice of delay based on "a history of late responses, ranging but not limited to 4 days, 18 days, 51 days, 9 months, 10 months, and ongoing"); *Hajro*, 832 F. Supp. 2d at 1107–08 (explaining that "[a] reasonable jury could only conclude that Plaintiffs have met their burden as to a pattern or practice of timing violations" based upon a three-month delay in processing the plaintiffs' requests).

Second, while ICE has previously released the Spreadsheets under FOIA, it has only done so following litigation over ICE's failure to respond within the statutory deadline. Hausman Decl. ¶¶ 12, 26, 29, 33. ICE has repeatedly faced litigation over requests for similar data, where requestors alleged a failure to comply with statutory deadlines under FOIA. *See, e.g.*, *Mukherjee v. ICE*, No. 1:25-cv-08072 (S.D.N.Y. filed Sept. 29, 2025); *Ctr. for Immigr. Law & Pol'y v. ICE*, No. 2:24-cv-10444 (C.D. Cal. filed Dec. 4, 2024); *N.Y. Times v. ICE*, No. 1:25-cv-04356 (S.D.N.Y. filed May 23, 2025); *Am. C.L. Union Immigrants' Rts. Project v. ICE*, No. 1:19-cv-07058 (S.D.N.Y. filed Jul. 29, 2019).[12]

---

[12] FOIA requesters have also frequently sued ICE under FOIA seeking subsets of the Spreadsheets. *See, e.g.*, *Immigrant Legal Def. v. ICE*, No. 3:24-cv-09326-LB (N.D. Cal. filed Dec. 23, 2024) (seeking detentions data for individuals granted withholding of removal or deferral of removal); *Harbor Inst. for Immigrant and Econ. Just. v. ICE*, No. 8:24-cv-02738-DOC-DFM (C.D. Cal. filed Dec. 19, 2024) (seeking arrests data); *Sherman-Stokes v. ICE*, No. 1:24-cv-12533 (D. Mass. filed Oct. 3, 2024) (seeking detentions data); *Am. Immigration Council v. DHS*, No. 1:22-cv-02250-ABJ (D.D.C. filed Aug. 1, 2022) (seeking detentions data at a particular detention facility).

In addition, many others have sought the Spreadsheets in the past under FOIA. Indeed, Hausman encouraged other users of the data to seek the records directly, recognizing that ICE's pattern or practice of violations would likely prevent DDP from obtaining timely updates through its own requests and litigation. Hausman Decl. ¶ 28. The result was that at least 24 other requesters across the country submitted similar requests for the Spreadsheets in 2025. *Id*. ¶ 29; *see* Mahr Decl. ¶ 3; Head Decl. ¶ 3; Wu Decl. ¶ 3; Rose Decl. ¶ 3; Bergquist Decl. ¶ 3. In response to many of these requests, ICE initially placed the requests on an "administrative hold" due to the CILP litigation. Hausman Decl. ¶ 30; Head Decl. ¶¶ 4–5; Rose Decl. ¶ 4; Bergquist Decl. ¶ 4.[13] ICE ultimately issued a "final response" to several requesters stating that the documents requested had been posted in the ICE FOIA Library. Hausman Decl. ¶ 31; Head Decl. ¶ 6; Mahr Decl. ¶ 4; Wu Decl. ¶ 4; Rose Decl. ¶ 5; Bergquist Decl. ¶ 5. These documents were simply the same records that ICE had produced in response to the *CILP* litigation. Hausman Decl. ¶ 31. At least one of these requests, to which ICE failed to respond, remains pending, with delays reaching nine months since the submission of that request. *Id*. ¶ 32. In response to the FOIA request from the City of Boston, ICE failed to produce any records entirely based on an "unfounded assertion" that Boston had failed to provide enough detail for the FOIA office to comply with the request. Dinning Decl. ¶¶ 8–14. In Hausman's experience seeking updates to the Spreadsheets or similar data from ICE under FOIA, ICE has never timely released updated records. Hausman Decl. ¶ 12.

Therefore, Hausman is likely to succeed on the merits of his pattern or practice claim.

**B. Hausman Is Likely to Suffer Irreparable Harm Absent Preliminary Relief.**

Without receiving the Spreadsheets expeditiously and consistently, Hausman—and, more important, the public he seeks to serve—will be irreparably harmed.

Here, if the Spreadsheets are not released expeditiously and consistently by ICE, the public debate regarding rapidly changing immigration enforcement policy will be stymied: "stale

---

[13] The term "administrative hold" appears nowhere in the FOIA statute or agency regulations, and there is no authority that allows agencies to delay responses to FOIA requests because other requesters may be seeking similar information in litigation. *See generally* 5 U.S.C. § 552; 6 C.F.R. §§ 5.1–5.13.

information is of little value." *Payne Enters., Inc.*, 837 F.2d at 494; *see Am. Immigr. Council*, 470 F. Supp. 3d at 38 ("where an obligation to disclose exists, a plaintiff may suffer irreparable harm if denied access to information that is highly relevant to an ongoing public debate."); *see also* Wu Decl. ¶ 6 (explaining the time- and resource-consuming process of litigating FOIAs to obtain information, "only to receive data that is stale by the time it is produced"). The harm of delay is particularly acute here because, since January 2025, ICE has not updated the statistics page on its website, making it much harder to track arrests, detentions, and removals.[14]

Indeed, the Spreadsheets have contributed significantly and swiftly to the public debate, as hundreds of media organizations used them to report on immigration enforcement nationally and locally. These reports played an important role in countering false information and misleading statistics advanced by the administration. *See supra* Sec. II.A. When DDP was unable to obtain updated versions of the Spreadsheets from ICE between October 2025 and March 2026, there were large information gaps about the administration's recent enforcement practices, particularly large-scale enforcement operations in Illinois, Maine, Minnesota, and North Carolina. Mahr Decl. ¶¶ 5–9; Hausman Decl. ¶ 37, Ex. T-11 at 3 (highlighting "the absence of robust, publicly available data on arrests and other immigration enforcement activity" to assess local enforcement operations); *id.*, Ex. T-9 at 2 (noting that the administration's refusal to publish data "left researchers, advocates, lawyers and journalists without important statistics to hold the Republican administration to account."). It was not until ICE's most recent release of the Spreadsheets, which occurred in March 2026 as a result of litigation, that the public became aware of the full scope of those operations and their impacts. *Id.*, Ex. T-12 at 3 (noting that the Spreadsheets released in March offer "the most detailed look at the effect of the three-month enforcement surge that brought thousands of protesters into the streets and left two U.S. citizens dead"); *id.*, Ex. T-13 at 3 (stating that the Spreadsheets "represent[] the most official and detailed accounting of who agents arrested during the raid" in Maine). The harm caused by that delay was irreparable: by the time the Spreadsheets covering this period were released, it was too late for

---

[14] *See* ICE: ICE Enforcement and Removal Operations Statistics, https://www.ice.gov/statistics (noting that the dashboards present information updated as of December 31, 2024).

them to play a contemporaneous role in the public debate over those enforcement operations. *See* Mahr Decl. ¶¶ 7–9.

Moreover, past releases of the Spreadsheets have revealed potential violations of law and misconduct by government officials, which would likely continue absent consistent and timely release of the Spreadsheets. Such a "current and ongoing debate surrounding the legality of the Administration's" actions is a well-established issue of national importance in the FOIA context. *Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 41. For example, the Spreadsheets have been used to show ICE's violations of its own rules governing the use of holding facilities for only short-term detention—leading courts and local governments to take action against unlawful uses of such facilities. *See, e.g.*, Hausman Decl. ¶ 40, Ex. W at 2 (citing the Spreadsheets released by DDP); *D.N.N. v. Liggins*, No. 1:25-CV-01613-JRR, 2026 WL 632371, at *6 (D. Md. Mar. 6, 2026) (citing expert report from one of the co-Directors of DDP, who analyzed the Spreadsheets to report on overcrowding at a holding facility in Maryland). And this Court also relied on the Spreadsheets in finding that DHS had unlawfully re-detained hundreds of noncitizens in recent months. *See Garro Pinchi*, 813 F. Supp. 3d at 996 n.8. Just last month, a local news outlet analyzed the Spreadsheets to find that ICE had begun decreasing the numbers of people held in a holding facility shortly after lawmakers provided advance notice to ICE that they would be visiting the facility for an inspection. Hausman Decl. ¶ 37, Ex. T-8. Following that reporting, those lawmakers made an unannounced visit finding conditions that were "shameful" and "shocking." *Id.*, Ex. T-14 at 2–3.

If Hausman were forced to wait months or years for this litigation to resolve before he is able to obtain the Spreadsheets consistently and expeditiously, such violations of law and government misconduct would evade scrutiny, causing irreparable harm. That harm would be most severe for those directly affected by enforcement, such as immigration detainees, who would be unable to obtain information needed to challenge such misconduct. *See Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."); *see also* Wu Decl. ¶ 5 (noting the importance of timely and

consistent updates to the Spreadsheets for legal and advocacy work); Rose Decl. ¶ 6 (noting the use of enforcement data in federal court litigation and habeas petitions).

Therefore, Hausman and the public are likely to suffer irreparable harm in the absence of preliminary relief.

**C.  The Balance of the Equities and the Public Interest Favor Relief.**

ICE is not burdened by complying with the law. *See EFF II*, 542 F. Supp. 2d at 1187 (finding the balance of equities favored plaintiff where the defendant agencies would "only be ordered to process the documents according to their preexisting obligations under the FOIA"); *EFF I*, 2007 WL 4208311, at *7 ("any complaints about the burdens of complying with the law are best addressed to Congress, not the courts"). Indeed, one goal of DDP is to *reduce* the burden on the ICE FOIA office by making it easy for users to download parts of the Spreadsheets without filing a FOIA request. DDP has created tools that allow users to create subsets of the Spreadsheets—for example, for arrests in a given state—and that therefore make piecemeal requests unnecessary.[15]

Likewise, the public interest weighs in favor of granting the injunction because "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Authr. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 42. Expedited and consistent release of the Spreadsheets will further the FOIA's core purpose of "shed[ding] light on an agency's performance of its statutory duties." *Dep't of Just. v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989).

And "[t]his case presents an archetypal FOIA case" because "[t]he requested information has the potential to inform citizens about an issue of the highest national concern"—*i.e.*, the government's immigration enforcement practices. *Ctr. for Pub. Integrity v. United States Dep't of Def.*, 411 F. Supp. 3d 5, 15 (D.D.C. 2019). "In a functioning democracy, an informed electorate always inures to the public benefit." *Id*. Given the "significant media attention and public debate" over immigration enforcement, "the public interest is particularly well-served by

---

[15] *See* DEPORTATION DATA PROJECT: DATA TOOLS, https://deportationdata.org/tools.html

the timely release of the requested documents." *Protect Democracy Project*, 498 F. Supp. 3d at 144.

### D. Injunctive Relief is Necessary and Proper to Correct ICE's Prolonged, Persistent, and Pervasive FOIA Delays.

Hausman seeks an order directing ICE to: (1) expedite processing of Hausman's requests and produce the Spreadsheets within eight working days of the Court's order; (2) make determinations on Hausman's future requests within 20 working days, consistent with the statutory timeline, and produce the Spreadsheets within eight working days of a timely determination, consistent with what ICE has demonstrated is feasible; and (3) submit quarterly compliance reports. Such relief is necessary and appropriate.

Hausman is entitled to an injunction to address ICE's pattern or practice of violating FOIA because there exists a "reasonable basis" to believe ICE's FOIA "infractions will be ongoing." *Nightingale*, 507 F. Supp. 3d at 1201 (citing *Our Children's Earth Found.*, 2015 WL 6331268, at *8). In such cases, ordering agencies to adhere to FOIA's timing requirements and provide compliance reports are ordinarily granted. *See Nightingale*, 507 F. Supp. 3d at 1211; *Hajro*, 832 F. Supp. 2d at 1120 (ordering agency to clear backlogged files and submit quarterly reports thereafter); *Ray v. DOJ*, 770 F. Supp. 1544, 1552 (S.D. Fla. 1990) (ordering agency to "comply with [FOIA] time requirements"). In *Nightingale*, for example, the Court issued an injunction requiring the agency to: (i) adhere to the statutory deadline for FOIA responses going forward; (ii) eliminate the entire backlog of immigration file FOIA requests within sixty days; (iii) and provide quarterly compliance reports to the Court. 507 F. Supp. 3d at 1213–14. Because ICE's flouting of FOIA's deadlines is almost certain to continue absent this Court's intervention, similar injunctive relief—that is much more limited in scope than in *Nightingale*—is necessary and appropriate here. *See Long*, 693 F.2d at 910 (finding injunctive relief is appropriate to prevent prolonged delays and repeated litigation over non-disclosure).

Here, Hausman has explained that he intends to submit regular FOIA requests to ICE for the Spreadsheets in the future. Hausman Decl. ¶ 25. Given ICE's repeat FOIA violations when responding to requests for the Spreadsheets and years-long problems with timely responses to

FOIA requests for similar data, there exists a reasonable basis to conclude that ICE will continue to violate FOIA in responding to Hausman's requests.

Because Hausman's pending requests are entitled to expedited processing, ICE must, after each request, produce the Spreadsheets "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). As a matter of statutory interpretation, production "as soon as practicable" under expedited processing must require a determination and prompt production by the time of the 20-working day statutory deadline for non-expedited requests. *Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 39. "[C]ourts have the authority to impose concrete deadlines on agencies that delay the processing of requests meriting expedition," and courts regularly do so. *See EFF II*, 542 F. Supp. 2d at 1187 (ordering production of documents and affidavit setting forth basis for withholding any responsive documents within 17 days); *EFF I*, 2007 WL 4208311, at *8 (ordering initial release of documents within 3 days and final release of documents and affidavit setting forth basis for withholding any responsive documents within 13 days); *Gerstein*, 2006 WL 3462659, at *5 (ordering production of all responsive records within 30 days); *Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 43 (ordering production of responsive records within 20 days and *Vaughn* index within 30 days). Because ICE has been able to produce the Spreadsheets within eight working days in the past, it is eminently reasonable for the Court to order ICE to produce the Spreadsheets to Hausman within eight working days of the Court's order and within eight working days of timely determinations in the future. Production of the Spreadsheets is far easier and more "practicable" than in other instances in which courts have ordered similarly prompt productions. *See id.* at 34, 39 (20 days for four agency components to produce records, including communications, concerning domestic surveillance activities); *Am. Oversight*, 414 F. Supp. 3d at 188 (20 working days to produce communications related to Ukraine and impeachment inquiry).

Therefore, this Court should grant the requested injunctive relief.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Hausman's motion for a preliminary injunction.

Dated: May 6, 2026                    Respectfully submitted,

                                      /s/ Amber Qureshi
Khaled Alrabe                         Amber Qureshi (DC 90001046)*
Email: khaled@nipnlg.org              Email: amber@qureshilegal.com
National Immigration Project          Law Office of Amber Qureshi, LLC
1400 Shattuck Ave, Suite 12 PMB #141  6925 Oakland Mills Road PMB#207
Berkeley, CA 94709                    Columbia, MD 21045
Telephone: (617) 227-9727             Telephone: (443) 583-4353

                                      * Admitted *pro hac vice*

                                      *Attorneys for Plaintiff David K. Hausman*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this date, I uploaded the foregoing, along with all attachments thereto, to this Court's CM/ECF system, which will send a Notice of Electronic Filing (NEF) to all counsel of record.

On this date, I also mailed the foregoing, along with all attachments thereto, to Defendant and counsel at the following addresses:

> Office of the Principal Legal Advisor
> 500 12th St. SW, Mail Stop 5900
> Washington, DC 20536-5900
>
> Attorney General
> U.S. Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001
>
> Civil Process Clerk
> United States Attorney's Office for the
> Northern District of California
> 450 Golden Gate Avenue
> P.O. Box 36055
> San Francisco, CA 94102

On this date, I also emailed the foregoing, along with all attachments thereto, to the Chief of the Civil Division for the U.S. Attorney's Office for the Northern District of California:

> Pamela Johann
> Chief, Civil Division
> United States Attorney's Office for the
> Northern District of California
> pamela.johann@usdoj.gov

Dated: May 6, 2026                    Respectfully submitted,

> /s/ Amber Qureshi
> Amber Qureshi
> Email: amber@qureshilegal.com
> Law Office of Amber Qureshi, LLC
> 6925 Oakland Mills Road PMB#207
> Columbia, MD 21045
> Telephone: (443) 583-4353