# DECLARATION OF SAMUEL B. DINNING

I, Samuel B. Dinning, declare of my personal knowledge as follows:

1. I am currently employed as Chief of Staff and Policy for the City of Boston Law Department. I have held this position since May 2025. Prior to that, I was employed as Policy Counsel for the City of Boston (the "City" or "Boston"). This declaration is based on my knowledge, experience, and review of relevant records.
2. I am submitting this declaration on behalf of the City of Boston in support of Plaintiff's motion for a preliminary injunction in *David K. Hausman v. Immigration and Customs Enforcement* ("ICE"), in the United States District Court for the Northern District of California, Dkt. No. 3:26-cv-03730-AMO. I am familiar with the lawsuit, which challenges ICE's pattern or practice of violating 5 U.S.C. § 552.
3. The City of Boston has experience with ICE's practice of refusing to respond to Freedom of Information Act ("FOIA") requests.
4. On June 10, 2025, Boston Mayor Michelle Wu signed an Executive Order titled "*Affirming the Due Process Rights of Bostonians and Seeking Information on Immigration Enforcement*" (the "Executive Order").
5. The Executive Order sought to promote accountability, transparency, and due process across all levels of government. The Executive Order instructed that Boston would submit federal FOIA requests to the Department of Homeland Security ("DHS"), specifically U.S. Immigration and Customs Enforcement ("ICE"), concerning federal immigration enforcement activity within the City of Boston, including to ascertain the date, time, and location of enforcement activity; the names of individuals who were

arrested or detained; and the alleged criminal conduct for which those individuals were arrested or detained.

6. In accordance with this Executive Order, Adam Cederbaum, then the Corporation Counsel for the City of Boston, submitted a FOIA request to DHS on June 13, 2025. The City sought any and all records prepared, received, transmitted, collected, and/or maintained by ICE that addressed, described, referred, or related to immigration enforcement, arrest, detention, or removal actions, civil or criminal (collectively, "enforcement actions"), in the City of Boston on or after January 20, 2025.

7. The City of Boston also sought any and all policies, directives, memoranda, guidance, field manuals, standard operating procedures, checklists, and training modules prepared, modified, issued, or reissued by ICE on or after January 20, 2025, reflecting ICE policy and practice with respect to:

   a. The use of, or limitations on the use of, race, ethnicity, national origin, or physical appearance in initiating contact with or arresting individuals;

   b. The use of, or limitations on the use of, face masks or other manners of obscuring the identity of ICE officials conducting immigration enforcement actions;

   c. Damage to personal or public property during or in connection with immigration enforcement actions; and

   d. ICE officials' duty, or lack thereof, to identify themselves—verbally, through their clothing, with a badge, or by any other means—before, during, or after an immigration enforcement action.

8. ICE responded on June 24, 2025 without producing any records. ICE wrote in an email to the Corporation Counsel that they needed clarification on the records sought, and wrote

that statistics were only available based on "AOR," which Boston understood to mean Area of Responsibility. ICE further directed the City to ICE's FOIA Library for the requested policies.

9. On July 18, 2025, Boston responded with the requested clarifications. Boston listed each zip code in the City, to facilitate ICE's location of the records. Boston also said that if necessary, the City would accept records for ICE's Boston Field Office AOR rather than records specific to the City. Boston further explained to the agency that the requested policies were not available on the FOIA Library based on a diligent search.

10. On August 12, 2025, ICE again refused to produce any information to Boston. ICE responded to the Corporation Counsel that they were "able to provide you with statistics however we need a specific Area of Responsibly [*sic*]," indicating that they were "unable to search by city or state." ICE provided a broken link (https://www.ice.gov/infomation-Library), with directions to search the "Area of Responsibility."

11. Boston filed a formal appeal to ICE's Office of the Principal Legal Advisor on August 19, 2025. Boston described why ICE's August 12, 2025 communication was not responsive to the City's initial request and clarification. For example:

    a. The August 12, 2025 denial from ICE asked Boston to "Provide a date range of X-X days/weeks/months/years," which Boston had already done in its initial request.

    b. The August 12, 2025 denial asked for a "specific Area of Responsibly [*sic*]," but Boston had, on July 18, 2025, already indicated that it would accept records for the Boston Field Office AOR.

12. The City's appeal said that ICE was not engaging with the City's request. The City requested that ICE immediately comply with its obligations and produce the requested records.

13. On September 9, 2025, ICE sent its final decision rejecting the City's FOIA request. The final decision failed to address the clarifications that the City had provided and laid out in its August 19, 2025, appeal. Instead of engaging with the City's requests, repeated clarifications, and arguments on appeal, ICE's Office of the Principal Legal Advisor repeated the unfounded assertion that the City's "response failed to provide the requisite level of detail necessary for the ICE FOIA Office to conduct a reasonable search for the records requested."

14. ICE never produced any records to Boston in response to these clear requests.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Boston, Massachusetts on May 5, 2026.

*/s/ Samuel B. Dinning*
Samuel B. Dinning
Chief of Staff & Policy
City of Boston Law Department