CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division

NAG YOUNG CHU (NYBN 5925821)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7478
    FAX: (415) 436-7234
    Jeremy.Chu@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DAVID K. HAUSMAN, | Case No.: 4:26-cv-03730-AMO |
| Plaintiff, | **OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | Honorable Judge Araceli Martínez-Olguín |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | Date: June 18, 2026 |
| Defendant. | Time: 2:00 p.m. <br> Location: Oakland Courthouse[1] |

[1] Defendant requests that the hearing be held in the new location, pursuant to Clerks Notice on May 12, 2026 (ECF No. 22).

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
4:26-CV-03730-AMO

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………..…………………ii

I.    STATUTORY AND REGULATORY BACKGROUND.............................................................1

II.   FACTUAL BACKGROUND ...............................................................................................2

III.  ARGUMENT .....................................................................................................................4

    A.    The Relief that Plaintiff Seeks in His Motion is Improper and Should be Denied ............................................................................................................................4

    B.    Plaintiff Fails to Establish That He is Entitled to a Preliminary Injunction .......................5

        1.    Plaintiff Does Not Demonstrate Irreparable Harm ...................................................5

        2.    Plaintiff Fails to Show That He is Likely to Succeed on the Merits.......................8

        3.    The Balance of Equities and Public Interest Weigh Against a Preliminary Injunction ................................................................................................11

IV.   CONCLUSION.................................................................................................................13

**TABLE OF AUTHORITIES**

Cases                                                                                                   Page(s)

*Al-Fayed v. CIA*,
  254 F.3d 300 (D.C. Cir. 2001) ............................................................................... 6, 9, 10

*Am. Ctr. for Law & Justice v. United States Dep't of State*,
  249 F. Supp. 3d 275 (D.D.C. 2017) ............................................................................. 10

*Am. Freedom Def. Initiative v. King County*,
  796 F.3d 1165 (9th Cir. 2015) ...................................................................................... 7

*Amylin Pharms., Inc. v. Eli Lilly & Co.*,
  456 F. App'x 676 (9th Cir. 2011) .................................................................................. 6

*Anderson v. United States*,
  612 F.2d 1112 (9th Cir. 1980) ...................................................................................... 5

*Animal Legal Def. Fund v. United States Dep't of Agric.*,
  No. 17-CV-00949-WHO, 2017 WL 2352009 (N.D. Cal. May 31, 2017) ........................................... 5

*Cameranesi v. DOD*,
  856 F.3d 626 (9th Cir. 2017) ........................................................................................ 2

*Caribbean Marine Servs. Co. v. Baldrige*,
  844 F.2d 668 (9th Cir. 1988) ..................................................................................... 5, 6

*Citizenship & Immigr. Servs.*,
  832 F. Supp. 2d 1095 (N.D. Cal. 2012) ......................................................................... 7, 8

*Customs Enf't.*,
  No. 23-cv-00829, 2023 WL 2604585 (N.D. Cal. Mar. 15, 2023) ................................................... 4

*Daily Caller v. United States Dep't of State*,
  152 F. Supp. 3d 1 (D.D.C. 2015) .................................................................................... 9

*Delphon Indus., LLC v. Int'l Test Sols. Inc.*,
  No. 11-1338, 2011 WL 4915792 (N.D. Cal. Oct. 17, 2011) ....................................................... 5

*Exeltis USA Inc. v. First Databank, Inc.*,
  No. 17-cv-04810-HSG, 2017 WL 6539909 (N.D. Cal. Dec. 21, 2017) ............................................. 6

*Fed. Election Comm'n*,
  711 F.3d 180 (D.C. Cir. 2013) ...................................................................................... 9

*Heritage Found. v. U.S. Env't Prot. Agency*,
  No. CV 23-748, 2023 WL 2954418 (D.D.C. Apr. 14, 2023) ..................................................... 6, 7

*Martins v. United States Citizenship & Immigration Servs.*,
962 F. Supp. 2d 1106 (N.D. Cal. 2013) ................................................................................. 4

*Muttitt v. Dep't of State*,
926 F. Supp. 2d 284 (D.D.C. 2013) ..................................................................................... 10

*Nightingale v. U.S. Citizenship & Immigration Servs.*,
507 F. Supp. 3d 1193 (N.D. Cal. 2020) ............................................................................. 7, 8

*Nken v. Holder*,
556 U.S. 418, 129 S. Ct. 1749 (2009) .................................................................................. 6

*Oversight v. DOJ*,
292 F. Supp. 3d 501 (D.D.C. 2018) ...................................................................................... 9

*Owen v. United States Immigr. & Customs Enf't*,
No. CV 22-0550 DSF (AFMX), 2023 WL 9470904 (C.D. Cal. Jan. 12, 2023) .................... 7

*Payne Enters., Inc. v. United States*,
267 U.S. App. D.C. 63, 837 F.2d 486 (1988) ..................................................................... 10

*Privacy Info. Ctr. v. Dep't of Justice*,
15 F. Supp. 3d 32 (D.D.C. 2014) .......................................................................................... 7

*Protect Democracy Project, Inc. v. United States DOD*,
263 F. Supp. 3d 293 (D.D.C. 2017) ...................................................................................... 9

*Rolling Stone LLC v. Dep't of Just.*,
739 F. Supp. 3d 237 (S.D.N.Y. 2024) ........................................................................ 6, 7, 11

*Sai v. Transportation Sec. Admin.*,
54 F. Supp. 3d 5 (D.D.C. 2014) ............................................................................................ 6

*Sakamoto v. EPA*,
443 F.Supp.2d 1182 (N.D. Cal. 2006) .................................................................................. 4

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ................................................................................................. 6

*Tanner Motor Livery, Ltd. v. Avis*, Inc.,
316 F.2d 804 (9th Cir. 1963) ................................................................................................. 4

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ............................................................................................................... 6

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) ............................................................................................................... 4

Statutes

5 U.S.C. § 552 .................................................................................................................. 1

5 U.S.C. § 552(a)(6)(C)(i) ................................................................................................ 2

5 U.S.C. § 552(a)(6)(E)(i) ............................................................................................ 2, 9

5 U.S.C. §§ 552(a)(6)(C) ................................................................................................ 12

Regulations

6 C.F.R. § 5.5(e) .......................................................................................................... 2, 3

U.S. Immigration and Customs Enforcement ("ICE") has been undergoing several exceptional circumstances since Plaintiff submitted the first Freedom of Information Act ("FOIA") request at issue in this case. Starting in September 2025, ICE's operations have been severely disrupted by the longest federal government shutdown and the longest partial shutdown in U.S. history. The agency's FOIA office has also been handling increasing numbers of submissions of requests that involve ever-more complex tasks. In response, ICE has been working to strike the appropriate balance between the competing demands from numerous FOIA requestors and are devoting substantial resources to process their requests.

Plaintiff now seeks to bypass that system and move straight to the front of the line. But the mechanism by which he has chosen to seek this relief—a motion for preliminary injunction (ECF No. 12, the "Motion")—is procedurally inappropriate because it asks for the ultimate relief sought in the case, on an expedited basis, based on an incomplete record. Plaintiff asks this Court to order ICE to respond to his current FOIA requests within eight working days and to determine and respond to any future FOIA requests (regardless of the scope, content, or burden of those unknown future requests) within 28 working days. Such a mandatory preliminary injunction is particularly disfavored, and Plaintiff's Motion falls far short of the showing required for such extraordinary relief.

Moreover, Plaintiff fails to explain how he would suffer irreparable harm without *immediate* relief. Likewise, Plaintiff has not shown that the balance of equities and the public interest favor a preliminary injunction, which would disrupt the ordinary processing of FOIA requests, displace other requests without good reason, and subject ICE to an imprudently burdensome processing schedule. Because Plaintiff has not shown that he is entitled to the extraordinary remedy of a preliminary injunction, the Court should deny the Motion.

## I. STATUTORY AND REGULATORY BACKGROUND

The FOIA provides a means for the public to access federal records, subject to certain exemptions. *See* 5 U.S.C. § 552. Upon receipt of a properly submitted request, an agency generally must determine within twenty business days "whether to comply with such request" and then must notify the requestor of its determination and the reasons therefor. *Id*. § 552(a)(6)(A)(i). An agency may extend this deadline by ten business days in "unusual circumstances." *Id*. § 552(a)(6)(B)(i). In deciding how to comply with a given FOIA request, the agency must not consider the identity of the requestor or their need for the

information.  *See Cameranesi v. DOD*, 856 F.3d 626, 640 (9th Cir. 2017) ("We do not give weight to the FOIA requester's personal interest in obtaining information.").

The FOIA states that if an agency fails to determine a request within the relevant time period, the requestor "shall be deemed to have exhausted his administrative remedies with respect to such request," and may seek relief from a court to "order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(6)(C)(i), (a)(4)(B).

Under the FOIA, agencies are directed to promulgate regulations "providing for expedited processing of requests for records—(I) in cases in which the person requesting the records demonstrates a compelling need; and (II) in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). "Compelling need" is defined by the FOIA as meaning: "(I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." *Id*. § 552(a)(6)(E)(v).  The FOIA further provides that a "demonstration of a compelling need by a person making a request for expedited processing shall be made by a statement certified by such person to be true and correct to the best of such person's knowledge and belief." *Id*. § 552(a)(6)(E)(vi).

The Department of Homeland Security ("DHS") promulgated regulations addressing expedited processing requests to the agencies within DHS, including ICE.  Those regulations permit such requests when the FOIA office determines that they involve:

> (i) Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;
> (ii) An urgency to inform the public about an actual or alleged federal government activity, if made by a person who is primarily engaged in disseminating information;
> (iii) The loss of substantial due process rights; or
> (iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

6 C.F.R. § 5.5(e).

## II.    FACTUAL BACKGROUND

Plaintiff is the co-director of the Deportation Data Project, an organization that collects immigration enforcement data and makes the data accessible to the public.  ECF No. 1 (the "Complaint")

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
4:26-CV-03730-AMO                          2

¶ 6. To update the data that the Deportation Data Project provides, Plaintiff regularly submits requests under the FOIA. *Id.* Relevant here, Plaintiff submitted a monthly series of FOIA requests from September 2025 through March 2026 (the "FOIA Requests"). *Id.* ¶¶ 65-78. Each request involved the same categories of data related to immigration enforcement from Fiscal Year 2012 onwards. *Id.* ¶ 47. As part of these monthly requests, Plaintiff also requested that ICE expedite processing. *Id.* ¶ 50.

On September 15, 2025, Plaintiff submitted his first FOIA request for certain categories of information related to immigration enforcement. ECF No. 26-1 Fernando Pineiro Decl. ¶ 14. Four days later, ICE asked Plaintiff for clarification of his request and informed him that the request for data from 2012 onwards was too broad. *Id.* Plaintiff, through counsel, declined to narrow that request on September 26, 2025. *Id.* Three days after Plaintiff's response, ICE informed Plaintiff that his request for expedited processing was denied and tasked the appropriate agency component with searches for responsive records. *Id.* ¶ 15.

On October 1, 2025, ICE ceased its FOIA operations due to a lapse in appropriations from Congress. *Id.* ¶¶ 29, 31. After a brief return to operations in November 2025 when the FOIA office worked to address the backlog of requests that had accumulated during the government shutdown, DHS was again affected by a lapse in appropriations in mid-February 2026. *Id.* ¶ 33. As furloughed employees, FOIA office staff were not authorized to process any FOIA requests, including Plaintiff's FOIA Requests. *Id.* ¶¶ 31, 34. ICE's FOIA office was able to resume work on April 13, 2026, and was directed internally to prioritize court-ordered productions and other critical litigation-related tasks, while also addressing a significant backlog of FOIA requests. *Id.* ¶ 36.

Even without the FOIA requests that had built up during the government shutdowns, the volume of requests submitted to ICE has been rising in recent years, with a 13.5% annual increase in total FOIA requests in 2025, and the types of FOIA requests that the FOIA office handles have become more complex, taking up more resources from ICE. *Id.* ¶¶ 38-39. As part of its effort to handle the requests efficiently and without unfairly focusing its resources on one FOIA request, the FOIA office adopted a "first-in, first-out" processing system while also limiting the processing amount for any particular FOIA request. *Id.* ¶¶ 40, 47. As a result of the workload and the limit in processing, ICE will likely be unable to prioritize the review and production of one additional request and simultaneously maintain its current processing

procedure. *Id*. ¶ 48.  The FOIA office also has a Litigation Processing Unit that processes FOIA requests that have become the subject of lawsuits; the unit is currently handling 240 active FOIA litigations, of which 124 lawsuits have monthly rolling productions, and processing approximately 62,500 pages of records per month. *Id*. ¶ 44.

## III.    ARGUMENT

### A.    The Relief that Plaintiff Seeks in His Motion is Improper and Should be Denied

Plaintiff's Motion should be denied because it prematurely asks for the ultimate relief sought in this lawsuit.  Courts generally deny such requests made through preliminary injunctions, because "the usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits." *See Tanner Motor Livery, Ltd. v. Avis*, Inc., 316 F.2d 804, 808-09 (9th Cir. 1963); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

By requesting the immediate processing and release of any information subject to the FOIA Requests within eight working days and any future (unknown) FOIA requests within 28 working days, Plaintiff is asking this Court to issue the same permanent relief sought in Plaintiff's complaint, but at the very threshold of the case, before ICE has even answered the complaint.  That inverts the traditional sequence of proceedings in FOIA litigation and would effectively grant Plaintiff a victory on the merits at this early stage of the case—indeed, if Plaintiff's motion for a mandatory preliminary injunction is granted, it is not clear what disputes would remain in this FOIA lawsuit. *See Sakamoto v. EPA*, 443 F.Supp.2d 1182, 1188 (N.D. Cal. 2006) ("It is generally recognized that summary judgment is a proper avenue for resolving a FOIA claim."); *see also Martins v. United States Citizenship & Immigration Servs.*, 962 F. Supp. 2d 1106, 1128 (N.D. Cal. 2013) (denying injunctive request for disclosure of records and instead ordering production of a *Vaughn* index).  The Motion should not be "transformed into a trial of the merits of the action upon affidavits," without an opportunity for Defendant to properly review its files and for briefing on the merits. *See Tanner*, 316 F.2d at 808-09; *cf. Mendez v. U.S. Immigr. & Customs Enf't.*, No. 23-cv-00829, 2023 WL 2604585, at *3 (N.D. Cal. Mar. 15, 2023) (dismissing request for a temporary restraining order partly because the moving party sought the same relief they sought in their complaint). For that reason alone, Plaintiff's Motion should be denied.

Moreover, mandatory injunctions—which compel parties to take affirmative actions—"are not granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980) (citation omitted).  Plaintiff must therefore demonstrate that the "law and facts clearly favor" a preliminary injunction. *See Animal Legal Def. Fund v. United States Dep't of Agric.*, No. 17-CV-00949-WHO, 2017 WL 2352009, at *4, 10 (N.D. Cal. May 31, 2017).  Here, Plaintiff demands that ICE adopt a set of extraordinary and immediate changes to the status quo: (1) expedite processing of his FOIA requests and produce the requested data within eight working days; (2) determine Plaintiff's future FOIA requests within 20 working days and produce the requested data within eight working days of a determination; and (3) submit quarterly compliance reports. *See* Mot. at 24.  Plaintiff fails to demonstrate any "extreme or very serious damage" that he would incur if ICE does not respond to the FOIA Requests and any future requests within the timeframe.  Plaintiff purports that delays would render any released records "stale" and (without knowing the contents of those records beforehand) impact the public's discussion of immigration.  *See* Mot. at 20-23.  But such speculation and conclusory allegations, as explained further below, are insufficient to meet the heightened standard for granting a mandatory injunction. *See  Anderson*, 612 F.2d at 1114.  The Court should deny Plaintiff's request for these mandatory injunctions—both present and prospective—at this stage of the litigation, without an opportunity for the parties to present, and the Court to consider, relevant records and motions.

**B.        Plaintiff Fails to Establish That He is Entitled to a Preliminary Injunction**

**1.        Plaintiff Does Not Demonstrate Irreparable Harm**

Plaintiff fails to show that he would be irreparably harmed if ICE does not expedite the processing of the FOIA Requests or does not process and respond to any of his future requests within 28 working days.  Courts often consider irreparable harm as "the single most important prerequisite" for a preliminary injunction, before even considering any of the other factors. *See, e.g.*, *Delphon Indus., LLC v. Int'l Test Sols. Inc.*, No. 11-1338, 2011 WL 4915792, at *3 (N.D. Cal. Oct. 17, 2011) (citing *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)).

As an initial matter, Plaintiff incorrectly alleges that the Court must consider any impact on the public in deciding this factor. *See* Mot. at 20-23.  But the key question is whether there is irreparable harm

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
4:26-CV-03730-AMO                                5

to Plaintiff *himself*. *See Exeltis USA Inc. v. First Databank, Inc.*, No. 17-cv-04810-HSG, 2017 WL 6539909, at *9 (N.D. Cal. Dec. 21, 2017) ("Rather than focus on its own injury, Plaintiff attempts to redirect the focus of the irreparable harm inquiry to third parties. This is not permissible."); *see also Trump v. CASA, Inc.*, 606 U.S. 831, 844 (2025) (noting the "party-specific principles that permeate" equitable relief). Speculating about public harm is different in kind from proving personal harm. Yet in his Motion Plaintiff does not allege any risk of irreparable harm to himself beyond mere conclusory statements. *See generally* Mot. at 20-23. Plaintiff thus fails to demonstrate that he is entitled to a preliminary injunction. *See Baldrige*, 844 F.2d at 674 (holding that mere "[s]peculative injury does not constitute irreparable injury").

Even if the Court considers the purported third-party harms invoked here, Plaintiff fails to establish that the value of the information sought here—data pertaining to the government's broader immigration enforcement efforts—would sharply decline if it were produced after 28 working days. The Supreme Court has emphasized that a mere "possibility of irreparable injury" is insufficient. *Nken v. Holder*, 556 U.S. 418, 435, 129 S. Ct. 1749, 1761 (2009) (citation omitted). Instead, a preliminary injunction is warranted only when "the moving party has demonstrated a significant threat of *irreparable* injury, irrespective of the magnitude of the injury." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999) (emphasis added). In the FOIA context, the moving party must also identify a "specific end point at which the information's value drops off altogether," and a "general decline in the documents' value over time" is not enough. *See Rolling Stone LLC v. Dep't of Just.*, 739 F. Supp. 3d 237, 243 (S.D.N.Y. 2024) (citation omitted); *see also Heritage Found. v. U.S. Env't Prot. Agency*, No. CV 23-748, 2023 WL 2954418, at *5 (D.D.C. Apr. 14, 2023) (citing *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001)) (requiring "a specific event or time period after which the information will lose significant value" to show irreparable harm). The risk of irreparable harm must be "imminent" and not merely a risk in the indefinite future. *Amylin Pharms., Inc. v. Eli Lilly & Co.*, 456 F. App'x 676, 679 (9th Cir. 2011); *see also Sai v. Transportation Sec. Admin.*, 54 F. Supp. 3d 5, 10 (D.D.C. 2014) ("[U]nder FOIA, it is difficult for a plaintiff to demonstrate 'irreparable harm' that is in fact 'beyond remediation' because he is entitled to obtain all responsive and non-exempt documents at the conclusion of the litigation.").

Here, the alleged harm does not meet the requisite threshold to warrant immediate injunctive relief. Courts have long held that "a movant's general interest in being able to engage in an ongoing public debate using information that it has requested under FOIA is not sufficient to establish that irreparable harm will occur unless the movant receives immediate access to that information." *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 46-47 (D.D.C. 2014). While Plaintiff asserts that the information subject to the FOIA Requests would turn "stale" if not released expeditiously, he does not allege any injury other than a general desire to contribute to an ongoing public debate, and that is insufficient. *See id*. Any colorable claim of harm is therefore sharply undercut by the lack of irreparability that cannot be addressed in subsequent stages of this lawsuit.

And Plaintiff does not identify in his Motion a "specific end point at which the information's value drops off altogether," but merely "gesture[s] at the general decline in the documents' value over time." *See Rolling Stone*, 739 F. Supp. 3d at 243; *see also Heritage Found.*, 2023 WL 2954418, at *5. Plaintiff speculates that whatever records he ultimately obtains from the FOIA Requests or any future requests would be useful to the public in exposing "violations of law and government misconduct." *See* Mot. at 22. But Plaintiff fails to show that there is any particular time limit on the usefulness of that information, as he is required to do. *See Rolling Stone*, 739 F. Supp. 3d at 243; *see also Heritage Found.*, 2023 WL 2954418, at *5; *see also Owen v. United States Immigr. & Customs Enf't*, No. CV 22-0550 DSF (AFMX), 2023 WL 9470904, at *9 (C.D. Cal. Jan. 12, 2023) (finding that the plaintiffs failed to show irreparable harm partly because they "have not pointed to any specific deadlines that makes the information crucial *now* . . . [n]or have Plaintiffs pointed to anything suggesting that this debate will leave the public consciousness anytime soon.").

Plaintiff has not demonstrated that "extreme or very serious damage will result" unless the Court grants his request for a broad, and highly disfavored, mandatory preliminary injunction. *See Am. Freedom Def. Initiative v. King County*, 796 F.3d 1165, 1173 (9th Cir. 2015) (citation omitted). Indeed, the risk of harm here is vastly different from those for requestors that need timely access to records to participate in their immigration proceedings, which Plaintiff cites as support for the mandatory preliminary injunctive relief requested here. *See* Mot. at 24-25 (citing *Nightingale v. U.S. Citizenship & Immigration Servs.*, 507 F. Supp. 3d 1193 (N.D. Cal. 2020); then citing *Hajro v. U.S. Citizenship & Immigr. Servs.*, 832 F. Supp.

2d 1095 (N.D. Cal. 2012)). The FOIA requests in *Nightingale* had been submitted to secure records that the court noted was "vital for noncitizens in immigration proceedings," but such an exigent need is not at issue here. *Nightingale*, 507 F. Supp. 3d at 1198 ("Failure to timely respond to [the FOIA] requests creates an information asymmetry that hinders plaintiffs in successfully applying for immigration benefits, challenging removal orders, or seeking release from detention."). The plaintiff in *Hajiro* similarly sought information from the government to appeal the denial of his application for naturalization. *Hajro*, 832 F. Supp. 2d at 1100. Here, in contrast, Plaintiff purports to use records from ICE for his Deportation Data Project, which "collects, analyzes, and posts public, anonymized U.S. government immigration enforcement datasets," and he fails to tie the records sought to any specific pending immigration proceedings. ECF No. 13 ¶ 6. Therefore, Plaintiff's public discourse arguments are a far cry from the purported harms faced by noncitizens fighting removal or seeking immigration benefits that are at issue in the cases relied upon by Plaintiff.

Plaintiff also does not explain why it is vital that he receives access to data spanning from 2012 to present within the eight-working-day timeframe. The FOIA Requests are overly broad, and an expedited processing of the requests would needlessly divert resources from the agency. *See* Pineiro Decl. ¶¶ 47-48. Further, Plaintiff purports to have access to data "covering dates through March 10, 2026," Complaint ¶ 38, yet he insists that he and the public urgently need data from 2012 onwards. And the Deportation Data Project maintains data for all the categories that are the subject of the FOIA Requests from October 2022 through March 2026 and data for at least some of the categories from October 2011 through September 2023. *See* Deportation Data Project, *Processed Data: Immigration and Customs Enforcement*, https://deportationdata.org/data/ice.html (last visited May 27, 2026). Hence, the Court should deny the motion because Plaintiff fails to demonstrate an immediate "extreme or very serious damage" that would result in the absence of the mandatory preliminary injunction sought here.

### 2.    Plaintiff Fails to Show That He is Likely to Succeed on the Merits

#### *Plaintiffs' Current FOIA Requests*

Plaintiff fails to show that he is likely to succeed in his claim that he is entitled to the immediate processing of the FOIA Requests and a response from ICE within eight working days. When an agency fails to respond to the requests within 20 days, the requestor is simply deemed to have exhausted

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
4:26-CV-03730-AMO                        8

administrative remedies for purposes of seeking immediate judicial review of the agency's processing of the FOIA request. *See Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("If the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."); *see also Daily Caller v. United States Dep't of State*, 152 F. Supp. 3d 1, 11 (D.D.C. 2015) ("Standing alone, [the government's delay in issuing a final determination] does not conclusively demonstrate that the plaintiff is likely to prevail in its underlying effort to accelerate the processing of its FOIA requests and the ultimate production of any responsive, non-exempt records."). A requestor who sues after the expiration of the 20-day timeline is not entitled to dictate his own timeline for production of records, but instead can file suit to have the court "supervise the agency's ongoing progress" while the agency "continue[s] to process the request." *Protect Democracy Project, Inc. v. United States DOD*, 263 F. Supp. 3d 293, 302 (D.D.C. 2017) (citation omitted). That is the statutory remedy available to Plaintiff, and it is the one he has exercised in bringing this lawsuit. Plaintiff therefore has not shown that he is likely to succeed on the merits for his pending FOIA Requests based on Defendant's purported delay in processing the FOIA Requests.

### *Plaintiffs' Requests for Expedited Processing*

The FOIA requestor bears the burden to demonstrate a "compelling need" for expedited processing, which is an exception to the general "first-in, first-out" process. 5 U.S.C. § 552(a)(6)(E)(i); *see Am. Oversight v. DOJ*, 292 F. Supp. 3d 501, 505 (D.D.C. 2018). Judicial review of an agency's denial of an expedited processing request is conducted *de novo* based on the record before the agency at the time of the determination. *Al-Fayed*, 254 F.3d at 308. While providing for expedited processing, Congress intended the categories for compelling need to be "narrowly applied." H.R. Rep. No. 104-795. Congress was particularly concerned that, "[g]iven the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment. *Id*. Because of an agency's limited resources, courts avoid "an unduly generous approach [that] would also disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none." *Al-Fayed*, 254 F.3d at 310.

While Plaintiff may be entitled to have ICE process and produce non-exempt, responsive records, he proffers no colorable reason why he is entitled to have ICE process, review, and produce—in the span of eight working days—all potentially relevant data beginning from 2012. Further, Plaintiff argues that ICE should be ordered to produce all records responsive to the FOIA Requests on an arbitrary timetable, and to thereby privilege Plaintiff's requests to the detriment to other FOIA requestors. As explained in ICE's declaration, the agency has implemented a reasonable approach to balance its FOIA disclosure obligations to all FOIA requesters and its inevitable resource constraints. *See* Pineiro Decl. ¶¶ 40, 47. Plaintiff is entitled to have his FOIA Requests processed; but that does not mean he is entitled to demand an artificial, onerous timeline for the agency or to jump to the head of the queue ahead of other FOIA requesters who would be harmed by Plaintiff's requested injunction.

### Plaintiff's Claim Based on An Alleged Pattern and Practice

Plaintiff's claim of a pattern and practice of delay fails because he has not articulated the type of "pattern and practice" that gives rise to such a cause of action. To state a pattern-and-practice claim, a plaintiff must plausibly allege "that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'" *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013) (citing *Payne Enters., Inc. v. United States*, 267 U.S. App. D.C. 63, 837 F.2d 486, 491 (1988)). Though an agency's "tardiness" could violate the FOIA, a plaintiff cannot sustain a pattern-and-policy claim unless "some policy or practice undergirds it." *Am. Ctr. for Law & Justice v. United States Dep't of State*, 249 F. Supp. 3d 275, 283 (D.D.C. 2017) (citation omitted). Failure to allege any—either formal or informal—policy or practice that gives rise to the delay is critical to the merits of such claims. *See Am. Ctr. for Law & Justice*, 249 F. Supp. 3d at 283 (finding that the plaintiff failed to "offer [any] fact or statement to establish *why* the requests were delayed or *how* the delays were the result of an either formal or informal" policy) (citation omitted). Here, Plaintiff fails to allege any particular policy or practice by ICE of routinely refusing to respond to FOIA requests. In fact, ICE responded to Plaintiff's initial request in September 2025 for clarification on the scope of the request. Pineiro Decl. ¶ 14. After Plaintiff refused to narrow the scope, ICE informed him that his request for expedited treatment was denied. *Id*. ¶ 15. And soon after that request, ICE underwent unprecedented

lapses in funding, causing months-long holds and continuing disruptions in its FOIA operations. *See id*. ¶¶ 28-36.

### 3.   The Balance of Equities and Public Interest Weigh Against a Preliminary Injunction

Plaintiff never addresses how public interest would be served by processing his FOIA Requests on an *expedited* basis.  Rather, Plaintiff focuses on the underlying purpose of the FOIA and the purported importance of the broader immigration discussion by the public.  *See* Mot. at 23-24.  In contrast, a preliminary injunction requiring ICE to complete all processing and review of the FOIA Requests and all prospective requests within the specified time would impose undue burdens not only on the agency, but also other FOIA requestors.  Imposing an arbitrary 28-working-day deadline would force ICE's FOIA office to focus much of its limited resources on Plaintiff's requests and, as mentioned above, would push other FOIA requests further back in the processing queue. *See Rolling Stone LLC*, 739 F. Supp. 3d at 242; *see also* Pineiro Decl. ¶¶ 40, 47 (describing ICE FOIA office's "first-in, first-out" process).

Further, Plaintiff paints a misleading picture about the burden of his particular FOIA Requests, claiming that the requests impose a lighter burden on the agency because they "only require producing copies of the Spreadsheets and redacting a small number of columns—the same few columns each time." *See* Complaint at 11; *see also* Mot. at 9.  Yet the FOIA Requests, seeking records beginning from 14 years ago, expressly demand in bold that "**all data should be provided for the full time period, rather than simply as an update to previous releases.**" *See*, *e.g.* ECF No. 13-1 Ex. A at 3 (emphasis in original). That is far from the minimal burden that Plaintiff suggests in the Motion. *See* Pineiro Decl. ¶ 48 (stating that a court order to produce certain number of records would be unfeasible).  ICE in fact asked Plaintiff to narrow the scope because of the resources that would be required to respond to his overbroad request— Plaintiff refused. *See id*. ¶ 14.

Moreover, Plaintiff's assertion that subjecting ICE to the eight-working-day timeline would "impose minimal burdens" is also incorrect. *See* Complaint ¶ 7; *see also* Mot. at 8.  Plaintiff bases that argument on *Ctr. for Immigr. Law & Pol'y v. U.S. Immigr. & Customs Enf't.*, No. 2:24-cv-10444 (C.D. Cal. filed Dec. 4, 2024) ("*CILP*"), in which an organization sued ICE for similar categories of information that Plaintiff seeks in the FOIA Requests, including removals, detentions, arrests, encounters, and detainer

requests. *See* Mot. at 8. In *CILP*, the parties settled the suit and agreed to a series production of records, including a production that was released in July 2025, eight working days after the previous release in June 2025. *See* Joint Status Report, Dkt. 24, *id.* (Jul. 9, 2025). But the July 2025 production was only a "revised set" of data that sought to address "issues with the [June] data" that the *CILP* plaintiffs had identified. *Id.* (eight working days after the previous production, "Defendant produced the revised set of removals data, along with a revised set of the other categories of data Plaintiff requested.").

In contrast, the work required of ICE to process the FOIA Requests here is different, demanding that ICE provide data for the entire 14-year time period in response to each FOIA request, rather than update previous releases. In fact, ICE's subsequent work in *CILP* illustrates the burden that Plaintiff's demand in this Motion would impose on the agency. After the July 2025 production in *CILP*, ICE needed to conduct further work to provide another "revised set" of data that the *CILP* plaintiffs would find satisfactory, which required 26 additional working days. *See* Joint Status Report, Dkt. 26, *id.* (Aug. 8, 2025). Then, despite ICE's additional work and production, the *CILP* plaintiffs again expressed "concerns regarding the completeness" of that revised data and ICE was to work on the processing further until September 19, 2025. *See* Joint Status Report, Dkt. 28, *id.* (Sep. 8, 2025). In other words, ICE ultimately needed *70 working days* from the *CILP* settlement to respond to the request, which was narrower in scope than the present FOIA Requests.[2]

Plaintiff's claim for injunctive relief on any future requests to be processed within 28 working days will negate Congress's enactment of the expedited processing provisions that require a "compelling need" for every FOIA request and the "unusual circumstances" provision that permits an agency to request for additional time. *See* 5 U.S.C. §§ 552(a)(6)(C), (a)(6)(B)(i). Plaintiff demands here that ICE forgo its normal review of FOIA requests on a case-by-case basis and respond to any future requests—without considering the scope or content of those requests and the agency's processing system—within the 28-day timeframe. *See* Pineiro Decl. ¶¶ 6-11. And full compliance with the requested court order would likely be impossible. Despite making every effort to adhere to the FOIA's deadlines, ICE—like most of

---

[2] It is unclear if even 70 working days would be enough for ICE to process the requests; in *CILP*, ICE's FOIA office was eventually furloughed due to lapse in appropriations from Congress in September 2025 and was unable to produce a revised set of data by the September 8, 2025 deadline. Joint Status Report, Dkt. 33, *CILP v. U.S. Immigr. & Customs Enf't.*, 2:24-cv-10444 (C.D. Cal. Nov. 7, 2025).

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
4:26-CV-03730-AMO                         12

the rest of the federal government—simply does not have the resources to meet the 28-day deadline 100% of the time. *See id.* ¶ 48. The Court should not set up ICE for failure when the record reflects that it is already making every effort to uphold its FOIA duties.

For these reasons, the public interest weighs in favor of applying the normal processing schedule to the FOIA Requests.

## IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's motion for preliminary injunction.

Date: May 27, 2026                                           Respectfully submitted,

                                                            CRAIG MISSAKIAN
                                                            United States Attorney

                                            By:     __*/s/ Nag Young Chu*_____
                                                            NAG YOUNG CHU
                                                            Assistant United States Attorney

                                                            Attorneys for Defendant