UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID HAUSMAN,

        Plaintiff,

    v.

IMMIGRATION AND CUSTOMS
ENFORCEMENT,

        Defendant.

Civil Action No. 26-cv-03730

## <u>DECLARATION OF FERNANDO PINEIRO</u>

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the FOIA Director of the U.S. Immigrations and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since August 14, 2022, and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the FOIA, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013, to August 13, 2022, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS"). The ICE FOIA Office mailing address is 500 12th Street, SW, STOP 5009, Washington, DC 20536-5009.

2. As the FOIA Director my official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office regarding the processing of FOIA and Privacy Act requests received at ICE. In connection with my official duties and

responsibilities, I am familiar with ICE's procedures for responding to requests for information pursuant to the FOIA and the Privacy Act.

3. Through the exercise of my official duties, I am familiar with ICE's receipt and handling of the FOIA requests submitted by Plaintiff in this lawsuit and the steps taken to respond to Plaintiff's FOIA requests.

4. I make this declaration in support of ICE's Reply to the Plaintiff's Motion for a Preliminary Injunction. The purpose of this declaration is to: (1) describe ICE's actions regarding the handling of the seven FOIA requests at issue in Plaintiffs' complaint; (2) outline ICE's standard procedures for processing FOIA requests; (3) provide information about ICE's current FOIA burden; and (4) explain ICE's ability to process potentially responsive documents in this case in light of the aforementioned information.

5. The statements contained in this declaration are based upon my personal knowledge, my review of the documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

I.    **ICE FOIA's Standard Procedures for Processing FOIA Requests**

6. When the ICE FOIA Office receives a FOIA request, the intake staff evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3. Generally, a FOIA request is considered proper and in compliance with DHS regulations if it reasonably describes the records sought and the records are under the purview of ICE.

7. Proper FOIA requests are entered into a database known as SecureRelease and assigned a case tracking number. Based upon the requester's description of the records being sought and ICE FOIA's knowledge of the various program offices' missions, the ICE FOIA Office identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.

2

8.      ICE records are maintained by leadership offices, such as ICE Office of the Director, and/or within ICE directorates, including but not limited to the Office of Enforcement and Removal Operations (ERO), the Office of Professional Responsibility, the Office of the Director and the Office of the Principal Legal Advisor. The program offices are typically staffed with a designated point of contact ("POC"), who is the primary person responsible for communications between that program office and the ICE FOIA Office. Each POC is a person with detailed knowledge about the operations of his/her respective program office.

9.      Upon receipt of a proper FOIA request, the ICE FOIA Office will identify which program offices within ICE are reasonably likely to possess records responsive to that request, if any, and task the relevant program offices with searches. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POCs then review the FOIA request, along with any case-specific instructions that may have been provided and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. In conformity with the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides

3

the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness and the application of appropriate FOIA Exemptions.

10. Records received by the ICE FOIA Office from the program office POCs are assigned to a FOIA processor who determines whether or not the records are responsive to the FOIA request. If the records are responsive, the FOIA processor will redact information pursuant to the FOIA or Privacy Act, as appropriate, while simultaneously ensuring that all reasonably segregated non-exempt information is released.

11. Frequently, the ICE FOIA Office must coordinate between multiple program offices to ensure the program office records are properly redacted and information is correctly segregated. Once the ICE FOIA Office completes its coordination efforts and all responsive records have been processed, the ICE FOIA Office releases the responsive records to the requester.

II.    **Administrative History and Progress in this Litigation**

12. On April 29, 2026, Plaintiff filed a Complaint against ICE seeking production of documents responsive to Plaintiff's FOIA requests dated September 15, 2025, October 15, 2025, November 15, 2025, December 15, 2025, January 15, 2026, February 16, 2026, and March 17, 2026.

13. The FOIA requests all seek the same categories of statistical ICE immigration enforcement and removal data from fiscal year (FY) 2012 to date, updated monthly. Specific categories of data include various data points relating to encounters, detainers, arrests, detentions and removals.

14. ICE FOIA received the first FOIA request on September 15, 2025. On September 19, 2025, ICE FOIA informed the requester via email that the FOIA request as written was too broad and requested that it be narrowed in scope. On September 26, 2025, the requester declined to narrow the request.

15.     On September 29, 2025, ICE FOIA issued an Acknowledgement Letter to the Plaintiff, assigning the request tracking number 2025-ICFO-60381 and denying expedited processing to the requestor. On the same day, ICE FOIA tasked ERO with the search for responsive records.

16.     On October 15, 2025, ICE FOIA received the second FOIA request, assigned tracking number 2026-ICFO-01794. Due to the ongoing federal government shutdown and ensuing backlog, further discussed below, this request was on hold until January 12, 2026.

17.     On January 12, 2026, ICE FOIA issued an Acknowledgement Letter to the Plaintiff and denied expedited treatment for the request.

18.     On the same day, ICE FOIA tasked ERO with the search in response to the FOIA request.

19.     ICE FOIA received the third FOIA request on November 15, 2025, assigned tracking number 2026-ICFO-05204.

20.     On December 9, 2025, ICE FOIA issued an Acknowledgement Letter to the Plaintiff and denied expedited treatment for the request.

21.     ICE FOIA placed this request on hold on December 9, 2025, while it determined whether the responsive data (or a subset thereof) was or could be made publicly available, which would have allowed ICE FOIA to close out the FOIA request. ICE FOIA lifted the hold on this request on January 7, 2026, having determined that the data was not otherwise publicly available.

22.     ICE FOIA received the fourth FOIA request on December 15, 2025, assigned tracking number 2026-ICFO-08556. On January 6, 2026, ICE FOIA informed the requester via email that the FOIA request as written was too broad and requested that it be narrowed in scope.

A notation within ICE FOIA's internal tracking system dated February 13, 2026, indicates that the requestor failed to submit a clarification/narrowing statement.

23. ICE FOIA received the fifth FOIA request on January 15, 2026.

24. On January 20, 2026, ICE FOIA issued an Acknowledgement Letter to the Plaintiff, assigning the request tracking number 2026-ICFO-11946.

25. On January 20, 2026, ICE FOIA tasked ERO with the search for records responsive to the request.

26. ICE FOIA received the sixth FOIA request on February 16, 2026, assigned tracking request number 2026-ICFO-17344.

27. ICE FOIA received the seventh FOIA request on March 17, 2026, assigned the tracking request number 2026-ICFO-20862.

### III. The Impact of the Shutdowns and Current Workload of the ICE FOIA Litigation Processing Unit

28. Separate and apart from the challenges posed by ICE FOIA's increasing workload without the corresponding increase in staffing, further discussed in paragraphs 37-47 below, ICE FOIA operations have also been adversely affected by two government shutdowns of historic length.

29. Specifically, the Department of Homeland Security (DHS) experienced the first government shutdown at midnight on September 30, 2025, due to lapse in appropriations, which lasted until November 12, 2025.

30. During the U.S. federal government shutdown, and consistent with DHS and ICE procedures for lapses in appropriations, certain ICE activities were treated as "excepted" (and therefore authorized to continue during the lapse in appropriations), while other activities were

treated as "non-excepted" (and therefore must cease during the lapse and associated employees are placed in furlough status).

31.     For the purposes of this lapse in appropriations, the ICE FOIA operations have been treated as a non-excepted function, and all ICE FOIA Office employees, including the ICE FOIA Director, were furloughed effective Wednesday, October 1, 2025. As furloughed employees, they were not authorized under applicable lapse-in-appropriations guidance and the Antideficiency Act to perform work on FOIA matters, including both administrative FOIA processing and FOIA-related litigation support.

32.     Therefore, during this period the agency could not respond to new or pending FOIA requests; conduct or oversee searches for responsive records; coordinate with operational program offices FOIA points of contact; review records for responsiveness and applicable exemptions; make release determinations; nor prepare and issue productions. In other words, during the period of the first U.S. federal government shutdown, the FOIA-specific tasks described above were not being performed by ICE FOIA, and all work regarding the processing of the FOIA request 2025-ICFO-60381 (received September 15, 2025) and FOIA request 2026-ICFO-01794 (received October 15, 2025), was halted.

33.      Furthermore, even after government operations resumed on November 13, 2025, ICE FOIA faced severe operational challenges due to the accumulated backlog during the period the entire office was furloughed, further delaying resumption of normal operations and efficient processing of the Plaintiff FOIA requests.

34.     The next government shutdown, this time affecting only DHS (as opposed to the entire U.S. federal government) affected ICE FOIA operations even more adversely because it was longer in duration. The ICE FOIA Office were furloughed again on February 13, 2026, in

accordance with the furlough procedures described above. Again, all ICE FOIA operations were completely halted, including all processing of incoming or pending FOIA requests.

35.    For this reason, ICE FOIA was unable to do any work to process the FOIA requests it had received from the requestor on February 16, 2026, and March 17, 2026 (tracking numbers 2026-ICFO-17344 and 2026-ICFO-20862).

36.    On Monday, April 13, 2026, additional funding authority became available to support ICE FOIA operations, and ICE FOIA employees were recalled to duty. Since that time, ICE FOIA has resumed work on FOIA matters, while the overall lapse in appropriations has continued to affect other DHS and ICE activities. In returning to operations, ICE FOIA received a directive from DHS Chief FOIA Officer and Chief Privacy Officer to prioritize court-ordered productions and other critical ligation-related tasks, while concurrently addressing a significant backlog of pending FOIA requests that accumulated during the furlough period and that pre-dated the lapse.

37.    Even with FOIA staff recalled, ICE FOIA continues to operate under finite resources and significant workload constraints. The office must balance efforts to resume processing in this case against obligations in numerous other FOIA litigations and a large backlog of administrative FOIA requests, and it remains subject to the same processing-rate limitations, quality-control requirements, and competing priorities described above.

38.    ICE FOIA Office currently has FOIA specialists dedicated to processing FOIA requests solely on the administrative level. The processors are responsible for responding to the original FOIA requests and, if necessary, reprocessing remands on appeal. In FY 2025 these FOIA

processors completed and closed out 79,310 FOIA requests.[1] This represents a 13.5% increase in total FOIA requests from FY 2024.[2]

39.     In addition to the increasing volume of FOIA requests, ICE has also experienced an increase in the complexity of FOIA requests, both in terms of volume and substance. For example, the ICE FOIA Office frequently receives requests with 50 to 60 sub-parts comprising several pages, searches of numerous program offices, and a universe of records that has thousands of pages to review and process. These FOIA requests take considerably longer to process due to extensive searches and the intricacy of the documents and/or data produced.

40.     In response to the increasingly heavy workload, the ICE FOIA Office has adopted the court-approved practice of generally handling backlogged requests on a "first-in, first-out basis," which ensures fairness to all FOIA requestors by not prioritizing one request over another. This practice also applies to requests that are in litigation. The reason for this is that the principle of fairness to all requestors would be jeopardized were a requestor permitted to "jump the line" simply by virtue of filing a case in U.S. District Court. Generally, the only exception to this is where a court orders processing at rates above the ICE FOIA Office's current processing rate for all cases.

41.     The ICE FOIA Office is currently processing approximately 10,954 open FOIA requests addressing a backlog of 7,845 FOIA requests.

42.     The increasing complexity and volume of ICE FOIA's workload and backlog creates the potential that some FOIA requests could become subject to litigation in federal district court.

---

[1] ICE does not offer the FY 2026 numbers because the two government shutdowns have severely distorted and altered ICE FOIA's normal operating procedures and those numbers would not accurately portray ICE FOIA operational realities.
[2] ICE FOIA processed 69,251 FOIA requests in FY 2024.

43.     ICE FOIA's Litigation Processing Unit exclusively handles FOIA requests that have become the subject of a lawsuit.

44.      The ICE FOIA Litigation Processing Unit's workload has increased such that as of May 2026, it is handling 240 active FOIA litigations, of which 124 litigations have monthly rolling productions. ICE's normal processing rate for cases in litigation is 500 pages or 5 minutes of media files, per month, per case. This means, on average, the ICE FOIA Litigation Unit is currently processing approximately 62,500 pages of potentially responsive records per month.

45.     The ICE FOIA Litigation Processing Unit also drafts search taskings, as well as assigns, and tracks any and all searches for responsive documents concerning FOIA litigations. The FOIA litigation search taskings frequently span dozens of ICE program and field offices and require the Unit to keep track of hundreds of thousands of responsive records, as well as the documentation from searches of the program offices and field offices.

46.     The ICE FOIA Litigation Processing Unit has mission-critical duties in addition to processing documents pursuant to litigation. For example, the processing unit prepares various reports for statistical tracking, responds to congressional inquiries and requests for records, redacts Prison Rape Elimination Act reports, sends out FOIA Exemption (b)(4) submitter notices, and manages litigation consults and referrals from other agencies. Additionally, the processing unit supports attorneys in the ICE Office of the Principal Legal Advisor with FOIA litigation by assisting in the creation of *Vaughn* indices, reviewing declarations, and coordinating on joint status reports to the court.

47.     To meet its obligations for all cases in litigation by ensuring that all FOIA matters progress and each requester receives a response, the ICE FOIA Office typically cannot process more than 500 pages or 5 minutes of media files per month per case. Any increase in production

for one case will inevitably hinder ICE FOIA's ability to process records for production in other matters.

48.    Moreover, the strain on the ICE FOIA Office is such that it typically cannot produce a set number of pages per month. Depending on the volume of records located in response to the search tasking phase of the administrative stage and/or FOIA litigation, if the Court orders ICE FOIA to "produce" rather than "review" or "process" a certain number of pages per month, it is entirely plausible that the processors would have to review hundreds, or even thousands, of additional pages on top of a 500-page processing rate in order to identify the requisite number of responsive pages to meet the production goal. ICE FOIA is incapable of achieving this outcome based on its finite resources, competing priorities, litigation and non-litigation deadlines, and the sheer volume of overall work.

49.    Additionally, each ICE production also requires a review by an ICE FOIA litigation supervisor. The supervisor conducts a second-line review of all the records to ensure consistency and accuracy. Further, each ICE production requires a final line-by-line review by an attorney from the Office of the Principal Legal Advisor. The attorney reviews all the records to determine the legal sufficiency of the withholdings. These two required additional layers of review further increase the actual total cost to process Plaintiff's FOIA request.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Signed this ▮▮ day of ▮▮ 2026.

_____
Fernando Pineiro, FOIA Director
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, SW, Stop 5009
Washington, DC 20536-5009