Khaled Alrabe (CA SBN 349899)
Email: khaled@nipnlg.org
NATIONAL IMMIGRATION PROJECT
1400 Shattuck Ave, Suite 12 PMB #141
Berkeley, CA 94709
Telephone: (617) 227-9727

Amber Qureshi (DC 90001046)*
Email: amber@qureshilegal.com
LAW OFFICE OF AMBER QURESHI, LLC
6925 Oakland Mills Road PMB #207
Columbia, MD 21045
Telephone: (443) 583-4353

* Admitted *pro hac vice*

 *Attorneys for Plaintiff David K. Hausman*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DAVID K. HAUSMAN,<br><br>Plaintiff,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Defendant. | Case No. 4:26-cv-03730-AMO<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: June 18, 2026<br>Time: 2:00 p.m.<br>Location: Oakland<br>Judge: Hon. Araceli Martínez-Olguín |

**TABLE OF CONTENTS**

I.    **INTRODUCTION**.................................................................................................1

II.   **ARGUMENT**.....................................................................................................2

   A.    Preliminary Injunctive Relief is Appropriate...............................................2

   B.    Plaintiff Is Entitled to a Preliminary Injunction..........................................3

     1.    Hausman Is Likely to Succeed on the Merits. ..........................................3

       i.   *ICE failed to timely process and release records to Hausman.*.....................3

      ii.   *Hausman is entitled to expedited processing.*.............................................5

     iii.   *ICE has a pattern or practice of failing to comply with FOIA.*................6

     2.    Hausman Will Be Irreparably Harmed Absent Preliminary Relief. ...........7

     3.    The Remaining Factors Weigh in Hausman's Favor. ...............................11

III.    **CONCLUSION** .............................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ..............................................3

*Am. C.L. Union of Washington v. U.S. Dep't of Just.*, No. C09-0642RSL, 2010 WL 11692313 (W.D. Wash. Jan. 19, 2010) ..............................................................................12

*Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32 (D.D.C. 2020) .... 8, 10

*Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182 (D.D.C. 2019) ....................................4

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023) ..............................................................................3

*Brown v. U.S. Customs & Border Prot.*, 132 F. Supp. 3d 1170 (N.D. Cal. 2015) ........................7

*Citizens for Resp. & Ethics in Washington v. U.S. DOGE Serv.*, 769 F. Supp. 3d 8 (D.D.C. 2025), reconsideration denied, No. 25-CV-511 (CRC), 2025 WL 863947 (D.D.C. Mar. 19, 2025) ..............................................................................9

*Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013) ..............................................................................12

*Ctr. for Pub. Integrity v. DOD*, 411 F. Supp. 3d 5 (D.D.C. 2019) ....................................4, 8, 10

*Democracy Forward Found. v. Dep't of Just.*, 813 F. Supp. 3d 1 (D.D.C. 2025) ........................5

*DOJ v. Reps. Comm. For Freedom of Press*, 489 U.S. 749 (1989) ................................................8

*Elec. Frontier Found. v. Off. of Dir. of Nat. Intel.*, No. C 07-5278 SI, 2007 WL 4208311 (N.D. Cal. Nov. 27, 2007) ..............................................................................5, 8

*Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30 (D.D.C. 2006) ....................7, 8, 9, 10

*Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32 (D.D.C. 2014) ..............................9

*Fiduccia v. U.S. Dep't of Just.*, 185 F.3d 1035 (9th Cir. 1999) ..............................................10, 11

*Gerstein v. C.I.A.*, No. C-06-4643 MMC, 2006 WL 3462659 (N.D. Cal. Nov. 29, 2006) ..... 8, 12

*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ....................................................................3

*Innovation L. Lab v. US Immigr. & Customs Enf't*, No. 3:25-CV-00066-AN, 2026 WL 1091798 (D. Or. Apr. 22, 2026) ..............................................................................5

*Long v. U.S. I.R.S*, 693 F.2d 907 (9th Cir. 1982) ..........................................................................2

*Mora v. Customs and Border Protection*, No. CV 24-3136 (BAH), 2026 WL 1382677 (D.D.C. May 18, 2026) ..............................................................................6

*Nightingale v. U.S. Citizenship & Immigr. Servs.*, 507 F. Supp. 3d 1193 (N.D. Cal. 2020) ... 7, 12

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1976) ..........................................................1

*Payne Enters., Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) ............................................2

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293 (D.D.C. 2017) .......9

*Robert F. Kennedy Hum. Rts. v. United States Dep't of Homeland Sec.*, No. 25-CV-6541 (JMF), 2026 WL 937016 (S.D.N.Y. Apr. 7, 2026) ..............................................................................5

*S. Oregon Barter Fair v. Jackson Cnty., Oregon*, 372 F.3d 1128 (9th Cir. 2004) ........................2

*Univ. of Washington v. United States Dep't of Homeland Sec.*, No. 2:24-CV-01872-LK, 2026
   WL 864702 (W.D. Wash. Mar. 30, 2026) ................................................................................ 4

**Statutes**

5 U.S.C. § 552 ................................................................................................................ 6, 12

## I.    INTRODUCTION

Months after Hausman filed his FOIA requests and nearly a month after Hausman sought a preliminary injunction, ICE has still failed to produce the Spreadsheets requested in this case. ICE's opposition does not dispute that Hausman is entitled to those Spreadsheets. It disputes only the timing. ICE's obstructive position illustrates why this Court should enter an injunction requiring it to respond to Hausman's requests for the Spreadsheets on a regular basis. Without such an injunction, ICE's recurring delays will continue to deprive Hausman of timely access to records that are central to his work and urgently needed. This leaves months-long litigation as the only practical avenue of obtaining updates, but by the time those updates are produced, their value will already have diminished.

Rather than dispute Hausman's basic claims, ICE raises a variety of ancillary objections, none of which has merit. The government incorrectly suggests that preliminary relief, which ceases to have effect at the end of the case, is identical to permanent relief; that Hausman is not irreparably harmed by irrecoverable delay in his inability to inform the public about immigration enforcement, an issue of the highest national concern; that the government shutdown excuses a pattern of nonresponse that started long before it and continues after it; and that Hausman did not identify such a pattern, despite identifying more than two dozen examples. These objections, like the government's near-concession on the merits, merely illustrate why continuing relief is so necessary in this case: absent such relief, ICE will do exactly what it has always done, which is to withhold the Spreadsheets until confronted with litigation, and then begin the cycle again.

By granting preliminary relief and requiring ICE to timely respond to Hausman's requests for the Spreadsheets, the Court would uphold the fundamental purpose of FOIA: "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1976).

## II.    ARGUMENT

### A.  Preliminary Injunctive Relief is Appropriate.

ICE incorrectly suggests that Hausman "prematurely asks for the ultimate relief sought in this lawsuit." Opp'n to Pl.'s Mot. for Prelim. Inj., ECF No. 26 ("PI Opp.") at 9.[1] A preliminary injunction here would fall short of the ultimate relief requested as it would only allow Hausman to obtain the requested records on an ongoing basis during the pendency of this litigation. And this Court's determination on a preliminary injunction is not binding at any later stage in the case. *See S. Oregon Barter Fair v. Jackson Cnty., Oregon*, 372 F.3d 1128, 1136 (9th Cir. 2004) ("Decisions on preliminary injunctions require the district court to assess the plaintiff's likelihood of success on the merits, not whether the plaintiff has actually succeeded on the merits.").

Nor is there any other barrier to issuing injunctive relief. ICE fails to acknowledge that federal courts have granted preliminary injunction motions in FOIA cases on numerous occasions. *See, e.g.*, Pl.'s Mot. for Prelim. Inj.; Mem. of P. & A. in Supp., ECF No. 12 ("PI Mem.") at 19 (citing cases). This Court has the authority to order preliminary injunctive relief because "FOIA imposes no limits on courts' equitable powers in enforcing its terms," *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). And injunctive relief is appropriate here because "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses." *Long v. U.S. I.R.S*, 693 F.2d 907, 910 (9th Cir. 1982). Indeed, "in determining whether injunctive relief is appropriate to resolve a FOIA dispute, the court's prime consideration should be the effect on the public of disclosure or nondisclosure." *Id*. at 909. And where "prolonged delays have repeatedly hindered the timely disclosure of non-exempt documents, the district court should seriously consider the likelihood of recurrence, weighing the good faith of any expressed intent to comply, the effectiveness, if any, of the discontinuance and the character of past violations." *Id*. ICE does not contest that the "prime consideration," the effect on the public of disclosure or nondisclosure,

---

[1] Page references to docket entries correspond to the ECF-stamped page numbers.

weighs heavily in Hausman's favor. *See* PI Mem. at 10–12 (describing public interest in the Spreadsheets).

Moreover, contrary to ICE's assertions, both Hausman and ICE have had ample opportunity to present "relevant records," PI Opp at. 10, and in light of the evidence presented, Hausman clearly meets the standard for preliminary relief here. An injunction is appropriate because "the status quo . . . is exactly what will inflict the irreparable injury upon complainant." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). Absent preliminary relief, Hausman will be forced to wait months or years to obtain an update to the Spreadsheets while ICE's ongoing violations of law continue to cause irreparable harm.

Therefore, this Court should not hesitate to consider the merits of Hausman's motion.

### B.  Plaintiff Is Entitled to a Preliminary Injunction.

ICE does not meaningfully engage with Hausman's overwhelming likelihood of success on the merits, even though it "is the most important factor." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citation omitted); *see* PI Opp. at 8–10; *see also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (affirming the Ninth Circuit's sliding scale approach to the preliminary injunction analysis). Instead, ICE unconvincingly argues that Hausman has not satisfied the irreparable harm factor and that it would be burdened by compliance with an injunction. *See* PI Opp. at 10–13, 16–18. Hausman has clearly shown that he—and the public he serves—would suffer irreparable harm absent preliminary relief. ICE's arguments regarding the public interest and equities disregard the public's overwhelming interest in information concerning immigration enforcement.

#### 1.  Hausman Is Likely to Succeed on the Merits.

##### i.  *ICE failed to timely process and release records to Hausman.*

ICE concedes—as it must—that it missed its 20-working-day deadline to respond to Professor Hausman's pending requests for the Spreadsheets. *See* Answer, ECF No. 28 ¶ 81; PI Opp. at 13–14; Decl. of Fernando Pineiro, ECF No. 27 ("Pineiro Decl.") ¶¶ 15–27. But it asserts that the only remedy available to Hausman is "to have the court 'supervise the agency's ongoing progress' while the agency 'continue[s] to process the request.'" PI Opp. at 14 (citation omitted).

To the extent ICE argues that Hausman's claim is moot now that he has brought litigation, this is wrong. A claim challenging an agency's untimely determination is "normally mooted when the agency makes the required determination during litigation and produces documents." *Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 186 (D.D.C. 2019). That has not occurred here. Rather, because ICE "has missed the statutory deadlines, [Hausman] is certain to succeed on the merits of [his] claim that [ICE] owes it a determination on its requests," and "since disclosure of non-exempt documents must follow shortly thereafter, the Court may order those disclosures at the same time under its customary supervisory authority in FOIA matters," including by way of a preliminary injunction. *Id.*; *see also Ctr. for Pub. Integrity v. DOD*, 411 F. Supp. 3d 5, 8, 11, 15 (D.D.C. 2019) (granting preliminary injunctive relief, including expedited processing, where "prior to the filing of this lawsuit, Defendants did not provide a determination on Plaintiff's requests").

ICE's arguments regarding the impact of the federal government shutdown are unconvincing. *See* Pineiro Decl. ¶¶ 28–36. First, ICE's focus on the impact of the shutdown is misplaced. For example, to support his pattern or practice claim, Hausman relied not only on his own recent requests for the Spreadsheets but those of 24 other requesters. PI Mem. at 26–27. The earliest of those requests was submitted on June 23, 2025, *see* ECF No. 13-17 at 1, over three months before the first government shutdown, *see* Pineiro Decl. ¶ 29. Hausman also pointed to several other lawsuits for substantially similar data, dating back to 2019. PI Mem. at 26. Moreover, Hausman explained, and ICE does not dispute, that he has sought the Spreadsheets or similar data from ICE under FOIA for several years, and ICE has never released timely responses to those requests. Decl. of David K. Hausman, ECF No. 13 ("Hausman Decl.") ¶ 12.

Second, even during the lapse in appropriations, several courts ordered ICE to comply with deadlines in FOIA cases, noting that it was unclear why the agency chose to furlough its FOIA staff during the shutdown. *See Univ. of Washington v. United States Dep't of Homeland Sec.*, No. 2:24-CV-01872-LK, 2026 WL 864702, at *3 (W.D. Wash. Mar. 30, 2026) (pointing out the "murky nature of how the agency chooses what functions are exempt or excepted"); *Innovation L. Lab v. US Immigr. & Customs Enf't*, No. 3:25-CV-00066-AN, 2026 WL 1091798,

at *3 (D. Or. Apr. 22, 2026) ("it is not clear from defendant's motion or Clark's declaration how defendant has made its determinations regarding exempt and non-exempt functions"). Relatedly, contrary to ICE's assertions, *see* Pineiro Decl. ¶¶ 31–32, 34, ICE was working on FOIA requests during the shutdown even in the absence of court-ordered deadlines. ICE released updated versions of the Spreadsheets in response to Hausman's colleague's litigation during the shutdown in March 2026 even though there was no court-ordered deadline requiring ICE to produce documents. *See* Order of Dismissal, ECF No. 23, *Mukherjee v. ICE*, No. 1:25-cv-08072 (S.D.N.Y. filed Sept. 29, 2025) (stating that ICE made a production of records on or about March 27, 2026); *see also* Hausman Decl. ¶ 27.

Third, regardless of the impacts of ICE's own decision to furlough its FOIA office during the shutdown, ICE admits that its FOIA office has fully returned to work since April 13, 2026, due to "additional funding authority bec[oming] available." Pineiro Decl. ¶ 36. Therefore, the shutdown is irrelevant going forward, and the only issue is whether Hausman has a right to the relief he seeks under FOIA. *See Robert F. Kennedy Hum. Rts. v. United States Dep't of Homeland Sec.*, No. 25-CV-6541 (JMF), 2026 WL 937016, at *2 (S.D.N.Y. Apr. 7, 2026) ("it is not the Court's concern — nor does the Court purport to direct — whether, when, or how much agency employees are paid to perform work required to comply with FOIA and the Court's Order.").

Thus, Hausman has demonstrated that he is likely to succeed on the merits of his claim that ICE has failed to process his requests within the statutory deadlines.

                    *ii. Hausman is entitled to expedited processing.*

ICE completely sidesteps Hausman's overwhelming entitlement to expedited processing on the merits and instead claims that Hausman is not entitled to "jump to the head of the queue ahead of other requesters." PI Opp. at 14–15. But once a requester has established an entitlement to expedited processing, it is entitled to "faster attention." *Democracy Forward Found. v. Dep't of Just.*, 813 F. Supp. 3d 1, 5 (D.D.C. 2025). The government has conceded as much in other litigation. *See Elec. Frontier Found. v. Off. of Dir. of Nat. Intel.*, No. C 07-5278 SI, 2007 WL 4208311, at *5 (N.D. Cal. Nov. 27, 2007) ("defendant argues that the expedited processing

provision of FOIA . . . allow[s] certain FOIA requests to jump to the front of the agency's processing queue.").

ICE also complains that Hausman is asking the agency to respond to his requests "on an arbitrary timetable." PI Opp at 15. But the relief Hausman seeks is based on the text of the statute. Where a requester is entitled to expedited review, the agency must process the request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). Hausman's request for the agency to produce responsive records within 8 working days is entirely practicable given that ICE has produced substantially similar information within that time. Moreover, courts routinely order agencies to produce information within a specified time period as part of their duty to enforce the mandate of FOIA. *See* PI Mem. at 32 (citing cases).

Because ICE does not meaningfully challenge Hausman's entitlement to expedited processing, this Court should find that Hausman is likely to succeed on the merits of his claim to expedited review.

### iii.  ICE has a pattern or practice of failing to comply with FOIA.

The government ignores both the law and the facts in suggesting that Hausman has not shown that ICE has a pattern or practice of failing to timely respond to requests for updates of the Spreadsheets.

As an initial matter, ICE relies entirely on cases within the D.C. Circuit in response to Hausman's claim regarding ICE's unlawful pattern or practice of violating FOIA. *See* PI Opp. at 10. Not only are these cases not binding, they are not persuasive, since the Ninth Circuit has a different standard for FOIA pattern or practice claims. *See Mora v. Customs and Border Protection*, No. CV 24-3136 (BAH), 2026 WL 1382677, at *10 (D.D.C. May 18, 2026) (noting the "different standard for policy-and-practice claims" in the Ninth Circuit compared to the D.C. Circuit); *Nightingale v. U.S. Citizenship & Immigr. Servs.*, 507 F. Supp. 3d 1193, 1200 (N.D.

Cal. 2020) (explaining that reliance on D.C. Circuit law "narrows what courts within this Circuit have found sufficient to establish a FOIA pattern or practice claim.").[2]

FOIA requesters within the Ninth Circuit have established a pattern or practice of violations by showing agency delays in responding to requests from the plaintiff and other requesters seeking similar information. *See* PI Mem. at 25 (citing cases). ICE's contention that Hausman has failed to show any pattern or practice of violating FOIA can be easily dismissed. Hausman has provided extensive support, including over two dozen examples, for his claim that ICE has a policy or practice of failing to produce the Spreadsheets in response to FOIA requests absent litigation. PI Mem. at 26–27. Hausman has requested the Spreadsheets under FOIA once each month since September 2025 and will continue to submit these requests regularly no more than once a month. That ICE provided a single response seeking "clarification" of the scope of Hausman's request does not change the fact that ICE routinely fails to produce the Spreadsheets unless a requester litigates. *See Nightingale*, 507 F. Supp. 3d at 1207 ("Even if there is no 'egregious' policy to violate FOIA's statutory deadlines, 'informal agency conduct resulting in long delays in making requested non-exempt records available may serve as the basis for a policy or practice claim.'" (citation omitted)).

For these reasons, Hausman is likely to succeed on his pattern-or-practice claim.

### 2.  Hausman Will Be Irreparably Harmed Absent Preliminary Relief.

Hausman has amply demonstrated that he is being irreparably harmed by being prevented "from obtaining in a timely fashion information vital to the current and ongoing debate." *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006); *see* PI Mem. at 27–30. The government's immigration enforcement practices are ongoing and unquestionably subject to ongoing public debate. *Id*. at 28–29. ICE's opposition does not even mention, let alone refute, the overwhelming evidence of the value of the Spreadsheets to those ongoing debates.

---

[2] To the extent ICE suggests that Hausman must identify or name a specific policy to support his pattern or practice claim, that is incorrect. *See Brown v. U.S. Customs & Border Prot.*, 132 F. Supp. 3d 1170, 1174 (N.D. Cal. 2015).

ICE instead wrongly claims that Hausman's asserted harms do not constitute irreparable harm *to Hausman*. PI Opp. at 10–11. ICE misses the point. Hausman's irreparable informational injury turns not on his need to obtain the information for his own personal use, but rather on Hausman's need to *inform the public* about ongoing federal actions of urgent national importance. This need is not an abstract one for Hausman; his work as a professor is on scholarship and advocacy that draws from these datasets. *See* Hausman Decl. ¶¶ 3, 5. And courts commonly recognize that the harm caused by delay in obtaining information is irreparable. *See Elec. Frontier Found.*, 2007 WL 4208311, at *6 (holding that the loss of the value of information from delay "'constitutes a cognizable harm'" which can be irreparable (quoting *Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 40–41)). Indeed, "the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny,'" and "[o]fficial information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose." *DOJ v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 772–73 (1989). If the harm from delaying that purpose were never irreparable, courts would always lack the power to issue preliminary relief in FOIA cases. Here, "absent an expedited response to Plaintiff's FOIA request, it is not clear to the Court that the public would otherwise have access to [ ] relevant information." *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 13.

ICE's other arguments on irreparable harm likewise fail. ICE claims that Hausman "does not allege any injury other than a general desire to contribute to an ongoing public debate," which ICE contends is "insufficient." PI Opp. at 12. But Hausman has explained why the delay impedes his particular work informing the public about immigration enforcement, and many courts have found irreparable injury where the plaintiff's right to contribute to an ongoing public debate will be stymied absent preliminary relief. *See e.g.*, *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 38 (D.D.C. 2020) (holding that "delay in the release of the requested information would cause irreparable harm" where plaintiff seeks "to inform the public about ICE's response to the COVID-19 pandemic and the impact of that response on the thousands of immigrant detainees who are presently in ICE custody."); *Gerstein v. C.I.A.*, No. C-06-4643 MMC, 2006 WL 3462659, at *4 (N.D. Cal. Nov. 29, 2006) (finding a likelihood of

irreparable harm where absent an injunction, an "ongoing debate about how to respond to classified leaks and how aggressively to investigate them cannot be restarted or wound back."); *Citizens for Resp. & Ethics in Washington v. U.S. DOGE Serv.*, 769 F. Supp. 3d 8, 28 (D.D.C. 2025), reconsideration denied, No. 25-CV-511 (CRC), 2025 WL 863947 (D.D.C. Mar. 19, 2025) (finding irreparable harm where records requested were tied to ongoing actions by the U.S. DOGE Service, an issue of "the highest national concern." (citation omitted)); *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 301 (D.D.C. 2017) (holding that plaintiff had established irreparable harm where it sought information about military strikes in Syria given "recent escalation in hostilities between U.S. and Syria, plus indications from the White House that another chemical weapons attack may be in the offing"); *Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 41 (holding that requester had shown irreparable harm where "there was an '*urgency* to inform the public' about the [government's] warrantless surveillance program").[3]

As Hausman has demonstrated, the Spreadsheets have played a unique and crucial role in helping the public understand rapidly changing immigration enforcement policy. PI Mem. at 10–12, 28–29. For example, the Spreadsheets have revealed violations of law and government misconduct that would evade scrutiny if not for regular, ongoing releases of the Spreadsheets. *Id*. at 29. ICE does not appear to dispute the substantial evidence in the record about the vital role the Spreadsheets have played over the last year in contributing to debates surrounding immigration enforcement.[4]

---

[3] ICE cites to one case from the District of Columbia to assert that "[c]ourts have long held" that general interest in informing the public is insufficient to establish irreparable injury. PI Opp. at 12 (citing *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 46–47 (D.D.C. 2014)). That case is distinguishable because, unlike here, the agency had already expedited the processing of plaintiff's request, agreed to provide one category of the requested records in short order, and plaintiff had failed to show that the records it sought were crucial to inform the public about an ongoing debate. *Elec. Privacy Info. Ctr.*, 15 F. Supp. 3d at 45–46.

[4] ICE compares the harms asserted in *Nightingale* and *Hajro* to the harms Hausman asserts here. PI Opp. at 12–13. It is true that the harms Hausman faces are different, but they are nonetheless cognizable and significant in light of the value of the Spreadsheets to public debate. Moreover, neither of those cases dealt with a preliminary injunction and, thus, are irrelevant for this Court's irreparable harm analysis.

ICE also claims that Hausman does not identify a specific period in time when the information would lose its value. But identifying a specific date is not required to establish entitlement to a preliminary injunction. *See Am. Immigr. Council*, 470 F. Supp. 3d at 38 (rejecting the government's argument that the plaintiff's failure to identify a concrete deadline by which the records are needed undermines the irreparable harm plaintiff faces); *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 13 ("[T]he lack of a precise end-date for the impeachment proceedings is not detrimental to Plaintiff's claim of irreparable harm."). And such a requirement would mean that a requester could never seek effective preliminary relief in a case alleging a pattern-or-practice of FOIA violations. "So long as the Freedom of Information Act is the law, [courts] cannot repeal it by a construction that vitiates any practical utility it may have." *Fiduccia v. U.S. Dep't of Just.*, 185 F.3d 1035, 1041 (9th Cir. 1999). What the Court must decide here is whether the information sought is time-sensitive and whether it would lose its value if its release were further delayed. *See Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 40–41.[5] Hausman has clearly shown that the Spreadsheets satisfy these criteria.

ICE also wrongly suggests that Hausman cannot explain why he needs access to data from 2012 to the present. PI Opp. at 13. The reason Hausman has requested data from 2012 onwards is that ICE refuses to match unique identifiers across productions, meaning that each time ICE produces a version of the Spreadsheets, it creates new identifiers that do not match previous productions. *See* Supplemental Declaration of David K. Hausman ("Hausman Supp. Decl.") ¶ 3. If ICE were to provide anonymized identifiers that matched across productions, Hausman would accept data from a shorter period. Until then, Hausman is forced to seek the Spreadsheets for the full time period requested. ICE has also failed to explain—beyond

---

[5] ICE cannot reasonably dispute that immigration enforcement is the subject of intense, ongoing debates of national importance. Should this Court grant Hausman preliminary relief on this basis and if circumstances change such that immigration enforcement is no longer the subject of ongoing debates, ICE can move to dissolve or alter the preliminary injunction.

conclusory statements—why Hausman's requests are overbroad or how much time or resources it would take to fully respond to the request. *See* PI Opp. at 13.[6]

### 3. The Remaining Factors Weigh in Hausman's Favor.

ICE does not dispute that compliance with the law serves the public interest. *See* PI Mem. at 30. ICE's primary argument appears to be its contention with FOIA itself, which mandates a determination within 20 working days and prompt production of records. *See* PI Opp. at 16–17. "But these policy concerns are legislative, not judicial, and [courts] intimate no views on them. Congress wrote a tough statute on agency delay in FOIA compliance." *Fiduccia*, 185 F.3d at 1041.

ICE offers no reasons to believe that it or the public interest would be harmed by an injunction here. ICE baselessly suggests that compliance with the relief Hausman seeks would be "impossible." PI Opp. at 17. Notably, ICE provides no information in its declaration about the actual burdens of responding to Hausman's requests. Instead, ICE states only that it "typically cannot process more than 500 pages or 5 minutes of media files per month per case" and that ICE "typically cannot produce a set number of pages per month," Pineiro Decl. ¶¶ 47–48. Hausman's requests do not require the FOIA office to review any number of pages or media files. Rather, his requests simply ask ICE to copy the Spreadsheets from its database and redact a limited number of entire columns, just as ICE has done repeatedly in the past. *See* Hausman Decl. ¶ 10 (explaining the straightforward process of producing the Spreadsheets). ICE provides no reason why processing and producing 14 years of data is substantially more difficult than producing three or five years of data. Copying a larger file takes no more human time than copying a smaller one.

With respect to the eight-working-day timeline, ICE admits that the *CILP* case concerned similar data, *see* PI Opp at. 16, but its recounting of the case is misleading. The parties did not agree to "a series of production of records." PI Opp. at 17. Instead, ICE made several errors in

---

[6] Notably, ICE did not deny any of Hausman's requests for overbreadth, even after Hausman responded to ICE's request for clarification explaining that he seeks data from 2012 to the present. *See* PI Mem. at 17.

the production of the records and had to provide full updates of the Spreadsheets to correct those errors. Hausman Decl. ¶ 26; Hausman Supp. Decl. ¶ 4. The "revised set" of data produced by ICE within eight working days encompassed nearly all of the categories of data Hausman has requested here covering approximately three years. Each revised set produced in the *CILP* case included the entire set of data requested for that three-year time period. *Id.*[7] ICE is correct that in other instances the agency took longer than eight working days to produce the Spreadsheets, but at no point does ICE provide any evidence that it cannot produce the Spreadsheets here within eight working days given that it has produced substantially similar data within that amount of time before.

Lastly, ICE again contests Hausman's request for the agency to respond to future requests for the Spreadsheets within 28 working days. PI Opp. at 17–18. Contrary to ICE's claims, Hausman is not suggesting that his future requests qualify for expedited processing. Instead, Hausman is simply asking the Court to order ICE to respond to his future requests within FOIA's deadlines for non-expedited requests—namely, 20 working days for a determination and prompt production of records thereafter.[8] *See Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188–89 (D.C. Cir. 2013). This Court issued similar but much broader relief to end a pattern or practice of FOIA violations in *Nightingale*, permanently enjoining immigration agencies from failing to adhere to FOIA's deadlines when adjudicating any requests for immigration files. 507 F. Supp. 3d at 1213. The Court should exercise its equitable authority to prevent ICE from continuing its unlawful pattern or practice here.

---

[7] The prior productions in the *CILP* case are available here under the FOIA number 2024-ICFO-39357: https://deportationdata.org/data/ice.html#historical-data-archive.

[8] Notably, ICE is not arguing that it should be allowed greater time to process Hausman's request due to "exceptional circumstances" under 5 U.S.C. § 552(a)(6)(C)(i), which is the only provision that allows courts to extend the "strict statutory deadlines" within FOIA beyond an additional ten working days. *Am. C.L. Union of Washington v. U.S. Dep't of Just.*, No. C09-0642RSL, 2010 WL 11692313, at *1 (W.D. Wash. Jan. 19, 2010); *see Gerstein*, 2006 WL 3462659, at *3 ("defendants have the burden of demonstrating both the existence of exceptional circumstances, and that they are exercising due diligence in responding to Gerstein's FOIA requests, before the Court may grant defendants an extension of FOIA's time limits.").

## III.    CONCLUSION

For the foregoing reasons, the Court should grant Hausman's motion for a preliminary injunction.

Dated: June 3, 2026                                Respectfully submitted,

                                                   */s/ Amber Qureshi*
Khaled Alrabe                                      Amber Qureshi (DC 90001046)*
Email: khaled@nipnlg.org                           Email: amber@qureshilegal.com
National Immigration Project                       Law Office of Amber Qureshi, LLC
1400 Shattuck Ave, Suite 12 PMB #141               6925 Oakland Mills Road PMB#207
Berkeley, CA 94709                                 Columbia, MD 21045
Telephone: (617) 227-9727                          Telephone: (443) 583-4353

                                                   * Admitted *pro hac vice*

                                                   *Attorneys for Plaintiff David K. Hausman*