Khaled Alrabe (CA SBN 349899)
Email: khaled@nipnlg.org
NATIONAL IMMIGRATION PROJECT
1400 Shattuck Ave, Suite 12 PMB #141
Berkeley, CA 94709
Telephone: (617) 227-9727

Amber Qureshi (DC 90001046)*
Email: amber@qureshilegal.com
LAW OFFICE OF AMBER QURESHI, LLC
6925 Oakland Mills Road PMB#207
Columbia, MD 21045
Telephone: (443) 583-4353

* Admitted *pro hac vice*

 Attorneys for Plaintiff David K. Hausman

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DAVID K. HAUSMAN,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Defendant. | Case No. 4:26-cv-03730-AMO<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION FOR PRELIMINARY INJUNCTION** |

Pursuant to the Court's Order on June 24, 2026 (ECF No. 35), Plaintiff David K. Hausman submits this supplemental brief in support of his Motion for Preliminary Injunction (ECF No. 12). The Court requested further briefing on the imminence of the irreparable harm Hausman faces due to its concern about how far back in time his original requests reached.

Hausman appreciates the Court's concerns and narrows the relief he seeks in his motion for preliminary injunctive relief.[1] The information Hausman urgently needs concerns ICE's enforcement actions only since its most recent release of the Spreadsheets on March 10, 2026, in *Mukherjee v. ICE*, No. 1:25-cv-08072 (S.D.N.Y. filed Sept. 29, 2025).[2] He seeks *no new information* about the period before March 10, 2026. His requested relief concerned that previous period for one reason only: ICE refuses to produce unique identifiers—enabling personal-level analysis while preventing disclosure of the peoples' identities[3]—that match across different productions of the Spreadsheets. Without identifiers that match across productions, a standalone slice of post-March 10, 2026, data cannot be connected to previously released data, and basic inferences about post-March 10, 2026, events are impossible.

Accordingly, Hausman seeks an order requiring ICE either to produce post-March 10, 2026, data with identifiers matching previous productions or to produce roughly four years of data, which would make the data concerning the last few months usable. More precisely, Hausman requests that the Court preliminarily order ICE to produce the Spreadsheets, within 8 working days in response to his pending requests and within 28 working days of his future requests, either (i) only beginning on March 10, 2026 (and in future requests, on the last date covered by each previous release), so long as the unique identifiers that ICE provides match

---

[1] Hausman continues to seek data for the full period requested as ultimate relief in this case. This is yet another reason why ICE's argument that Hausman seeks the same permanent relief and preliminary relief can be dismissed. *See* Opp'n to Pl.'s Mot. for Prelim. Inj., ECF No. 26 at 9.

[2] ICE's release of the Spreadsheets in *Mukherjee v. ICE* encompassed the same five categories of information Hausman seeks here, covering Fiscal Year (FY) 2023 through March 10, 2026. *See* Hausman Decl., ECF No. 13 ¶¶ 27, 35.

[3] Unique identifiers allow FOIA requesters "to track datapoints pertaining to individual (but unidentified) [noncitizens] across ICE databases." *Am. C.L. Union Immigrants' Rts. Project v. United States Immigr. & Customs Enf't*, 58 F.4th 643, 646 (2d Cir. 2023). They "serve only to substitute for deleted exempt A-Numbers in order to preserve a function necessary to afford the public the same person-centric access to non-exempt records that ICE already has." *Id*. at 656.

those that ICE provided in its data release in *Mukherjee v. ICE* (covering FY2023 through March 10, 2026); or (ii) in the alternative, for the period beginning in FY2023, as in *Mukherjee v. ICE*. As explained below, this narrowed relief balances Hausman's need for complete and accurate information to inform the public about recent immigration enforcement actions and the Court's concerns about the timeframe for the requested records in this preliminary posture.

I.    **The Spreadsheets would fail to inform the public about recent immigration enforcement if they covered a limited time period without matching identifiers.**

Hausman requested data from FY2012 to the present, rather than merely from March 10, 2026, because ICE has represented that it is not willing to produce unique identifiers that match across productions. *See* Pl.'s Reply iso Mot. for Prelim. Inj., ECF No. 29 ("Reply") at 10; Hausman Supp. Decl., ECF No. 29-1 ¶ 3. This makes matching ICE's prior productions of the Spreadsheets with new updates impossible. *Id*.[4] ICE's workaround for this problem is to produce data for a longer time period, since in that case the identifiers match within that larger dataset and across the full time period.

This is not a small or technical concern. If ICE only provides the Spreadsheets from March 10, 2026, to the present without identifiers that match the previous data release in *Mukherjee v. ICE*, that dataset will be incomplete *even for the recent period that it covers*. Consider three examples. First, imagine that Person A was detained in January 2024, released on bond in February 2025 after over a year in detention, and re-detained and removed in May 2026. Without matching identifiers, users of the data would conclude that Person A had been detained for days rather than for over a year and, considering both releases separately, they would mistake Person A as multiple people and overcount the number of people detained. Second, imagine that Person B was subject to a detainer request lodged in January 2026 and was eventually arrested by ICE in April 2026. Without matching identifiers, users of the data would conclude that Person

---

[4] As an analogy, consider a survey that assigns each household a unique identifier, in order to enable use of the data without revealing the identities of the households, but that identifier is regenerated every year with no crosswalk to previous years. A user of the data studying how household composition changes over time cannot follow Household #4501 from one year to the next, because that number may now belong to a completely different family.

B was not arrested pursuant to a detainer request. Third, imagine that Person C was arrested and booked into detention in San Francisco in January 2023, detained for over three years in a detention center in California, then transferred to a detention center in Louisiana in late March 2026, before being removed in June 2026. Without matching unique identifiers, a user of the dataset would have no way to connect the recent deportation to the three-year-long detention in California.

These are not merely hypotheticals or exceptional cases. Like Person C, there are hundreds of people who are facing years-long immigration detention. Of the people in ICE detention on March 10, 2026, over 100 had been initially detained in FY2023 and over 800 in FY2024.[5] *See* Declaration of Graeme Blair ("Blair Decl.") ¶¶ 8–9. Limiting the data to a shorter time period without matching unique identifiers would not provide complete information about such individuals' *current* detention.

Similarly, many individuals, like Person B, serve several months or years in criminal custody before ICE can arrest them pursuant to a detainer. In FY2023, ICE issued 122,564 detainers, and as of March 10, 2026, over a quarter of those detainer requests had not been lifted—suggesting that those people were still in criminal custody. Blair Decl. ¶ 12. Without matching identifiers or information from FY2023 to the present, there is no way to know whether those individuals were ultimately released back to their communities or booked into ICE detention under the Trump administration. In other words, there is no way to know how many *current* arrests resulted from past detainers.

Re-arrests of people who entered during the Biden administration, like Person A, have also been common in recent months. ICE has been "'rearresting' people attending immigration court hearings and check-ins with the agency," and "[m]ost people arrested at immigration courts have been individuals who entered the United States as migrants seeking asylum during the Biden administration." Declaration of Amber Qureshi (Qureshi Decl.) ¶ 3, Ex. A. Indeed, in the

---

[5] In contrast, 48 individuals were initially detained at some point prior to FY2023. Blair Decl. ¶¶ 8–9. For purposes of his request for preliminary injunctive relief, Hausman is willing to forego complete information for such individuals.

*Mukherjee v. ICE* release, there were over 65,000 unique individuals with multiple "stays" in detention—among those, nearly 30,000 were detained during the Biden administration and later re-detained by the Trump administration. Blair Decl. ¶¶ 10–11. If ICE does not produce matching identifiers or data going back to FY2023, users of the data will not be able to tell which of these *current* cases involve re-detention.

Therefore, unless ICE produces matching identifiers or provides data for a sufficient period of time, the Spreadsheets will fail to inform the public about the extent of the administration's current enforcement actions. *See also* Hausman Supp. Decl., ECF No. 29-1 ¶ 3. Hausman's narrowed request for relief would allow ICE to solve the problem in one of two ways: either ICE could provide unique identifiers that match its prior releases of the Spreadsheets, or ICE could provide data covering a sufficiently long period of time to allow for an accurate and complete picture of recent enforcement actions. In sum, in recognition of the Court's concerns, Hausman withdraws his request for information about events before ICE's most recent release for purposes of preliminary relief, so that rather than reaching back to FY2012, each production would supply current data tethered to a FY2023 starting point.

**II.    Hausman faces imminent and ongoing irreparable harm without a release of the Spreadsheets from FY2023 to the present or with matching identifiers.**

Hausman seeks preliminary relief here to obtain information vital to the current and ongoing debate about immigration enforcement. *See Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 38 (D.D.C. 2020); *Gerstein v. C.I.A.*, No. C-06-4643 MMC, 2006 WL 3462659, at *4 (N.D. Cal. Nov. 29, 2006). As narrowed, his requested relief encompasses only information that is relevant for the public to understand immigration enforcement actions undertaken by the administration since the last release of the Spreadsheets in *Mukherjee v. ICE*.

Indeed, in recent weeks, the need for this information has only grown. Media organizations have reported an increase in arrests, *see* Qureshi Decl. ¶ 4, Exs. B, C; in the length of detention, *see id.*, Ex. D; and in the number removal flights, *see id.*, Ex. E. But there has been no reliable immigration data published since Hausman obtained the *Mukherjee v. ICE* release,

even as, for example, a White House official revealed plans to increase enforcement efforts in New York City, *see id.*, Ex. F; the Department of Homeland Security ("DHS") has revived plans to start using its own "mini airline" for deportation flights, *see id.*, Ex. G; and White House and DHS officials have threatened to swiftly deport Haitian nationals with temporary protected status in the wake of the Supreme Court's decision in *Mullin v. Doe*, No. 25–1083, 2026 WL 1825840 (U.S. June 25, 2026), *see* Qureshi Decl. ¶ 4, Ex. H. As in *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*,  time-sensitive external events mean that the relevant ongoing debates cannot be meaningfully "restarted or wound back." 263 F. Supp. 3d 293, 301 (D.D.C. 2017) (citation omitted). In other words, the records sought here would imminently lose significant value because changes in the administration's enforcement practices are likely to occur.

Narrowed preliminary relief will address Hausman's urgent need to inform the public about the administration's recent immigration enforcement actions while ensuring that the requested records do not extend further. Therefore, Hausman respectfully requests that the Court grant his motion for a preliminary injunction and order ICE to produce the Spreadsheets, within 8 working days in response to his pending requests and within 28 working days of his future requests, either (i) covering the period from March 10, 2026 (and in future requests, on the last date covered by each previous release) to the date of extraction, so long as the unique identifiers that ICE provides match those that ICE provided in its data release in *Mukherjee v. ICE*; or (ii) in the alternative, covering the period from FY2023 to the date of extraction, as in *Mukherjee v. ICE*.

Dated:  June 29, 2026                    Respectfully submitted,

*/s/ Amber Qureshi*
Amber Qureshi (DC 90001046)*
Email: amber@qureshilegal.com
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Road PMB#207
Columbia, MD 21045
Telephone: (443) 583-4353

Khaled Alrabe
Email: khaled@nipnlg.org
National Immigration Project
1400 Shattuck Ave, Suite 12 PMB #141
Berkeley, CA 94709
Telephone: (617) 227-9727

\* Admitted *pro hac vice*

*Attorneys for Plaintiff David K. Hausman*