Khaled Alrabe (CA SBN 349899)
Email: khaled@nipnlg.org
NATIONAL IMMIGRATION PROJECT
1400 Shattuck Ave, Suite 12 PMB #141
Berkeley, CA 94709
Telephone: (617) 227-9727

Amber Qureshi (DC 90001046)*
Email: amber@qureshilegal.com
LAW OFFICE OF AMBER QURESHI, LLC
6925 Oakland Mills Road PMB#207
Columbia, MD 21045
Telephone: (443) 583-4353

* Admitted *pro hac vice*

 Attorneys for Plaintiff David K. Hausman

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DAVID K. HAUSMAN,<br><br>               Plaintiff,<br><br>     v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>               Defendant. | Case No. 4:26-cv-03730-AMO<br><br>**PLAINTIFF'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF HIS MOTION FOR PRELIMINARY INJUNCTION** |

In its response to Plaintiff Hausman's supplemental brief, Defendant U.S. Immigration and Customs Enforcement ("ICE") does not meaningfully contest the urgency of providing the public with immigration enforcement data since March 2026, when ICE released the last version of the Spreadsheets in *Mukherjee v. ICE*. ICE also does not dispute Hausman's point that producing only the last few months of data without unique identifiers ("IDs") that match the *Mukherjee* dataset would make the data unusable. Together, these concessions reveal why the limited relief that Hausman has requested is necessary for understanding ICE enforcement *since March 2026.*

Notably, beyond raising issues already addressed by the parties' prior briefing, ICE does not express any specific technical or other concerns with respect to producing data from FY2023 to the present; it focuses instead on the other alternative proposed by Hausman. The two alternatives for narrowed preliminary relief that Hausman proposed in his supplemental brief are equivalent: either ICE can produce data starting on March 10, 2026, with IDs matching those in the *Mukherjee* dataset *or* ICE can produce data starting in FY2023. In either case, the result would be a dataset with IDs that match from the beginning of FY2023 to the present. Both options would therefore allow for analysis of recent enforcement actions, and both would preserve individual privacy. Although the options are equivalent, ICE spends most of its brief opposing the matching IDs option, with only a half-hearted attempt to oppose producing the dataset from FY2023. That attempt is unconvincing, and the Court should therefore, at a minimum, order the agency to produce the Spreadsheets for the period since FY2023.

## I.      The alternative forms of relief requested are equivalent.

Nearly all of ICE's opposition focuses on one of the two alternatives Hausman has proposed. *See* Def.'s Resp. to Pl.'s Suppl. Br., ECF No. 40 ("Resp.") at 2–4. Specifically, ICE contends that matching IDs with the *Mukherjee* dataset would be "technically unfeasible," would require ICE to "create a new record," and "may" reveal personally identifiable information ("PII"). *Id.* at 3–4. Notably, ICE does not suggest that Hausman's second proposed option (*i.e.*, providing the Spreadsheets from FY2023 to the date of extraction) presents any of these concerns. Indeed, ICE cannot claim that providing the Spreadsheets from FY2023 raises such

concerns because the agency has previously produced this data with IDs in *Mukherjee v. ICE* up until March 10, 2026. *See* Decl. of Graeme Blair, ECF No. 37-1 ¶¶ 5, 7. In fact, ICE's declarant confirms that ICE utilizes an automated process to generate IDs each day, *see* Decl. of Minnettia Durant, ECF No. 40-1 ¶¶ 8–9, suggesting that ICE can easily produce the Spreadsheets from FY2023 to the date of extraction.

ICE's suggestion that matching IDs across productions "could" or "may" reveal personally identifiable information ("PII") is illogical. *See* Resp. at 3–4.[1] The options Hausman has proposed are equally privacy-preserving; in fact, they are identical, and either option merely updates data produced repeatedly by ICE, most recently in *Mukherjee v. ICE.* As ICE acknowledges, IDs replace PII that would otherwise be exempt from disclosure. *See id.* at 3 (citing *ACLU Immigrants' Rts. Project v. ICE*, 58 F.4th 643, 650 (2d Cir. 2023)). These identifiers are arbitrary labels with no connection to names, A-numbers, or other PII. *See ACLU Immigrants' Rts. Project*, 58 F.4th at 656 ("the substitution of Unique IDs for A-Numbers is a reasonable step in shielding the exempt PII content of A-Numbers, while preserving the access function formerly performed by those exempt records."). In both options that Hausman proposes, the privacy protections rest on the anonymity of the IDs themselves, which ICE does not otherwise contest.

In his supplemental brief, Hausman provided an example of Person A, who was detained in January 2024, released on bond in February 2025 after over a year in detention, and re-detained and removed in May 2026. *See* Pl.'s Suppl. Br., ECF No. 37 ("Suppl. Br.") at 3. Person A would be identified by an anonymized ID in the *Mukherjee* dataset, say ID #123, allowing users of the dataset to identify them as the same individual being initially detained in January 2024 and then released on bond in February 2025. If the agency produces a new dataset just for the post-March 10, 2026, period with matching IDs, then Person A will be recognizable (anonymously) as the same person in both datasets, with ID #123 in both datasets. If the agency

---

[1] ICE's vague and speculative statements about the "mere possibilit[y]" of privacy-related harms is not enough to satisfy its burden. *See Dep't of the Air Force v. Rose*, 425 U.S. 352, 380 n.19 (1976) ("The legislative history is clear that Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities.").

produces data covering the full period, then Person A will be recognizable (anonymously) as the same person through the same period, but simply with a different ID (say, ID #456).

There is no difference in the level of anonymity provided, and ICE does not claim that the IDs produced in the *Mukherjee* dataset are covered by the privacy exemption under the Freedom of Information Act ("FOIA"). Either way the linkage occurs, it is essential to be able to link the data in this way; without the linkage, the detention of Person A could not be identified as a re-detention and their total length of time in ICE detention could not be determined. *See also* Suppl. Br. at 3–5.

Moreover, creation or matching of IDs does not amount to generating new records under FOIA. ICE does not argue that creating unique IDs themselves amounts to generation of a new record. In fact, the agency concedes that it generates unique IDs daily. *See* Decl. of Minnettia Durant, ECF No. 40-1 ¶ 7. In its response to Hausman's supplemental brief, ICE cites a district court decision from the District of Columbia to argue that applying the same unique identifiers as previous productions would amount to creation of new records. *See* Resp. at 4 (citing *Long v. ICE*, No. 17-CV-1097 (APM), 2021 WL 3931879, at *4 (D.D.C. Sept. 2, 2021)). *Long* pre-dates and is contrary to the Second Circuit's decision in *ACLU Immigrants' Rts. Project v. ICE*, 58 F.4th 643 (2d Cir. 2023). As the Second Circuit correctly observed, "precisely because Unique IDs can be meaningless in themselves, they do not alter the content of any exempt record. Nor do they document any new information, or otherwise create any new records." *Id*. at 656; *see also id*. at 661 (explaining that the FOIA's "legislative history indicat[es] that Congress did not view an agency's use or creation of new codes or queries to access electronic records responsive to a FOIA request as the creation of a new record.").

Fundamentally, the two alternatives Hausman proposed in his supplemental brief would equally ensure, for the period since March 10, 2026, that ICE provides "the public the same person-centric access to non-exempt records that ICE already has." *ACLU Immigrants' Rts. Project*, 58 F.4th at 656. Failure to do so "denies public access to nonexempt records in the same form and format available to the agency." *Id*. at 663. Because the options are equivalent, Hausman has no preference between them. To the extent the Court has concerns about requiring

ICE to provide matching IDs, the Court may simply order ICE to produce the Spreadsheets covering the period from FY2023 to the date of extraction.

II.     **Hausman faces an ongoing and imminent risk of irreparable harm unless the Court grants his limited request for relief.**

The narrowed relief that Hausman proposes, which focuses on obtaining information about enforcement actions since ICE last released data in March, adequately balances the urgent need for accurate and complete information about recent enforcement actions with the Court's concerns regarding the imminence of the harm Hausman faces. ICE does not provide any convincing reason why Hausman's narrowed request for relief does not satisfy the irreparable harm element of the preliminary injunction standard.

ICE does not appear to contest that there is an urgency in providing the public with recent data on immigration enforcement, *see* Resp. at 6, and ICE's response fails to address any of the reasons why Hausman needs information from FY2023 in order to analyze such *recent* enforcement actions. *See* Suppl. Br. at 3–5. Specifically, ICE does not dispute that data from March 10, 2026 to the present without matching identifiers would lead to inaccurate conclusions about ICE's recent enforcement actions. *See generally* Resp. Therefore, this Court should consider this point conceded. *See Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) ("The court construes the government's failure to address this argument as a concession to petitioner's argument.").

The agency instead merely repeats its prior arguments that Hausman has failed to identify a specific date beyond which the Spreadsheets would immediately lose their value. *See* Resp. at 5–6. As Hausman clarified in his reply brief, a FOIA requester does not have to point to a specific date in order to establish entitlement to a preliminary injunction. *See* Pl.'s Reply iso Mot. for Prelim. Inj., ECF No. 29 ("PI Reply") at 14. Instead, courts have issued preliminary injunctions where the records requested would inform the public about ongoing debates of national importance. *Id*. If the Spreadsheets are produced at the conclusion of this litigation, they "may still be of historical value," but for Hausman, "the primary value of the information lies in [his] ability to inform the public" of debates concerning enforcement actions that are ongoing

and of national importance. *Ctr. for Pub. Integrity v. United States Dep't of Def.*, 411 F. Supp. 3d 5, 12 (D.D.C. 2019).

It is simply not the case that, if this Court grants Hausman's request, "any FOIA request that touches on immigration enforcement would be entitled to expedited processing at the preliminary injunction posture." Resp. at 6. ICE has now had several opportunities to meaningfully contest Hausman's entitlement to expedited processing of his pending requests— supported by hundreds of media articles citing the Spreadsheets—and it has failed to do so. *See* Pl.'s Mot. for Prelim. Inj.; Mem. of P. & A. in Supp., ECF No. 12 ("PI Mem.") at 21–24; PI Reply at 9–10. Indeed, Hausman's requests are extraordinary because of the overwhelming public interest in these records. *See, e.g., Democracy Forward Found. v. Dep't of Just.*, 813 F. Supp. 3d 1, 11 (D.D.C. 2025) (finding that where requester has cited to "dozens of articles" in support of a request for expedited processing, "[t]he court is hard pressed to think of stronger evidence that this issue has attracted widespread and exceptional media interest.").

Lastly, ICE's argument that Hausman is bypassing the Congressional scheme under FOIA is misplaced, has already been addressed by prior briefing, and is unrelated to the issues that the Court requested supplemental briefing on. *See, e.g.*, PI Mem. at 31–32; PI Reply at 16. Hausman has more than adequately shown that he is likely to succeed on the merits of his claims, including his claim that ICE has engaged in a pattern and practice of FOIA violations that warrants prospective injunctive relief. *See* PI Mem. at 24–27.

In sum, Hausman's narrowed request for preliminary injunctive relief appropriately addresses the Court's concerns regarding the imminence of the harm Hausman faces and Hausman's urgent and ongoing need for information to inform the public about recent enforcement actions. Therefore, this Court should grant Hausman's preliminary injunction motion as narrowed in his supplemental brief.

Dated:  July 9, 2026

Respectfully submitted,

*/s/ Amber Qureshi*
Amber Qureshi (DC 90001046)*
Email: amber@qureshilegal.com
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Road PMB#207
Columbia, MD 21045
Telephone: (443) 583-4353

Khaled Alrabe
Email: khaled@nipnlg.org
National Immigration Project
1400 Shattuck Ave, Suite 12 PMB #141
Berkeley, CA 94709
Telephone: (617) 227-9727

* Admitted *pro hac vice*

*Attorneys for Plaintiff David K. Hausman*