UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID K. HAUSMAN,

Plaintiff,

v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,

Defendant.

Case No. 26-cv-03730-AMO

**ORDER RE PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION**

Re: Dkt. No. 12

Congress adopted the Freedom of Information Act ("FOIA") "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1976). Indeed, an informed public is "a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). Relying on FOIA, the Plaintiff in this case, David K. Hausman, seeks data from United States Immigration and Customs Enforcement ("ICE") related to the agency's enforcement actions. Hausman moved for a preliminary injunction that broadly seeks to compel production of some 14 years of ICE enforcement data on an expedited basis – within eight business days of a court order. *See* Dkt. No. 12. Hausman's motion for preliminary injunction was heard before this Court on June 18, 2026. Following the hearing, the parties submitted supplemental briefing. *See* Dkt. Nos. 40, 41. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court **DENIES** the requested relief for the following reasons.

United States District Court
Northern District of California

# I.      BACKGROUND

## A.      Statutory and Regulatory Context

The Freedom of Information Act (the "FOIA") provides a means for the public to access federal records, subject to certain exemptions.  *See* 5 U.S.C. § 552.  Upon receipt of a properly submitted request, an agency generally must determine within twenty business days "whether to comply with such request" and then must notify the requestor of its determination and the reasons therefor.  *Id.* § 552(a)(6)(A)(i).  An agency may extend this deadline by ten business days in "unusual circumstances."  *Id.* § 552(a)(6)(B)(i).  The FOIA states that if an agency fails to determine a request within the relevant time period, the requestor "shall be deemed to have exhausted his administrative remedies with respect to such request," and may seek relief from a court to "order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(6)(C)(i), (a)(4)(B).

Under the FOIA, agencies are directed to promulgate regulations "providing for expedited processing of requests for records – (I) in cases in which the person requesting the records demonstrates a compelling need; and (II) in other cases determined by the agency."  5 U.S.C. § 552(a)(6)(E)(i).  "Compelling need" is defined by the FOIA as meaning: "(I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or (II) with respect to a request  made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity."  *Id.* § 552(a)(6)(E)(v).  The FOIA further provides that a "demonstration of a compelling need by a person making a request for expedited processing shall be made by a statement certified by such person to be true and correct to the best of such person's knowledge and belief."  *Id.* § 552(a)(6)(E)(vi).

The Department of Homeland Security ("DHS") promulgated regulations addressing expedited processing requests to the agencies within DHS, including ICE.  Those regulations permit such requests when the FOIA office determines that they involve:

> (i) Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;

United States District Court
Northern District of California

> (ii) An urgency to inform the public about an actual or alleged federal government activity, if made by a person who is primarily engaged in disseminating information;
> (iii) The loss of substantial due process rights; or
> (iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

6 C.F.R. § 5.5(e).

### B.    Factual Background

In this case, Hausman submitted FOIA requests for updated data relating to a set of Excel spreadsheets ("the Spreadsheets") previously produced under FOIA to report on current patterns in ICE enforcement actions.  Hausman Decl. (Dkt. No. 13) ¶¶ 12-25.  The Spreadsheets contain anonymized records of ICE's immigration enforcement actions; they contain a row for each encounter, detainer request, arrest, detention, and removal, respectively.  *Id.* ¶ 8.  The inclusion of anonymized unique identifiers – sequences of letters and numbers that replace a person's "ANumber" – allows the public, without knowing any person's identity, to trace outcomes as each person moves through the enforcement system, from arrest to potential deportation.  *Id.* ¶ 9.  Since March 2025, Hausman and his colleagues at Deportation Data Project ("DDP") have sought and published these past releases – original Spreadsheets received from ICE, as well as processed versions of them and tools to allow users to filter and download subsets of them – on DDP's website at no cost to the public.  *Id.* ¶¶ 6-8.  Hausman also publishes reports analyzing the Spreadsheets and posts materials to allow the public to better understand the data.  *Id.* ¶ 7.

On September 15, 2025, Hausman submitted his first FOIA request for certain categories of information related to immigration enforcement.  *See* Fernando Pineiro Decl. (Dkt. No. 27) ¶ 14.  Hausman requested information from fiscal year 2012 to present concerning (1) arrests, (2) detentions, (3) removals, (4) encounters, and (5) detainers.  *Id.*, Compl. (Dkt. No. 1) ¶ 47. Four days after Hausman's September 2025 request, ICE requested clarification of the request and informed him that the request for data from 2012 onwards was too broad.  Fernando Pineiro Decl. ¶ 14.  Hausman declined to narrow that request on September 26, 2025.  *Id.*  Three days after that response, ICE gave notice that it denied Hausman's request for expedited processing and tasked the appropriate agency component with searches for responsive records.  *Id.* ¶ 15.  In each month

since September 2025, Hausman submitted another request for the data from 2012 to present. *See* Hausman Decl. ¶ 13.

## II.   DISCUSSION

Hausman seeks a preliminary injunction compelling ICE to: "(1) expedite processing of Hausman's requests and produce the Spreadsheets within eight working days of the Court's order; (2) make determinations on Hausman's future requests for the Spreadsheets within 20 working days and produce the Spreadsheets within eight working days of a determination going forward; and (3) submit quarterly compliance reports to the Court." Dkt. No. 12 at 2. Hausman moves for preliminary relief under the first claim (wrongful withholding of agency records), second claim (failure to grant expedited processing), and third claim (unlawful pattern or practice) of his Complaint. Compl. ¶¶ 87-99.

A "preliminary injunction is an extraordinary and drastic remedy" which should not be granted unless the movant shows "substantial proof" and "*by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original; quotation marks and citation omitted). To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief, (3) the balance of equities tips in the favor of the moving party, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where the government is a party, courts merge the analysis of the final two *Winter* factors, the balance of equities and the public interest. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Courts "explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (internal quotation marks and citation omitted).

The *Winter* factors may be evaluated on a sliding scale such that preliminary relief may be issued when the moving party demonstrates "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (citation omitted). To grant preliminary

injunctive relief, a court must find that "a certain threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). Relevant here, the FOIA provides that courts may "enjoin [an] agency from withholding agency records and . . . order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). "But preliminary injunctions in FOIA cases are uncommon." *Am. Oversight v. United States Dep't of State*, 414 F. Supp. 3d 182, 184 (D.D.C. 2019).

ICE argues that Hausman fails to establish any of the requirements for a preliminary injunction. *See* Dkt. No. 26. Because the Court finds that Hausman fails to meet the "irreparable harm" requirement, it does not engage more fully with ICE's remaining arguments against the preliminary injunction.[1]

A party seeking preliminary injunctive relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). As the Supreme Court has observed, public awareness of the government's actions is "a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). "*Timely* awareness is equally necessary because 'stale information is of little value.' " *Am. Oversight*, 414 F. Supp. 3d 182, 186 (D.D.C. 2019) (quoting *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)) (emphasis in original).

Courts considering preliminary injunctions in the FOIA context typically focus their attention on the timing of when the information sought may become stale. "[A] movant's general interest in being able to engage in an ongoing public debate using information that it has requested under FOIA is not sufficient to establish that irreparable harm will occur unless the movant receives immediate access to that information." *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 46-47 (D.D.C. 2014). A plaintiff seeking to establish the urgency of their request

---

[1] Given the concessions and indirect argument in ICE's opposition brief and the factual record submitted in support of the motion for preliminary injunction, the Court notes that Hausman has demonstrated a likelihood of success on at least his first two claims: wrongful withholding of agency records and failure to grant expedited processing.

United States District Court
Northern District of California

and its connection to a protectable interest "must do more than gesture at the general decline in the documents' value over time" and instead must "identify a specific end point at which the information's value drops off altogether – i.e., the conclusion of a process such as a legislative vote, impeachment proceeding, national census, court case, or the like." *Rolling Stone LLC v. Dep't of Just.,* 739 F. Supp. 3d 237, 243-44 (S.D.N.Y. 2024) (quoting *Heritage Found. v. U.S. Env't Prot. Agency*, 2023 WL 2954418, at *4 (D.D.C. Apr. 14, 2023)). Indeed, the District Court for the District of Columbia, which handles a significant portion of similar FOIA preliminary-injunction motions, generally finds irreparable harm "only where the requested documents are "time-sensitive and highly probative, or even essential to the integrity, of an imminent event, after which event the utility of the records would be lessened or lost." *Heritage Found.*, 2023 WL 2954418, at *4 (quoting *New York Times Co. v. Def. Health Agency*, No. 21-566, 2021 WL 1614817, at *8 (D.D.C. Apr. 25, 2021)). Examples of time-sensitive FOIA requests meriting preliminary injunctive relief to prevent irreparable harm include cases seeking

> [1] documents regarding potential political interference with mail-in voting ahead of the imminent 2020 Presidential election, *see Protect Democracy Project, Inc. v. U.S. Dep't of Just.*, 498 F. Supp. 3d 132, 141 (D.D.C. 2020);
> [2] documents relevant to the 2020 census where "the value of the information sought . . . would be materially lessened or lost" once the census process concluded, [*Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 100 (D.D.C. 2020)];
> [3] documents related to an ongoing and time-limited impeachment process, [*Ctr. for Pub. Integrity v. United States Dep't of Def.*, 411 F. Supp. 3d 5, 7, 11 (D.D.C. 2019)]; and
> [4] documents related to a requester's role as a confidential FBI informant ahead of an imminent evidentiary hearing[,] *Aguilera v. FBI*, 941 F. Supp. 144, 151 (D.D.C. 1996).

*Heritage Found.*, 2023 WL 2954418, at *4 (enumeration and line breaks added). "Absent a critical need for records at a scheduled or imminent event, however, preliminary injunctive relief to expedite production of records in FOIA cases is generally denied." *New York Times*, 2021 WL 1614817, at *8. Indeed, in contrast to the cases listed above, "courts have denied preliminary injunctions in cases without a definite impending or time-limited event," including cases

> [1] where plaintiffs sought documents related to FISA surveillance generally, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 35, 39-40 (D.D.C. 2014);

> [2] an already existing Consumer Financial Protection Bureau rule, [*Progress v. Consumer Fin. Prot. Bureau*], No. CV 17-686 (CKK), 2017 WL 1750263, at *6 (D.D.C. May 4, 2017);
> [3] records related to former Secretary of State Hillary Clinton's use of a private email server well before the election, *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 8-13 (D.D.C. 2015); or
> [4] records concerning an individual's termination after the event[,] *Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 121 (D.D.C. 2013).

*Heritage Found.*, 2023 WL 2954418, at *4 (enumeration and line breaks added).

Here, Hausman argues that the requested records are necessary to inform public debate regarding rapidly changing immigration enforcement policy. At this stage and on this record, the value of some recent portion of the information sought can hardly be overstated. As amici highlight, "[t]he Spreadsheets at issue in this litigation have been the source of virtually all data on ICE activities since January 2025, forming the quantitative backbone of public understanding of how the U.S. government is carrying out immigration enforcement and how current practices compare to past administrations." Dkt. No. 25-1 at 7 (citations omitted). The Spreadsheets and the data they contain inform a wide range of news reporting related to ICE's enforcement actions. *See* Hausman Decl. ¶¶ 37-38; Dkt. No. 25-1 at 14-32 (amici statements of interest). Members of Congress, state and local government agencies and officials, federal district courts, and advocacy organizations across the political spectrum have used the data to understand the extent of ICE's enforcement actions. Hausman Decl. ¶¶ 40-42; *id.*, Exs. W, X, Y. The Spreadsheets thus promote public scrutiny of government conduct, ensuring greater accountability and revealing violations of law, including constitutional violations, during a period of significant public discussion regarding ICE. Indeed, the information from the Spreadsheets has been used to show ICE's violations of its own rules governing the use of holding facilities for only short-term detention – leading courts and local governments to take action against unlawful uses of such facilities. *See, e.g.*, Hausman Decl. ¶ 40, Ex. W at 2 (citing the Spreadsheets released by DDP); *D.N.N. v. Liggins*, No. 1:25-CV-01613-JRR, 2026 WL 632371, at *6 (D. Md. Mar. 6, 2026) (citing expert report from one of the co-Directors of DDP, who analyzed the Spreadsheets to report on overcrowding at a holding facility in Maryland). The Spreadsheets have even been cited in other cases in this District enjoining certain ICE activity. *See Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 996 n.8 (N.D. Cal. 2025) (Pitts, J.) (citing DDP and three articles using the Spreadsheets).

United States District Court
Northern District of California

Though the Spreadsheets may aid in the identification of constitutional violations or other forms of harm, ICE's failure to provide the data does not itself represent irreparable harm in the absence of an imminent event that would vitiate the value of the data.[2] *Cf. Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 301 (D.D.C. 2017) (finding irreparable harm where plaintiff sought information about military strikes in Syria given "recent escalation in hostilities between U.S. and Syria, *plus* indications from the White House that *another* chemical weapons attack may be in the offing") (emphasis added).  Moreover, Hausman cannot claim that imminent harm would result if his requested preliminary injunction does not issue given the scope of his requested relief.  Hausman does not demonstrate that he would suffer imminent harm if his demand for over 14 years of historical data is not met on an urgent basis.

Hausman does not identify "a definite impending or time-limited event" after which the value of the Spreadsheets significantly decreases.  *Heritage Found.*, 2023 WL 2954418, at *4; *see also Protect Democracy Project*, 263 F. Supp. 3d at 301.  While Hausman asserts that the information subject to the FOIA Requests would turn "stale" if not released expeditiously, he does not allege any injury other than a general desire to contribute to an ongoing public debate.  Dkt. No. 12 at 27.  Hausman speculates that whatever records he ultimately obtains from the FOIA requests or any future requests would be useful to the public in exposing violations of law and government misconduct.  *See* Dkt. No. 12 at 29.  But given the multi-year scope of his request, Hausman fails to adequately show that the information will lose its value or that there is some particular time limit on the usefulness of that information.  *See Rolling Stone*, 739 F. Supp. 3d at 243; *see also Heritage Found.*, 2023 WL 2954418, at *5; *see also Owen v. United States Immigr. & Customs Enf't*, No. CV 22-0550 DSF (AFMX), 2023 WL 9470904, at *9 (C.D. Cal. Jan. 12, 2023) (finding that the plaintiffs failed to show irreparable harm partly because they "have not pointed to any specific deadlines that makes the information crucial now . . . [n]or have Plaintiffs pointed to anything suggesting that this debate will leave the public consciousness anytime

---

[2] Hausman's proffer of several hypotheticals of unconstitutional detentions in his supplemental briefs fails to move the needle. *See, e.g.*, Dkt. No. 37 at 3-5.  Such hypotheticals remain speculative and unhelpful in the instant analysis. *See FDIC v. Garner*, 125 F.3d 1272, 1279 (9th Cir. 1997) (the threat of injury "must be imminent, not remote or speculative").

soon."). In his supplemental briefing, Hausman narrows the scope of the records he seeks, requesting data "either (i) covering the period from March 10, 2026 . . . to the date of extraction, so long as the unique identifiers that ICE provides match those that ICE provided in its data release in *Mukherjee v. ICE*[, No. 1:25-cv-08072 (S.D.N.Y. filed Sept. 29, 2025)]; or (ii) in the alternative, covering the period from FY2023 to the date of extraction, as in *Mukherjee v. ICE*." Dkt. No. 57 at 6. But in so doing, Hausman still does not identify an imminent event that renders production of the information crucial now. *See Protect Democracy Project*, 263 F. Supp. 3d at 301. And given the lack of an imminent, irreparable harm that would result from the absence of the injunctive relief sought, the Court must deny Hausman's request for a preliminary injunction requiring production of multiple years of data.

## III.    CONCLUSION

For the foregoing reasons, particularly the failure to identify imminent, irreparable harm in the absence of the relief sought, the Court **DENIES** Hausman's motion for preliminary injunction.

**IT IS SO ORDERED.**

Dated: July 13, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

9